# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| IN RE LOESTRIN 24 FE ANTITRUST LITIGATION | ) ) ) | MDL No. 2472 |
| THIS DOCUMENT RELATES TO: | ) ) ) | C.A. No. 1:13-md-2472-S-PAS |
| *All Direct Purchaser Plaintiff Class Actions* | ) ) ) | **REDACTED PUBLIC VERSION** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DIRECT PURCHASER PLAINTIFF'S EXPERT JEFFREY J. LEITZINGER**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................4

ARGUMENT .......................................................................................................................4

I.    Dr. Leitzinger's Uncritical Reliance on Assumptions Provided by Counsel Render
His Opinions Unreliable ...........................................................................................4

    A.    Dr. Leitzinger's Opinions Are Unreliable Because He Ignores Extensive
Evidence that ███████████████████████████████
███████████████████████████████████ ........................................6

    B.    Dr. Leitzinger's Opinion Is Similarly Unreliable Where He Failed to
Investigate His Assumption that ███████████████████████
████████████ .................................................................................8

    C.    Dr. Leitzinger Has No Basis to Assume ███████████████
██████████ ....................................................................................9

    D.    Dr. Leitzinger's Assumption that ██████████████████████
██████████████████████████████ .............................10

II.    Dr. Leitzinger's Impact Analysis — Which Assumes Injury-in-Fact — Is Flawed
and Inadmissible, Including Under *Asacol* .............................................................10

    A.    Dr. Leitzinger Ignores His Own Data Set Showing No Injury for Generic-
Only Purchasers ...........................................................................................11

    B.    Dr. Leitzinger's Impact Analysis for Brand-Only Purchasers Is
Fundamentally Flawed..................................................................................14

III.    Dr. Leitzinger's Damages Analysis Is Similarly Flawed and Inadmissible ..............16

    A.    Dr. Leitzinger's Use of ███████████████████ Is
Unreliable......................................................................................................16

    B.    Dr. Leitzinger Fails to Reduce Damages Based on Shifting Purchasing
Patterns When Generics Enter ......................................................................17

    C.    Dr. Leitzinger's Damages Model Includes Damages for Uninjured Class
Members .......................................................................................................18

    D.    Dr. Leitzinger Fails to Take Account of Key Facts ...............................19

    E.    Dr. Leitzinger's Aggregation Is Fundamentally Flawed ......................19

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Arista Records LLC v. Usenet.com, Inc.*,
   608 F. Supp. 2d 409 (S.D.N.Y. 2009) ..................................................................................4

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ..............................................................................5, 10, 11, 13

*Calisi v. Abbott Labs.*,
   No. 11-cv-10671, 2013 U.S. Dist. LEXIS 139257 (D. Mass. Sept. 27, 2013) ...............4, 9, 13

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ..................................................................................................1, 18, 19

*Dzielak v. Whirlpool Corp.*,
   No. 2:12-cv-00089, 2017 U.S. Dist. LEXIS 39232 (D.N.J. Mar. 17, 2017) ...........................17

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................................................5

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .............................................................................................................9

*In re Asacol Antitrust Litigation*,
   No. 18-1065, 2018 U.S. App. LEXIS 28920 (1st Cir. Oct. 15, 2018) .........................2, 12, 15

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 326 (E.D. Mich. 2001) .......................................................................................15

*In re Lipitor (Atrovastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
   174 F. Supp. 3d 911 (D.S.C. 2016) ......................................................................................14

*In re Med. Waste Servs. Antitrust Litig.*,
   No. 2:03-md-01546, 2006 U.S. Dist. LEXIS 19793 (D. Utah Mar. 3, 2006) .........................18

*In re Plastics Additives Antitrust Litig.*,
   No. 03-cv-02038, 2010 U.S. Dist. LEXIS 90135 (E.D. Pa. Aug. 31, 2010) ...........................11

*In re Wellbutrin XL Antitrust Litig.*,
   No 08-cv-02431, 2011 U.S. Dist. LEXIS 90075 (E.D. Pa. Aug. 11, 2011) ...........................15

