UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE LOESTRIN 24 FE ANTITRUST LITIGATION<br><br>*All Actions* | MDL No. 2472<br><br>C.A. No. 1:13-md-2472-S-PAS |

**DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE ARGUMENT, EVIDENCE, OR ADVERSE INFERENCES BASED UPON DEFENDANTS' INVOCATION OF PRIVILEGE OR A NON-PARTY'S PRIVILEGE LOG (MIL NO. 5)**

Faced with a dearth of evidence to support their *Walker Process* fraud claim, Plaintiffs resort to drawing adverse inferences as to the content of privileged material, which federal law prohibits. Plaintiffs' summary judgment arguments and proposed exhibit list show Plaintiffs plan to argue improper inferences of fraud from the invocation of privilege by non-party Eastern Virginia Medical School ("EVMS") in connection with entries in the EVMS privilege log indicating that certain Warner Lambert employees communicated with EVMS counsel under a common interest privilege about the patent application underlying the '394 patent. Plaintiffs' summary judgment arguments and proposed exhibit list also show that Plaintiffs plan to argue improper inferences of fraud based on material from the Watson patent litigation indicating that outside counsel for Watson may have previously provided legal advice to Warner Chilcott concerning the '394 patent. These attorney-client communications or attorney work product materials are irrelevant to Plaintiffs' claims unless Plaintiffs implicitly or explicitly ask the jury to draw an improper and highly prejudicial adverse inference that those privileged communications reflected attorney advice, for example, that the '394 patent was fraudulently obtained. The Court should prevent Plaintiffs from doing so under Federal Rules of Evidence

402 and 403.  The Court also, pursuant to Rules 402 and 403, should bar Plaintiffs from asking any question in the presence of the jury that would logically lead Defendants to assert attorney-client or work product protections or call the jury's attention to Defendants' or any third-party's invocation of the privilege.

I.   **Federal Law Prohibits Thwarting the Attorney-Client Privilege by Allowing a Negative Inference from the Proper Invocation of Privilege**

Under federal law, "[a] negative inference should not be drawn from the proper invocation of the attorney-client privilege." *In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 120 (4th Cir. 1994).[1]  "Disallowing adverse inferences is a logical extension of the attorney-client privilege since allowing a negative inference would in many cases oblige the client to produce the privileged materials." *THK Am., Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 566-67 (N.D. Ill. 1996); *see also Astra Pharm. Prods. v. Beckman Instruments, Inc.*, No. CA 79-1445-T, 1983 U.S. Dist. LEXIS 18289, at *11 (D. Mass. Mar. 24, 1983) ("The court cannot draw adverse inferences from the proper assertion of an attorney-client privilege."), *aff'd*, 718 F.2d 1201 (1st Cir. 1983).  The same is true for work product.  *See United States v. One Tract of Real Prop.*, 95 F.3d 422, 428 (6th Cir. 1996) ("[A] court should not draw adverse inferences . . . if the work product privilege protects the information sought.").

Courts therefore consistently refuse to allow parties to raise a negative inference from the proper invocation of the attorney-client or work product privileges.  *See, e.g.*, *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 479 n.25 (3d Cir. 2005) (rejecting argument that

---

[1] Federal law governs the privilege and work product issues here.  Fed. R. Evid. 501; *Gargiulo v. Baystate Health Inc.*, 279 F.R.D. 62, 64 (D. Mass. 2012) ("[C]ourts have repeatedly applied the federal approach to privilege to both federal and state claims where both are included in the litigation."); *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 11 (D. Mass. 1997) ("The work product doctrine, however, is a federal right derived from the Federal Rules of Civil Procedure and therefore 'resolved according to federal law.'" (citations omitted)).

2

assertion of privilege over trademark search "constitutes evidence of [defendant's] bad faith" because "it is improper to draw an inference of bad faith from the assertion of the attorney-client privilege"); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (en banc) ("[N]o adverse inference shall arise from invocation of the attorney-client and/or work product privilege."); *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir. 1990) ("[A] client asserting the [attorney client] privilege should not face a negative inference about the substance of the information sought.").