*Irvine v. Murad Skin Research Labs.*,
   194 F.3d 313 (1st Cir. 1999) ................................................................................................8

*J.B.D.L Corp. v. Wyeth-Ayerst Labs., Inc.*,
  No. 1:01-cv-00704, 2005 U.S. Dist. LEXIS 11676 (S.D. Ohio June 13, 2005)...............5, 13

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)................................................................................................4

*Rand v. Parametric Tech. Corp.*,
  No. 03-cv-11046, 2005 U.S. Dist. LEXIS 47964 (D. Mass. Oct. 19, 2005) ...........................4

*Royal Serv., Inc. v. Goody Prods., Inc.*,
  No. 87-15059, 1989 U.S. App. LEXIS 24070 (9th Cir. Jan. 6, 1989).......................................5

*Samaan v. St. Joseph Hosp.*,
  670 F.3d 21 (1st Cir. 2012)....................................................................................14

*Schubert v. Nissan Motor Corp.*,
  148 F.3d 25 (1st Cir. 1998)......................................................................................4

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline*,
  No. 04-cv-05898, 2010 U.S. Dist. LEXIS 105646 (E.D. Pa. Sept. 30, 2010).........................10

*SMS Sys. Maint. Servs. v. Digital Equip. Corp.*,
  188 F.3d 11 (1st Cir. 1999)...............................................................................4, 17

**INTRODUCTION**

The analysis of Direct Purchaser Plaintiff's class certification expert, Jeffrey Leitzinger, Ph.D. should be excluded because he relies on assumptions rather than facts and economic analysis. He thus reaches opinions that reflect little more than his subjective speculation. These are classic flaws that require exclusion. The Supreme Court has made it clear in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and elsewhere that expert testimony proffered in support of class certification must be relevant and reliable. Dr. Leitzinger's opinions are neither for at least three reasons.

*First*, rather than following a scientific method recognized by economists, Dr. Leitzinger instead ignores key facts and relies largely on unsupported assumptions provided to him by counsel to set the terms for his analysis. Dr. Leitzinger claims there is common evidence to show injury-in-fact as to each class member, that is to say, assuming generic Loestrin 24 market entry in September 2009 as Plaintiff claims,



Ex. 1 to Decl. of Daniel J. Walker ¶ 50, July 30, 2018, ECF No. 518-3 ("Leitzinger Rep."). But Dr. Leitzinger assumes away, at counsel's request,

*Id.* at ¶ 26; *see also infra* at § I.A.

Ex. 2 ("Leitzinger Dep. Tr.") 46:9–20, 48:6–51:8.

*Second*, Dr. Leitzinger's injury-in-fact opinion relies on the general proposition

1

███████████████████████████████████████.  This is contrary to the First Circuit's clear requirement in *In re Asacol Antitrust Litigation*, that class certification methodologies cannot be based on "statistical observations of tendencies and distributions," rather than on the experience of actual class members.  No. 18-1065, 2018 U.S. App. LEXIS 28920, at *31 (1st Cir. Oct. 15, 2018).

For example, Dr. Leitzinger assumes that ████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████.  Leitzinger Rep. ¶ 50.  But Dr. Leitzinger's own data set ██████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ █████████████████████████████████████  *See infra* at § II.A.

Likewise, in finding injury here, Dr. Leitzinger assumes that ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████.  Leitzinger Rep. ¶ 51.  But this assumption is counter-factual:  Dr. Leitzinger ignores that when generic Loestrin 24 actually launched in January 2014, six of the putative class members chose not to buy generic Loestrin 24 during the ensuing three years of the class period.  *See infra* at § II.B.  There is no basis in the record to believe that these entities that never bought generic Loestrin 24 when it was available would have bought generic Loestrin 24 had it been available earlier.