### A.     It Is Improper to Draw an Adverse Inference from Privilege Log Entries

Plaintiffs have shown they intend to attempt to support their allegations of *Walker Process* fraud by relying on the patent litigation privilege log from non-party EVMS, re-produced in this action. In opposition to Defendants' motion for summary judgment, Plaintiffs argued that EVMS attorney-client privilege log entries could "show involvement" of certain Warner Lambert employees with the patent prosecution. Pls.' Opp'n to Defs.' Mot. for Summ. J. at 17 n.104 (June 13, 2019), ECF No. 978 ("SJ Opp."). This rings hollow because the central issue here is not "involvement," but knowledge of fraud.[2] Indeed, Plaintiffs' brief makes clear that the actual purpose (and the only feasibly relevant and non-cumulative purpose) of relying on these entries is to improperly suggest knowledge of fraud.

For example, in a section of their brief called "Warner Chilcott knew about the fraud, in part because its executives were involved," Plaintiffs cited the EVMS privilege log to argue that two individuals at Warner Lambert, Francis Tinney and Carl Reichel, "both communicated with

---

[2] *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 179 (1965) (Harlan, J. concurring) (plaintiff must prove that "the relevant patent was procured by knowing and willful fraud . . . or, if the defendant was not the original patent applicant, he had been enforcing the patent with knowledge of the fraudulent manner in which it was obtained")

3

Meilman and Hodgen several times immediately before that fraudulent submission." *Id.* at 13, 16 & n.97. Plaintiffs' phrasing suggests that the communication was about the allegedly "fraudulent submission." Plaintiffs' slides filed in support of their summary judgment argument directly cite the privilege log as evidence that "Warner Chilcott Executives Knew About Fraud." Ex. A, Excerpt of Pls.' Sept. 11, 2019 Hearing Slides, ECF No. 1273-2, at slides 77-78.

However, nothing in the EVMS privilege log entries supports Plaintiffs' argument of fraud. The "mere existence of these communications" does not support Plaintiffs' allegations of *Walker Process* fraud, which requires a showing of specific intent to deceive, as well as specific knowledge of fraud by subsequent Warner Chilcott executives. *See Avocent Redmond Corp. v. Raritan Ams., Inc.*, 921 F. Supp. 2d 229, 236 (S.D.N.Y. 2012) (rejecting plaintiffs' assertion that a "privilege log" and "invoices" that showed "the existence of some correspondence . . . raises an inference that the conversations were directed to the deliberate withholding of the [material] from the USPTO"). Plaintiffs should not be permitted to rely on privilege log entries as evidence of "communications" about the '394 patent application, as that would put Defendants in the untenable position of being unable to respond to Plaintiffs' implications regarding the underlying documents without waiving privilege to rebut unsubstantiated inferences.

Plaintiffs have doubled down on their use of the privilege log in their pretrial disclosures, including 8 references to privilege log entries on their proposed Rule 1006 exhibit entitled "Summary of Communications Between Warner Lambert/Parke Davis and EVMS/Hodgen/Meilman about the Development, Prosecution, and Assignment of U.S. Pat. No. 5,552,394."[3] However, "the privilege log itself is not evidence" and will lead to jury confusion.

---

[3] In opposing summary judgment, Plaintiffs also rely on privilege log entries from this case related to the Watson patent litigation. They argue that "Boissonneault and Bruno

*See Old Republic Ins. Co. v. Ness*, No. 03 C 5238, 2006 U.S. Dist. LEXIS 100992, at *35-36 (N.D. Ill. Dec. 21, 2006) (holding that privilege log is inadmissible because "any probative value is substantially outweighed by the probability of jury confusion"); *see also Citizens Union of N.Y. v. AG of N.Y.*, 269 F. Supp. 3d 124, 147 (S.D.N.Y. 2017) ("It is difficult for this Court to ideate a use of the documents listed on the Privilege Log that would not require impermissible speculation or the consideration of hearsay.").