Additionally, Dr. Leitzinger mechanically assumes the market for contraceptives is just like that for any other pharmaceutical product.  Leitzinger Rep. ¶ 9.  Dr. Leitzinger ignores the fundamentally distinct aspects of contraceptives sales, such as the unique competitive dynamic created by generic manufacturers' use of "brand names" for their generic contraceptives — including the five "branded" generic Loestrin 24 products that entered during the class period. Where Dr. Leitzinger's own data shows that no fewer than 27 of the 48 companies he seeks to include in the class were not injured — a full 56% — it is clear his core opinion that class-wide impact can be shown with common evidence is unreliable and irrelevant.

*Third*, Dr. Leitzinger's methodology for calculating an alleged aggregate overcharge due to supposed generic delay (Leitzinger Rep. ¶ 54), and his related calculations (*id.* at ¶ 66) are likewise unreliable for similar reasons.  Dr. Leitzinger fails to establish ██████████████ ███████████, and assumes away Warner Chilcott's strategy for chewable Minastrin and ██████ ██████████████████████████████████████████.  *See infra* at §§ III.A., III.D. Further, Dr. Leitzinger's damages approach is unconnected to the alleged harm because it attributes damages to uninjured class members, such as ████████████████████████████ ██████████████.  *See infra* at § III.C.  Finally, Dr. Leitzinger fails to address key market factors, including the ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████.  *See infra* at § III.B.

For these and other reasons as explained in more detail below, Dr. Leitzinger's opinions and testimony should be excluded.

**FACTUAL BACKGROUND**

The proposed testimony of Dr. Leitzinger and facts relevant to this Motion are detailed in Defendants' Memorandum of Law in Opposition to Direct Purchaser Class Plaintiff's Motion for Class Certification, filed contemporaneously, and are incorporated herein by reference.

**ARGUMENT**

**I.     Dr. Leitzinger's Uncritical Reliance on Assumptions Provided by Counsel Render His Opinions Unreliable**

One of the most fundamental roles of an expert is to provide real analyses, applying the same level of professional and academic rigor in the courtroom as in the expert's outside work. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (*Daubert*'s gatekeeping function "make[s] certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *SMS Sys. Maint. Servs. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir. 1999) (same).  Experts can fail this basic requirement when they accept, without analysis, assumptions provided by the party that has hired the expert.  *See, e.g.*, *Rand v. Parametric Tech. Corp.*, No. 03-cv-11046, 2005 U.S. Dist. LEXIS 47964, at *4 (D. Mass. Oct. 19, 2005) ("An expert must do more than simply rely on a client's representations."); *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 428 (S.D.N.Y. 2009) (rejecting expert's opinions that were "merely a restatement of [Defendant's] views and . . . not the product of independent analysis").  Testimony based on assumptions unconnected to the facts lacks the factual foundation required under *Daubert*.  *See Schubert v. Nissan Motor Corp.*, 148 F.3d 25, 29 (1st Cir. 1998) ("A district court may exclude expert testimony where it finds that the testimony has no foundation or rests on . . . speculative evidence."); *Calisi v. Abbott Labs.*, No. 11-cv-10671, 2013 U.S. Dist. LEXIS 139257, at *25 (D. Mass. Sept. 27, 2013) (excluding expert testimony where it lacked sufficient facts and data in the record to demonstrate reliability).  These principles

apply fully at the class certification stage.  *E.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

982 (9th Cir. 2011) (applying *Daubert* to exclude expert testimony at class certification stage).

Here, the entire framework for Dr. Leitzinger's opinions concerning class wide impact and

damages rests on the mere say-so of counsel: ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

In other cases, several courts have rejected such unsupported opinions from Dr. Leitzinger,

and this Court should do the same.  *See Blades v. Monsanto Co.*, 400 F.3d 562, 570 (8th Cir. 2005)

("Simply put, plaintiffs *presume* class-wide impact without any consideration of whether the

markets or the alleged conspiracy at issue here actually operated in such manner so as to justify

that presumption.  Dr. Leitzinger *assumes* the answer to this critical issue and plaintiffs, in turn,

have asked the Court to rely on this *conclusion* as support for class certification.") (emphasis in

original); *Royal Serv., Inc. v. Goody Prods., Inc.*, No. 87-15059, 1989 U.S. App. LEXIS 24070, at

*4–5 (9th Cir. Jan. 6, 1989) (rejecting Dr. Leitzinger's conclusory testimony); *J.B.D.L Corp. v.