Including references to privilege log entries is further improper here because it is highly prejudicial and irrelevant (i.e., the only conceivable relevance is for Plaintiffs to speculate about fraud). Such a use subverts the purpose of the attorney-client privilege to foster candid communications with counsel and is strictly prohibited. *See, e.g.*, *King Drug Co. of Florence v. Cephalon, Inc.*, No. 2:06-cv-1797, 2016 U.S. Dist. LEXIS 7477, at *28 (E.D. Pa. Jan. 22, 2016) ("Calling the jury's attention to [invocation of the attorney-client or the work product doctrine], would serve only to imply that the jury should draw an adverse inference . . . . such an implication is wholly improper"); *Beraha v. Baxter Healthcare Corp.*, No. 88 C 9898, 1994 U.S. Dist. LEXIS 12523, at *8-9 (N.D. Ill. Sep. 2, 1994) (when "the only purpose for which [plaintiff] seeks to admit evidence of the fact that these communications occurred is to enable the jury to

---

communicated with counsel between receiving Watson's paragraph IV notice and filing suit" in support of their argument that "Warner Chilcott knew about the fraud." SJ Opp. at 17 & n.103 (citing PX259, Privilege Log Excerpt); *see also* Ex. A at slide 83.

Plaintiffs' reliance on an inference from communication with counsel prior to filing litigation is improper on summary judgment, and would be even more improper and prejudicial before a jury. *See, e.g.*, *Sharer Inc. v. Tandberg*, No. 1:06-cv-626, 2007 U.S. Dist. LEXIS 22391, at *5-6 (E.D. Va. Mar. 27, 2007) (granting motion *in limine* because "[t]he fact that [plaintiff] met with an attorney prior to the email exchange . . . is only relevant to the extent that an inference may be drawn as to the substance of legal communications between attorney and client."); *Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1365 (S.D. Fla. 2004) ("Plaintiffs seek to meet their burden by raising a negative inference from [defendant's] invocation of the attorney-privilege regarding the information it had before filing the suits. However, no such negative inference can arise from the assertion of the privilege . . . .").

5

drawn an adverse inference therefrom. . . . the mere fact that these privileged conversations occurred is substantially outweighed by its potentially unfair prejudicial effect").

Courts have refused to allow parties to rely on privilege log entries when the entries would only be relevant if the fact finder were to draw adverse inferences. *See Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 337-38 (N.D.N.Y. 2017) (refusing to "make adverse inferences based on a party's assertion of the attorney-client privilege" on privilege log entries that supposedly evidenced "ill motives"); *Galderma Labs. v. Paddock Labs.*, No. 4:09-CV-002-Y, 2011 U.S. Dist. LEXIS 32196, at *13 (N.D. Tex. Mar. 28, 2011) (similar); *Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-CV-158, 2008 U.S. Dist. LEXIS 111828, at *9-10 (E.D. Tex. Apr. 25, 2008) (similar).

Courts have also refused to rely upon privilege log entries where, like here, any potential inference would be based on pure speculation. *See Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 6:12-cv-00196, 2018 U.S. Dist. LEXIS 106970, at *39-40 (N.D.N.Y. June 27, 2018) (precluding admission of privilege log when defendant "ha[d] not identified any relevant, nonspeculative inferences that could be drawn from it"); *Wilson v. AM Gen. Corp.*, No. 3:95-CV-125RM, 1996 U.S. Dist. LEXIS 16831, at *39-41 (N.D. Ind. Sep. 16, 1996) (inferences from privilege log based on "rank speculation that the document not produced on the basis of attorney-client privilege somehow would show [an overall scheme] . . . .").