Wyeth-Ayerst Labs., Inc.*, No. 1:01-cv-00704, 2005 U.S. Dist. LEXIS 11676, at *53 (S.D. Ohio

June 13, 2005) ("While an expert may rely on another expert's opinion under Rule 702, neither

Leitzinger nor Schondelmeyer offer any objective study to confirm this point.  Worse, they ignore

substantial evidence in the record that contradicts their assumption.").

### A.   Dr. Leitzinger's Opinions Are Unreliable Because He Ignores Extensive Evidence that ██████████████████████████████████████████████

██████████████████████████████████████

As noted, Dr. Leitzinger's analysis relies on counterfactual assumptions provided by counsel.  ███████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████

████████████████████████████████████████████

████████████████████████████████████████   The record is clear that at all times Warner Chilcott had as its primary goal to compete against potential generics of Loestrin 24 by launching Minastrin in advance of any such generic entry.   Plaintiff's own

---

[1] Leitzinger Dep. Tr. 46:9–20 (████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ .

allegations,[2] contemporaneous business documents,[3] and witness testimony[4] confirm that Warner

Chilcott would have been in a position to receive FDA approval and ██████████████████

██████████████████████████████████████████████████████████

██████████████████

Yet Dr. Leitzinger admits ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████ *see also* Defs.' Opp'n Direct Purchaser Pls.' Mot. Class Cert. at § D.

("Defs' Opp'n Br.").



Competition from Warner Chilcott's launch of Minastrin prior to entry by generic Loestrin

24 products directly affects any consideration of class-wide impact in the but-for world because,

in a world where more products are available to class members, as Defendants' expert, Dr.

Cremieux observes, it is common sense that the "multiplicity of options makes determining but-

---

[2] Direct Purchaser Class Pls.' Third Am. Consol. Class Action Compl. ¶ 289, ECF No. 380 (alleging that Warner Chilcott was "just months away from expected FDA approval" of Minastrin in January 2009).

[3] Ex. 3, WCL0202305 (████████████████████████████████████████ ██████████████████████████████████).

[4] *See, e.g.*, Ex. 4, McClenaghan (Warner Chilcott) Dep. Tr. 46:5–47:9; 113:6–17 (Warner Chilcott was prepared to launch a chewable product in order to establish the brand in the market so that it would be better positioned to compete once generics launched); Ex. 5, deVries (Warner Chilcott) Dep. Tr. 52:11–53:4 (highlighting the emphasis that Warner Chilcott placed on developing innovative products and bringing them to market as soon as possible); Ex. 6, Reichel (Warner Chilcott) Dep. Tr. 211:18–213:4 (describing the size of the oral contraceptive market and explaining that a chewable product was viewed as an innovative approach to distinguishing a product in a market with "a lot of choices"); Ex. 4, McClenaghan (Warner Chilcott) Dep. Tr. 188:19–189:13 (Warner Chilcott sought innovative ways to distinguish its products because it did not possess a large market share); *id.* at 124:12–125:11 (Warner Chilcott's reformulation efforts and timing of the launch of Minastrin 24 were guided, in part, by the need to mitigate risk and uncertainty).

for purchases by each Class member more complex."   Ex. 1, Expert Report of Pierre-Yves Cremieux ¶ 48 ("Cremieux Rep.").

In short, Dr. Leitzinger's opinions lack the "factual foundation" required under *Daubert* and must be excluded.  *See Irvine v. Murad Skin Research Labs.*, 194 F.3d 313, 321 (1st Cir. 1999) ("Absent adequate factual data to support the expert's conclusions his testimony was unreliable.").

**B.**     **Dr. Leitzinger's Opinion Is Similarly Unreliable Where He Failed to Investigate His Assumption that** ███████████████████████████████
██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

8

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ .

The lack of support for Dr. Leitzinger's but-for world assumptions about ██████ further renders his opinions unreliable and inadmissible. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert's analysis must be connected to case facts); *Calisi*, 2013 U.S. Dist. LEXIS 139257, at *25 (excluding expert testimony where it lacked sufficient facts and data in the record to demonstrate reliability).

**C.      Dr. Leitzinger Has No Basis to Assume** ████████████████████
████████████████

To support retailer Plaintiff Ahold's theory that earlier generic entry by Watson would have occurred but for the patent settlement, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Indeed, as of the January 2009 settlement — only 9 months prior to Dr. Leitzinger's but-for entry date for Watson — the court hearing Warner Chilcott's patent infringement claim against Watson concerning Loestrin 24 had not yet addressed key motions or even set a trial date. Defs.' Mem. of Law in Opp'n to End-Payor Pls.' Mot. for Class Cert., at § A. If the patent litigation were not resolved, a launch by Watson in September 2009 would have been at-risk — meaning Watson would have risked treble damages for Warner Chilcott's lost profits on branded Loestrin 24 if Watson ultimately lost the patent litigation. *Id.* Launching at-risk could have expose Watson to

massive liability.  *Id.*  The record evidence from the CEO of Watson is that Watson would *not*

have launched at risk against Loestrin 24 in 2009.  *Id.*; *see also* Ex. 9, Bisaro (Watson) Dep. Tr.

249:9–250:18 (testifying that conditions that might allow Watson to consider launching a product

at-risk were not present for Loestrin 24).  Dr. Leitzinger's failure to ground his entry assumptions

in the record facts further renders his analysis and opinions unreliable and inadmissible.

### D.  Dr. Leitzinger's Assumption that █████████████████████████████████

As found in prior cases (*see supra* § I), Dr. Leitzinger offers no more than conclusory

assertions.  ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  *See supra* § I.A.  And in the actual world, even Warner Chilcott's successor

Actavis/Allergan — itself a large generic manufacturer at the time — did not launch an authorized

generic until 16 months after it had the opportunity to do so.  Cremieux Rep. ¶ 102.

## II.  Dr. Leitzinger's Impact Analysis — Which Assumes Injury-in-Fact — Is Flawed and Inadmissible, Including Under *Asacol*

Dr. Leitzinger assumes that generic entry was unlawfully delayed and declares that ████████

████████████████████████████████████████████████████████████████

████████████████████████  Leitzinger Rep. ¶ 9(b).  Courts reject conclusory assertions that

common evidence is available to establish injury-in-fact as to all or nearly all class members where

the expert did not assess whether there is reason to believe that a significant portion of the class

actually suffered no injury.  *See Blades*, 400 F.3d at 571; *see also Sheet Metal Workers Local 441*

*Health & Welfare Plan v. GlaxoSmithKline*, No. 04-cv-05898, 2010 U.S. Dist. LEXIS 105646, at

*93–94 (E.D. Pa. Sept. 30, 2010) ("A 'rigorous analysis' of [Plaintiffs' experts'] reports and testimony reveals it does not show that all class members paid supra-competitive prices for generic or branded sustained release bupropion, or that this determination can be made with common proof . . . Not only do I believe these uninjured groups would be substantial in size, but the plaintiffs did not show they can address injury with common proof.").

Here, at least 56% of the proposed class either was uninjured or is unable to establish any injury caused by the alleged generic delay at issue in this case.  Cremieux Rep. ¶¶ 62–63 & Ex. 11b (identifying twenty one generic-only and six brand-only purchasers who suffered no impact from the alleged unlawful conduct).  Because the evidence reveals that a large number of class members would not have been impacted, Dr. Leitzinger's impact analysis fails to meet the standard set forth by *Daubert*.  *Blades*, 400 F.3d at 570 (rejecting Dr. Leitzinger's conclusion of common impact where evidence showed substantial portion of class members not impacted.); *In re Plastics Additives Antitrust Litig.*, No. 03-cv-02038, 2010 U.S. Dist. LEXIS 90135, at *71–72 (E.D. Pa. Aug. 31, 2010) (finding expert analysis unreliable where "unrefuted evidence shows that some class members suffered impact while others did not").