**B.     Drawing Adverse Inferences from Counsel's Patent Opinions Is Improper**

Plaintiffs have also made clear their intention to rely upon specific discussions with counsel and their speculation about opinions from counsel concerning the '394 patent. In opposing summary judgment, Plaintiffs argued that "Warner Chilcott's outside counsel [Kenyon] later reviewed and analyzed the patent prosecution when it bought the '394 patent." SJ Opp. at 16. Plaintiffs rely on Warner Chilcott's declaration in support of a motion to disqualify

6

Watson's patent counsel (Kenyon) in the Watson patent litigation. The declaration states that Warner Chilcott (then Galen), hired Kenyon to "conduct due diligence and provide legal advice" on the assets Galen purchased from Pfizer in 2003, including the '394 patent. SJ PX206, ECF No. 984-83. Plaintiffs apparently intend to introduce evidence on this issue before the jury—they have included at least 12 different documents relating to the motion to disqualify on their proposed exhibit list. However, Plaintiffs ignore the facts asserted in these documents, and will improperly ask the jury to infer that the advice was unfavorable to Warner Chilcott. This is clear from Plaintiffs' summary judgment materials, which cite the declaration as support for their argument that "Warner Chilcott Executives Knew About Fraud" because "Warner Chilcott's outside counsel reviewed the patent." Ex. A, at slide 80. The prejudice that would result from allowing the jury to consider this issue is highlighted by the fact that Kenyon stated, and the court agreed, that Kenyon *did not actually conduct* what they viewed as an evaluation of the '394 patent rising to the level that would require them to be disqualified from the Watson action, in part because they did not develop an opinion on validity, enforceability, or scope of the patent. *See* Op. & Order at 6, *Warner Chilcott Co. v. Watson Pharm., Inc.*, No. 06-cv-03491 (D.N.J. July 28, 2008), ECF No. 93. Furthermore, a jury would not understand the nuances of a motion to disqualify counsel that a party believes is conflicted. Plaintiffs' argument could lead to the jury to conclude that Warner Chilcott moved to disqualify counsel because it was concerned about the opinions Kenyon had provided or information Kenyon knew.

The Court should not admit any evidence concerning the motion to disqualify Kenyon or allow any speculation or negative inference about any advice Kenyon may have provided about the '394 patent for the same reasons discussed in Section I.A. In *Knorr-Bremse*, the Federal Circuit held that "[a]n adverse inference that a legal opinion was or would have been unfavorable

7

shall not be drawn from invocation of the attorney-client and/or work product privileges or from failure to consult with counsel." 383 F.3d at 1347.

In *McKesson*, the court held that an adverse inference jury instruction would not cure the problem because "[i]t is inescapable that the jury would likely conclude that [defendant] received an unfavorable opinion, otherwise [defendant] would reveal it. This is precisely the negative inference *Knorr* prohibits." *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006). The court granted defendant's motion *in limine*, precluding the plaintiff "from introducing evidence or testimony pertaining to [defendant's] assertion of the attorney-client privilege over the opinion of counsel it received regarding the '716 patent." *Id; see also In re Broyles*, No. 10-854-JJB-CBW, 2016 U.S. Dist. LEXIS 122625, at *9-10 (M.D. La. Sep. 8, 2016) (precluding introduction of privileged "documents reflecting [defendants'] investigation into their due diligence process" because "calling the jury's attention to [invocations of privilege] would only serve to imply that the jury should draw an adverse inference").

As in the cases above, it is improper here for Plaintiffs to introduce evidence solely to show the fact of representation in order to allow the jury to infer that such advice was unfavorable. Here, it is even more problematic because Plaintiffs imply that Warner Chilcott would only have moved to disqualify Kenyon or been concerned with the conflict of interest because it was concerned about the negative information Kenyon provided or knew. Plaintiffs should be precluded from introducing these arguments.