A.   **Dr. Leitzinger Ignores His Own Data Set Showing No Injury for Generic-Only Purchasers**

Dr. Leitzinger's analysis of injury for generic-only purchasers is not grounded in the facts of the case.  Dr. Leitzinger relies on generalized evidence and averages to conclude that ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████. *Id.* at ¶ 50.

But Dr. Leitzinger conducts no corresponding empirical analysis to test whether general patterns regarding generic pricing hold in the specific context of the contraceptive marketplace, with its fairly unique facts, including the distinctive competition between and among branded generic products. ██████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████ Those aggregated references mask key differences in pricing between and among generic Loestrin 24 products. *See Asacol*, 2018 U.S. App. LEXIS 28920, at *31–32 ("[S]tatistical observations of tendencies and distributions" cannot be used to "create a class-entity or re-apportion substantive claims.").

Specifically, █████████████████████████████████████████, as well as aggregated pricing data, and argues that ████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████ The forecasts, however, merely project aggregate market prices for the generic product.  And the data upon which Dr. Leitzinger relies suffers from the same problem: it only provides an aggregate view of prices.  Neither set of data provides any insight on the prices to each class member, which, as Dr. Cremieux explains (*see* Cremieux Rep. ¶ 36), is the critical inquiry for an impact analysis because aggregate data can hide individualized impact

issues.  *See Blades*, 400 F.3d at 570 (rejecting use of aggregate pricing data because "evidence . . . demonstrated that these [aggregate prices] did not reflect the actual price paid by farmers"); *J.B.D.L Corp.*, 2005 U.S. Dist. LEXIS 11676, at *53 (rejecting Dr. Leitzinger's reliance on "basic economic theory" that "a dominant seller will lower its product price in response to market entry of competitors" because "[t]here is a significant body of evidence that" contradicted Dr. Leitzinger's assumption).

Dr. Cremieux performed the analysis Dr. Leitzinger skipped, and showed that, contrary to Dr. Leitzinger's assumption, prices paid by many generic-only purchasers in the proposed class ***did not decline with additional generic entrants***.  Cremieux Rep.  ¶¶ 42–45.  In fact,



Dr. Leitzinger's reliance on generalized presumptions and averages instead of economic testing using the actual data available in this case renders his impact opinion regarding generic-only purchasers inadmissible.  *See Calisi*, 2013 U.S. Dist. LEXIS 139257, at *25 (proponent must show expert's opinion "is not 'connected to existing data only by the *ipse dixit* of the expert'");

*see also Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 32 (1st Cir. 2012) (holding expert testimony must be excluded where "there is simply too great an analytical gap between the data and the opinion proffered") (citation omitted); *In re Lipitor (Atrovastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 174 F. Supp. 3d 911, 932 (D.S.C. 2016) ("[F]ailing to adequately account for contrary evidence is not reliable or scientifically sound.").

### B.  Dr. Leitzinger's Impact Analysis for Brand-Only Purchasers Is Fundamentally Flawed

Dr. Leitzinger inappropriately assumes that 

. Cremieux Rep. ¶ 56.  Here, over 12% (6 out of 48) of the proposed class consists of brand-only purchasers.  *Id*. at ¶ 57.  Dr. Leitzinger claims a

Leitzinger Rep. ¶ 51.  This conclusion is no more than an unsupported assumption that other courts regularly reject, and for good reason.