## II. Plaintiffs Should Be Prohibited from Asking Questions of Trial Witnesses that They Reasonably Believe Will Lead to Privilege Objections from Defense Counsel

Defendants have not waived privilege and do not intend to. The parameters of Defendants' assertion of the privilege have been clear throughout discovery. Accordingly, Plaintiffs should be prohibited from posing questions to Defendants' witnesses that would

logically elicit a privilege objection, which might cause the jury to draw an adverse inference.

In a different "reverse payment" case, Judge Goldberg in *Cephalon* held that "Plaintiffs also may not ask any question of a defense witness where it would be reasonable to conclude that the question will elicit an invocation of the attorney-client privilege," recognizing that plaintiffs would be aware of what would prompt a privilege objection from the "extensive discovery undertaken in [the] case." *Cephalon*, 2016 U.S. Dist. LEXIS 7477, at *28-29. Many courts have recognized that it is improper to require defendants to invoke privilege in front of the jury, and have prevented plaintiffs from asking questions that would lead to this outcome. *See, e.g.*, *Tallo v. United States*, 344 F.2d 467, 469-70 (1st Cir. 1965) (noting that "it is improper to require a defendant to claim other privileges [including the attorney-client privilege] in the presence of a jury" and holding that "defendant should be given an opportunity to claim the privilege against spousal testimony in the absence of the jury"); *Broyles*, 2016 U.S. Dist. LEXIS 122625, at *10 (prohibiting plaintiffs "from asking any question of the [defendants'] witnesses where it would be reasonable to conclude that the question would elicit an invocation of the attorney client privilege"); *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 U.S. Dist. LEXIS 60447, at *21 (N.D. Ill. Apr. 29, 2013) (prohibiting plaintiff from "ask[ing] any question which she reasonably expects will cause Defendants to assert the attorney-client privilege").

## Conclusion

Defendants respectfully request that the Court enter an order *in limine* prohibiting Plaintiffs from:

1. Relying on or calling the jury's attention in any manner to Defendants' or a non-party's invocation of the attorney-client or attorney work product privileges, including discussion, argument, or introduction into evidence of (a) entries in privilege logs; (b) the fact or potential contents of attorney advice concerning the '394 patent or patent litigations; and (c)

9

documents regarding Warner Chilcott's motion to disqualify Kenyon as counsel for Watson in the Watson patent litigation; and

    2.    Asking a question before the jury that would logically elicit a privilege objection.

Dated: October 24, 2019

Respectfully submitted,

*/s/ J. Mark Gidley*
Christopher M. Curran (pro hac vice)
J. Mark Gidley (pro hac vice)
Peter J. Carney (pro hac vice)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Robert A. Milne (pro hac vice)
Jack E. Pace III (pro hac vice)
Michael J. Gallagher (pro hac vice)
Alison Hanstead (pro hac vice)
Michael E. Hamburger (pro hac vice)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

Lauren M. Papenhausen (pro hac vice)
Katherine Dyson (pro hac vice)
WHITE & CASE LLP
75 State Street, Floor 24
Boston, MA 02109
Telephone: (617) 979-9300
Facsimile: (617) 979-9301

*/s/ Nicole J. Benjamin*
John A. Tarantino (#2586)
jtarantino@apslaw.com
Nicole J. Benjamin (#7540)
nbenjamin@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Telephone: (401) 274-7200

Facsimile: (401) 751-0604

*Attorneys for Warner Chilcott Co., LLC f/k/a Warner Chilcott Co., Inc., Warner Chilcott (US), LLC, Warner Chilcott Sales (US), LLC, Warner Chilcott plc n/k/a Allergan WC Ireland Holdings Ltd., Warner Chilcott Holdings Co. III, Ltd., Warner Chilcott Corp., Warner Chilcott Laboratories Ireland Limited, Watson Laboratories, Inc., and Watson Pharmaceuticals, Inc.*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2019, the foregoing Motion filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). The foregoing Motion is also available for viewing and downloading from the ECF system.

/s/ *Nicole J. Benjamin*
Nicole J. Benjamin (#7540)