Dr. Leitzinger ignores that the six brand-only purchasers never purchased generic Loestrin 24, despite it being available starting in January 2014.  Further, Dr. Leitzinger ignores the fact that some wholesalers may decide against carrying generic versions of a product because many retailers purchase generics directly from generic manufactures.  Cremieux Rep. ¶ 69 n.92 (explaining drop in wholesaler volume following generic entry where retailers buy generic products from the manufacturer instead of a wholesaler).  There is no basis to presume that these (or other) brand-only purchasers would have purchased generic Loestrin 24 had it been available sooner, given that they did not purchase it even though it was available.  Any attempt to prove they would have done

14

so would require individualized inquiry using individualized evidence. *Id.* ¶ 56. As such, courts regularly exclude brand-only purchasers from proposed classes in delayed generic entry cases. *See, e.g.*, *Asacol*, 2018 U.S. App. LEXIS 28920, at *27–28 (rejecting as "demonstrably wrong" probabilistic assumption about impact to any individual consumers based on generic penetration rate); *In re Wellbutrin XL Antitrust Litig.*, No 08-cv-02431, 2011 U.S. Dist. LEXIS 90075, at *39–41 (E.D. Pa. Aug. 11, 2011) (finding that plaintiff cannot "demonstrate antitrust impact with class-wide evidence" for entities that did not purchase the generic after it became available); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 343 (E.D. Mich. 2001) (redefining class definition to exclude purchasers that did not actually buy a generic alternative after generic entry). Dr. Leitzinger's impact opinion regarding brand-only purchasers thus is inadmissible.

*     *     *     *     *

In sum, Dr. Leitzinger's report fails to provide the requisite intellectual rigor in assessing antitrust impact that *Daubert* and Rule 702 require. Dr. Leitzinger's references to general economic principles and his experience in other delayed generic entry cases does not permit him to shirk his responsibility to ground his opinions in the facts of the case. This is not a question of weight, but rather a fundamental failure to apply valid methodologies and reasoning in a way that reliably predicts which class members — if any — were impacted by the allegedly unlawful conduct. Here, Dr. Leitzinger ignores critical facts and the implications of his own methodology and chooses probabilistic presumptions over inconvenient, contrary facts. As Dr. Cremieux's report shows, the need for individualized inquiry regarding impact in this case is inescapable. In fact, the available evidence shows that more than half of the proposed class (at a minimum, generic-only and brand-only purchasers) suffered no injury. Dr. Leitzinger's opinion that there is

common evidence sufficient to show class-wide impact is not relevant or reliable and should be excluded.

## III.   Dr. Leitzinger's Damages Analysis Is Similarly Flawed and Inadmissible

Dr. Leitzinger's opinion that ███████████████████████████

███████████████████████████████████████████████████████████

██████████████████ (Leitzinger Rep. ¶ 9(c)), and his calculation of damages under scenarios

provided by class counsel, suffer from numerous flaws. ████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

### A.   Dr. Leitzinger's Use of ███████████████████████ Is Unreliable

Dr. Leitzinger relies on ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

Experts must do more than place blind reliance on ███████; they must address the reliability of those documents, and where they fail do so their opinion must be excluded. *See SMS Sys.*, 188 F.3d at 25 (holding an expert "must vouchsafe the reliability of the data on which he relies and explain how the cumulation [*sic*] of that data was consistent with the standards of the expert's profession."); *Dzielak v. Whirlpool Corp.*, No. 2:12-cv-00089, 2017 U.S. Dist. LEXIS 39232, at *66–68 (D.N.J. Mar. 17, 2017) (finding expert's opinion unreliable where expert performed no independent investigation of accuracy or reliability of data in documents upon which he relied). Dr. Leitzinger's use of cherry-picked forecasts instead of actual price discounts observed in the generic Loestrin 24 purchase data available to him inflates his estimated damages by ███████████. ████████. Cremieux Rep. ¶ 90.

**B.   Dr. Leitzinger Fails to Reduce Damages Based on Shifting Purchasing Patterns When Generics Enter**

Despite acknowledging ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████, Dr. Leitzinger fails to account for it. Leitzinger Rep. ¶¶ 68–70 ████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████) (emphasis added).

Any methodology that fails to account for this███████████████████████████ ██████ overstates damages and ignores the individual damages issues raised in this case. Cremieux Rep. ¶¶ 82-83.   Damages are overstated because █████████████████████████████ ████████████████. *Id.* at ¶¶ 69, 83 ████████████████████████ ███████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *Id.* at ¶ 83. This overstatement may be in excess of ███████████. *Id.* at ¶ 86.

████████████████████████████████████████████████████████████████

████████████████████████████████ An expert cannot promise to provide relevant analysis at some later date. *See Comcast*, 569 U.S. at 35–36 (explaining that plaintiffs must do more than simply provide arbitrary measurements of what potential damages may be and instead must "tie" damages to their theory of impact); *In re Med. Waste Servs. Antitrust Litig.*, No. 2:03-md-01546, 2006 U.S. Dist. LEXIS 19793, at *25–26 (D. Utah Mar. 3, 2006) (rejecting plaintiffs' damages methodology where plaintiffs "promise to develop in the future some unspecified workable damage formula").

## C.   Dr. Leitzinger's Damages Model Includes Damages for Uninjured Class Members

Dr. Leitzinger provides no basis, because there is none, for calculating "overcharges" on generic Loestrin 24 purchases. As explained above (*see supra* § II.A) and in Defendants' opposition to class certification, generic-only purchasers should be excluded from the class, and there is no evidence that any generic-only purchaser was injured by the alleged delay. Further, ██

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ Cremieux Rep. ¶ 105. Separately, Dr. Leitzinger provides no evidence that the six brand-only purchasers suffered harm. *See supra* § II.B; Cremieux Rep. ¶ 106; Defs.' Opp'n Br. at § I.A.2. Dr. Leitzinger's calculation of damages where no injury occurred inflates his damages figure by approximately ███████. Cremieux Rep. ¶ 107.

### D.      Dr. Leitzinger Fails to Take Account of Key Facts

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████   Dr. Leitzinger cannot project damages based on assumptions unsupported by the factual record. *Comcast*, 569 U.S. at 35–36 (rejecting damages analyses that ignore relevant evidence).

### E.      Dr. Leitzinger's Aggregation Is Fundamentally Flawed

*Failure to separate harm*.  Dr. Leitzinger estimates overcharges collectively ████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████



## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court exclude the expert report and testimony of Dr. Leitzinger and preclude him from testifying at any class certification hearing and trial.

Dated: October 19, 2018

Respectfully submitted,

*/s/ J. Mark Gidley*_____
J. Mark Gidley (pro hac vice)
Peter J. Carney (pro hac vice)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Robert A. Milne (pro hac vice)
Jack E. Pace III (pro hac vice)
Michael J. Gallagher (pro hac vice)
Alison Hanstead (pro hac vice)
Michael E. Hamburger (pro hac vice)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Lauren M. Papenhausen (pro hac vice)
Katherine Dyson (pro hac vice)
WHITE & CASE LLP

75 State Street, Floor 24
Boston, MA 02109
Telephone: (617) 979-9300
Facsimile: (617) 979 9301

Angela D. Daker (pro hac vice)
WHITE & CASE LLP
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
Telephone: (305) 995-5297
Facsimile: (305) 358-5744

*/s/ Nicole J. Benjamin*
John A. Tarantino (#2586)
jtarantino@apslaw.com
Nicole J. Benjamin (#7540)
nbenjamin@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Telephone: (401) 274-7200
Facsimile: (401) 751-0604

*Attorneys for Warner Chilcott Co., LLC f/k/a Warner Chilcott Co., Inc., Warner Chilcott (US), LLC, Warner Chilcott Sales (US), LLC, Warner Chilcott plc n/k/a Allergan WC Ireland Holdings Ltd., Warner Chilcott Holdings Co. III, Ltd., Warner Chilcott Corp. Warner Chilcott Sales (US), LLC, Warner Chilcott Laboratories Ireland Limited, Watson Laboratories, Inc., and Watson Pharmaceuticals, Inc.*

21

## CERTIFICATE OF SERVICE

I, Nicole J. Benjamin, hereby certify that on this 26th day of October 2018, copies of the foregoing redacted public version of Defendants' Memorandum of Law in Support of Motion to Exclude the Opinions and Testimony of Direct Purchaser Plaintiff's Expert Jeffrey J. Leitzinger will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Nicole J. Benjamin*
Nicole J. Benjamin