## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE: LOESTRIN 24 FE ANTITRUST LITIGATION | Master File No. 13-md-2472-WES-PAS MDL No. 2472 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **[FILED UNDER SEAL]** |

**PURCHASERS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* (MIL NO. 5) TO PRECLUDE ARGUMENT, EVIDENCE, OR ADVERSE INFERENCES BASED UPON DEFENDANTS' INVOCATION OF PRIVILEGE OR A NON-PARTY'S PRIVILEGE LOG**

Case 1:13-md-02472-WES-PAS Document 1308-1 Filed 11/12/19 Page 2 of 28 PageID #: 311863

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................4

III.    ARGUMENT ................................................................................................7

        A.    Purchasers may, as a matter of law, present factual evidence from the Log
              Entry Descriptions and Underlying Patent Case Documents. ................................7

        1.    Courts permit the use of privilege logs at trial.........................................7

        2.    The Log Entry Descriptions are relevant and factual, and neither
              prejudicial nor speculative. ..................................................................11

        3.    The non-privileged Underlying Patent Litigation Documents are relevant
              and factual, and neither prejudicial nor speculative.................................15

        4.    Defendants' cited cases do not establish that Purchasers' use of the Log
              Entry Descriptions and Underlying Patent Litigation Documents is
              tantamount to seeking an adverse inference. .........................................17

        B.    Defendants' draconian and ill-defined request for a sweeping prohibition
              on invoking a privilege objection at trial is implausible, overbroad, and
              premature. ....................................................................................19

IV.     CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anascape, Ltd. v. Microsoft Corp.*,
No. 9:06-CV-158, 2008 U.S. Dist. LEXIS 111828 (E.D. Tex. Apr. 25, 2008) ......................13

*Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*,
No. CA-79-1445, 1983 WL 51933 (D. Mass. Mar. 24, 1983) ...............................18

*Avocent Redmond Corp. v. Raritan Americas, Inc.*,
921 F. Supp. 2d 229 (S.D.N.Y. 2013) ...............................................................7, 9

*Baez-Eliza v. Instituto Psicoterapeutico de Puerto Rico*,
275 F.R.D. 65 (D.P.R. 2011) ...............................................................................7

*Beraha v. Baxter Healthcare Corp.*,
No. 88-C-9898, 1994 U.S. Dist. LEXIS 12523 (N.D. Ill. Sept. 2, 1994) ...........7, 13

*Broyles v. Cantor Fitzgerald & Co.*,
No. 10-854-JJB-CBW, 2016 U.S. Dist. LEXIS 122625 (M.D. La. Sept. 8,
2016) ....................................................................................................................16

*Burton v. R.J. Reynolds Tobacco Co., Inc.*,
170 F.R.D. 481 (D. Kan. 1997) ...........................................................................7

*Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*,
269 F. Supp. 3d 124 (S.D.N.Y. 2017) ..............................................................12, 13

*Davine v. Golub Corp.*,
No. 3:14-30136-MGM, 2017 WL 517749 (D. Mass. Feb. 8, 2017) ......................7

*Eaton v. Hancock City*,
No. 1:08-CV-00370-JAW, 2011 WL 2491370 (D. Me. June 22, 2011) ................15

*Freedom Card, Inc. v. JPMorgan Chase & Co.*,
432 F.3d 463 (3d Cir. 2005) ................................................................................18

*Galderma Labs. v. Paddock Labs.*,
No. 4:09-CV-002-Y, 2011 U.S. Dist. LEXIS 32196 (N.D. Tex. Mar. 28, 2011) ...................13

*Goldenson v. Steffens*,
No. 2:10-CV-00440-JAW, 2014 WL 3345048 (D. Me. July 8, 2014) ...................15

*Heckler & Koch, Inc. v. German Sport Guns GmbH*,
No. 1:11-cv-01108-SEB-TAB, 2014 WL 12756372 (S.D. Ind. May 15, 2014) ................7, 12

*Howell v. United States*,
442 F.2d 265 (7th Cir. 1971) ...........................................................................7

*Huawei Techs. Co. Ltd v. T-Mobile US, Inc.*,
No. 2:16-cv-00052-JRG-RSP, 2017 WL 7052463 (E.D. Tex. Sept. 20, 2017).......................8

*Kellogg v. Nike, Inc.*,
No. 8:07CV70, 2008 WL 4216130 (D. Neb. Sept. 12, 2008) ...................................8

*King Drug Co. of Florence v. Cephalon, Inc.*,
No. 2:06-cv-1797, 2016 U.S. Dist. LEXIS 7477 (E.D. Pa. Jan. 22, 2016)...........................20

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
383 F.3d 1337 (Fed. Cir. 2004)...........................................................................12

*Knox Energy, LLC v. Gasco Drilling, Inc.*,
637 F. App'x 735 (4th Cir. 2016) ......................................................................7

*Labbe v. Berman*,
621 F.2d 26 (1st Cir. 1980)...............................................................................20

*McKesson Info. Sols., Inc. v. Bridge Med., Inc.*,
434 F. Supp. 2d 810 (E.D. Cal. 2006)............................................................15, 16

*Mut. Ins. Co., Ltd. v. Murphy*,
630 F. Supp. 2d 158 (D. Mass. 2009) .................................................................7

*In re Nexium (Esomeprazole) Antitrust Litig.*,
No. 12-md-02409-WGY (D. Mass. Nov. 4, 2014) ..........................................8, 11

*Old Republic Ins. Co., v. Ness*,
No. 03-C-5238, 2006 U.S. Dist. LEXIS 100992 (N.D. Ill. Dec. 21, 2006)...........................12

*Paice LLC v. Hyundai Motor Co.*,
No. MJG-12-499, 2015 U.S. Dist. LEXIS 115905 (D. Md. Sept. 1, 2015)...........................8

*Siemens v. Seagate Tech.*,
No. SACV 06-788JVS, 2009 WL 8762978 (C.D. Cal. Apr. 27, 2009).......................7, 10, 12

*Tallo v. United States*,
344 F.2d 467 (1st Cir. 1965).........................................................................19, 20

*THK Am., Inc. v. NSK., Ltd.*,
917 F. Supp. 563 (N.D. Ill. 1996) ....................................................................18

*In re Tudor Assocs., Ltd., II*,
20 F.3d 115 (4th Cir. 1994) ........................................................................17, 18

*United States v. Kendrick*,
331 F.2d 110 (4th Cir. 1964) ........................................................................7

*United States v. One Tract of Real Prop. Together With All Bldgs., Improvements, Appurtenances and Fixtures*,
95 F.3d 422 (6th Cir. 1996) ........................................................................18

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
No. 6:12-cv-00196, 2018 U.S. Dist. LEXIS 106970 (N.D.N.Y. June 27, 2018) ...............9, 10

*Wilson v. AM Gen. Corp.*,
No. 3:95-CV-125RM, 1996 U.S. Dist. LEXIS 16831 (N.D. Ind. Sept. 16, 1996) ........................................................................14

**OTHER AUTHORITIES**

8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2017 (1970)........................................................................7

Fed. R. Evid. 801(2)........................................................................8, 9

Fed. R. Evid. 807 ........................................................................10

Fed. R. Evid. 1004(2)........................................................................10

## I.    INTRODUCTION

Defendants find themselves in a tight spot of their own making.

On the one hand, Defendants have argued and affirmatively defended claims in this case by stating that Warner Chilcott executives had no involvement in developing the invention of or prosecuting the '394 patent application. They claim not just that Warner Chilcott executives were not involved in the fraud, but that those executives were not involved in the '394 patent development or prosecution at all.[1]

On the other hand, Warner Chilcott and its antitrust counsel adopted *in this litigation* privilege log descriptions originally made, and privilege assertions originally written, by its earlier patent infringement counsel. Here, Warner Chilcott's counsel, also acting as counsel for third-party Eastern Virginia Medical School ("EVMS") in this litigation, produced privilege log descriptions factually chronicling withheld communications among Warner Lambert executives and others "regarding procuring patent protection" and claiming the basis for the privilege as a "common legal interest" between EVMS and Warner Lambert "in obtaining patent protection."[2]

With its motion *in limine*, Warner Chilcott tries to further shield itself by asking the Court to preclude Purchasers from referencing, among other things, any privilege log entry descriptions demonstrating its executives' involvement, including involvement in the '394 patent prosecution, and admissions Warner Chilcott made in a motion in the underlying patent case, along with an

---

[1] *See* Purchasers' Mem. in Supp. of Mot. *in Limine* for an Order Precluding Argument or Evidence That Warner Chilcott Executives Were Not Involved in the '394 Patent Prosecution or Assignment, Oct. 24, 2019, ECF No. 1288-2 ("Purchasers' MIL") at 10-12 and n.28. For example, Defendants submitted a self-serving affidavit from Warner Chilcott executive Boissonneault (long after the events at issue), that included a section addressing "No Role in Invention or Prosecution of the '394 Patent Underlying Loestrin 24," and denying his involvement in the prosecution of the '394 patent. Declaration of Roger Boissonneault, dated Feb. 4, 2019, ¶¶ 6-8, attached as Exhibit PX241 to the Declaration of Kristen A. Johnson in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, June 12, 2019, ECF No. 976-88.

[2] *See* Revised Eastern Virginia Medical School Privilege Log, attached as Exhibit D to Declaration of April Lambert ("Lambert Decl."), Oct. 24, 2019, ECF No. 1288-4 ("EVMS Log"), concurrently filed with Purchasers' MIL.

opinion by its counsel, produced in this case. But the law does not permit Defendants to exclude admissible, relevant evidence just because a jury could draw reasonable inferences with other evidence in favor of Purchasers.

Specifically, Purchasers intend to prove their *Walker Process* claim by introducing evidence about – among other things – communications between and among EVMS's employee and patent inventor, Mr. Hodgen, prosecuting patent attorney Mr. Meilman, and Warner Lambert executives Messrs. Boissonneault, Reichel, Bruno, and its counsel, Tinney. Those communications took place before, during, and immediately after patent prosecution. Evidence of those communications takes three forms: contemporaneous letters, memos, and notes; privilege log entries describing withheld contemporaneous communications; and much-later-in-time deposition testimony. The privilege log descriptions are evidence from which a jury may appropriately (1) find, as a fact, then-Warner Lambert, and later, the same executives as Warner Chilcott, Messrs. Boissonneault, Bruno, and Reichel, communicated with EVMS about procuring patent protection, and (2) find, as a fact, that Mr. Reichel communicated with the patent attorneys immediately before one fraudulent misrepresentation was made. Those facts, in combination with other facts that the jury may find based on other evidence, may permit a jury to reasonably infer that one or more Warner Chilcott executives knew about the alleged fraud.[3] All of this, of course, depends on record evidence adduced at trial.

Purchasers have addressed Warner Chilcott's diametrically opposed positions in their motion *in limine* seeking – in light of privilege assertions made by Defendants and evidence adduced by Purchasers – to preclude argument or evidence that Warner Chilcott executives were

---

[3] Unsurprisingly, given that over twenty years have passed, Defendants' employees recall little about their involvement in the patent prosecution.

2

not involved in the '394 patent prosecution or assignment.[4] Purchasers seek to enforce the black letter law that a party cannot wield privilege as both a sword and a shield. That motion should be granted, for the reasons articulated therein, and will largely moot the need to address Defendants' motion *in limine* pre-trial. Any specific issues that might arise from Defendants' concerns may be addressed at trial.

As to the underlying patent documents and opinion Defendants produced in this case, Purchasers are likewise entitled to provide this evidence of the investigation or due diligence undertaken by Warner Chilcott when it acquired the '394 patent from which the jury may, combined with other evidence, draw reasonable inferences.

To be clear: Purchasers do *not* intend to seek adverse inferences from the invocation of privilege in this case as to the content of purportedly privileged material. Purchasers do not intend to seek an adverse inference concerning the motion to disqualify counsel in the underlying patent litigation or a potential conflict of interest litigated in that case. For these reasons, Defendants' motion *in limine* seeking to preclude Purchasers from relying on or calling the jury's attention "in *any* manner to Defendants' or a non-party's invocation of the attorney-client or attorney work product privileges," and asking "a question before the jury that would logically elicit a privilege objection" is based entirely on fundamentally incorrect assumptions.[5] It is also overbroad and premature for the same reasons.

---

[4] *See* Purchasers' MIL. For efficiency, Purchasers will not repeat here the background, facts, arguments and law set forth in Purchasers' MIL, including well-settled principles on preclusion of evidence based upon a party's use of privilege as a sword and shield, but incorporate those relevant sections of Purchasers' MIL herein.

[5] *See* Defendants' Mot. *in Limine* to Preclude Argument, Evidence or Adverse Inferences Based Upon Defendants' Invocation or Privilege or a Non-Party's Privilege Log (MIL No. 5), Oct. 24, 2019, ECF No. 1283 ("Defs.' MIL No. 5"), at 9-10 (emphasis added). Trials are dynamic, and Purchasers may seek evidentiary rulings, including instructions to the jury, as the trial proceeds depending on the actual evidence proffered.

## II.    BACKGROUND

Since the inception of this case, from its affirmative defenses asserted in response to Purchasers' allegations[6] through document and written discovery, deposition testimony, and summary judgment briefing, Warner Chilcott has denied not just involvement in the alleged patent fraud, but has denied that it or its executives had any involvement in the prosecution or assignment of the '394 patent.[7]

Warner Chilcott has also asserted a common interest privilege over communications between high-level Warner Lambert executives (who later moved to Warner Chilcott)[8] and the '394 patent inventor, Dr. Hodgen, and EVMS outside counsel, Attorney Meilman. Those assertions of a common interest privilege include log entries on a privilege log ("Log Entry Descriptions") produced in this case by Eastern Virginia Medical School, where the Dr. Hodgen was employed at the time of the '394 patent's prosecution and development.[9]

Warner Chilcott adopted the Log Entry Descriptions. Warner Chilcott claimed a common interest privilege over communications reflected in Log Entry Descriptions in the underlying patent litigation. In that case and this current case, Warner Chilcott has not disavowed the Log Entry Descriptions' factual content which explicitly set out non-privileged facts that Parke-Davis

---

[6] *See, e.g.*, Answer and Defenses of the Warner Chilcott & Watson Defendants to DPPS' Third Amended Consolidated Compl. and Demand for Jury Trial, Apr. 11, 2018, ECF No. 384 at 90 (Third Defense: "all actions or practices of Defendants . . . resulted from . . . good-faith . . . ."); *id.* at 93 (Twenty-Second Defense: "[Plaintiffs] did not suffer injury or damages by reason of any act or omission by Defendants."); *id.* at 96 (Thirty-Sixth Defense: "Defendants lacked the necessary knowledge and/or intent required by the claims that [Plaintiffs] assert."); and *id.* at 98 (Fiftieth Defense: "Defendants have acted in good faith . . . .").

[7] Purchasers' MIL at 10-12, 16-17, and accompanying footnotes.

[8] On October 2, 1994, EVMS assigned the application to Warner-Lambert Company LLC (for its Parke-Davis division). Warner Lambert assigned the '394 patent to Galen Holdings, PLC in March 2003. In July 2004, Galen Holdings PLC changed its name to Warner Chilcott PLC, and on August 1, 2004, that entity assigned the '394 patent to Warner Chilcott Company, Inc. Direct Purchaser Class Pls.' Third Am. Consolidated Class Action Compl. and Jury Demand Against All Defendants, Mar. 30, 2018, ECF No. 380 ("DPPs' Third. Am. Consolidated Compl."), ¶ 146.

[9] *See* EVMS Log.

4

and Warner Lambert executives and their counsel communicated with Mr. Hodgen and Attorney

Meilman at the time of the patent prosecution and assignment. For example, entries 37 and 38 (two

communications from Hodgen, dated February 22, 1994 to Boissonneault, Bruno, Tinney and

others provide the following factual description:

> Communication revealing a communication from an EVMS employee G. Hodgen
> to EVMS outside counsel E. Meilman, Esq. for the purpose of requesting and
> obtaining legal advice and revealing confidential legal advice from EVMS outside
> counsel E. Meilman, Esq. to Warner Chilcott employee in connection with
> procuring patent protection for EVMS's intellectual property concerning oral
> contraceptive regimens and regarding assigning or licensing that technology. Also,
> a communication reflecting a communication from an EVMS employee to Parke-
> Davis/Warner Lambert in house counsel A. Bruno, Esq. and F. Tinney, Esq. for the
> purpose of obtaining legal advice concerning oral contraceptive regimens and
> regarding assigning or licensing that technology. [10]

Two other entry descriptions identify communications with Mr. Reichel which are dated

within days of when the alleged fraudulent misrepresentation that all "commercially available oral

contraceptive combination formulations contain at least 30 μg of ethinyl estradiol" was made to

the PTO.[11] The description – "regarding procuring patent protection" was first written by counsel

for EVMS and Warner Chilcott in the Watson litigation; replicated by counsel for EVMS and

Warner Chilcott in this antitrust suit;[12] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[13]

Warner Chilcott has continued to assert on its own behalf, in this case before this Court, a

common interest privilege protection over the communications associated with the Log Entry

Descriptions. It has maintained that the communications logged by the entries at issue in

---

[10] *See id.* at Entries 37 and 38.

[11] DPPs' Third Am. Consolidated Compl., ¶ 137; *see also id.*, ¶ 177.

[12] EVMS Log at Entries 32 and 36.

[13] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Case 1:13-md-02472-WES-PAS Document 1337 <font color=purple>(Applicable Party front>
Case 1:13-md-02472-WES-PAS Document 1308-1 <font color=purple>(Applicable Party front>
Filed 11/12/19 Page 11 of 28 PageID #: 209584
#: 211887

Purchasers' MIL are "protected by the common interest doctrine, since EVMS and Parke-Davis/Warner Lambert shared a common legal interest in obtaining patent protection for G. Hodgen's intellectual property regarding oral contraceptive regimens." [14]

Defendants also produced in this case, in response to Purchasers' discovery requests, briefing related to a disqualification motion of patent counsel Kenyon & Kenyon, including an opinion of counsel (collectively, "the Underlying Patent Litigation Documents"). Warner Chilcott produced the opinion and disqualification briefing in this case. Warner Chilcott has not asserted a privilege over the Underlying Patent Litigation Documents because they are not privileged communications. The documents contain factual information concerning the '394 patent, independent of the disqualification arguments made in the underlying litigation.[15]

Defendants' motion now asks this Court to assist Defendants in furtherance of their improper sword and shield defense.[16] That is, having blocked Purchasers from exploring the full panoply of facts that establish Defendants' involvement in the prosecution or assignment of the '394 patent, Defendants seek to now *present* their non-involvement defense at trial while they enlist the Court's intervention to *prevent* Purchasers' use of factual Log Entry Descriptions, *prohibit* any reference to non-privileged Underlying Patent Litigation Documents that Warner Chilcott produced in this case, and preclude any question by Purchasers that might elicit a privilege objection.[17]

Defendants attempt to couch all of this as impermissible use of adverse inferences by Purchasers. It is not. Purchasers have not sought and do not intend to seek adverse inferences based

---

[14] *See id. See also* Purchasers' MIL at 6-9.

[15] PX205, attached to Declaration of Kristen A. Johnson in Support of Pls.' Opposition to Defs.' Motion for Summ. Judgment, June 12, 2019, ECF No. 976-52.

[16] Defs.' MIL No. 5 at 8-9.

[17] *Id.* at 9-10.

upon the Log Entry Descriptions or Underlying Patent Litigation Documents and do not intend to

seek to elicit privilege assertions in the presence of the jury at trial. But the jury is entitled to hear

the non-privileged facts in the Log Entry Descriptions and Underlying Patent Litigation

Documents.

## III.    ARGUMENT

### A.    Purchasers may, as a matter of law, present factual evidence from the Log Entry Descriptions and Underlying Patent Case Documents.

#### 1.    Courts permit the use of privilege logs at trial.

There is no general prohibition against admitting privilege logs, or information reflected

in privilege logs, at trial. "[P]rivilege does not apply to the fact of communication between a client

and attorney. It is the substance of the communication which is protected, not the fact that there

has been communication."[18] "It is axiomatic that mere reference to the fact that a conversation

between attorney and client occurred is not privileged."[19]

To the contrary, privilege logs (or information contained therein) are regularly admitted at

trial to show facts, including individuals' participation and timelines of events,[20] and to impeach a

---

[18] *Burton v. R.J. Reynolds Tobacco Co., Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997) (*citing United States v. Kendrick,* 331 F.2d 110, 113 (4th Cir. 1964); *Howell v. United States,* 442 F.2d 265 (7th Cir. 1971). *See also Davine v. Golub Corp.*, No. 3:14-30136-MGM, 2017 WL 517749, at *5 (D. Mass. Feb. 8, 2017) (holding the fact of consultation with counsel is not privileged); *Baez-Eliza v. Instituto Psicoterapeutico de Puerto Rico*, 275 F.R.D. 65, 70-71 (D.P.R. 2011) (accord).

[19] *Beraha v. Baxter Healthcare Corp.*, No. 88-C-9898, 1994 U.S. Dist. LEXIS 12523, at *8 (N.D. Ill. Sept. 2, 1994) (citing 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2017 (1970)).

[20] *See, e.g., Mut. Ins. Co., Ltd. v. Murphy*, 630 F. Supp. 2d 158, 168-69 (D. Mass. 2009) ("These privilege log entries [showing letters between defendants and the insured company] do support the drawing of reasonable inferences that Mutual retained some association with the case even after the joint representation ended."), *as amended* (July 2, 2009); *Knox Energy, LLC v. Gasco Drilling, Inc.*, 637 F. App'x 735, 740 (4th Cir. 2016) ("Nor did the court abuse discretion in allowing Consol to introduce Gasco's privilege log. Gasco challenges the admission of this log only on the grounds that it was irrelevant and prejudicial. But as Consol argues, the log rebuts Gasco's narrative that there was nothing unusual about the Addendum that would have alerted it to Consol's mistake."); *Siemens v. Seagate Tech.*, No. SACV 06-788JVS, 2009 WL 8762978, at *8 (C.D. Cal. Apr. 27, 2009) (disagreeing with plaintiff's assertion that "privilege log is merely a tool to facilitate discovery, not an independent piece of evidence that proves or disproves an alleged fact" and approving prior decision to allow privilege logs in as evidence of reasonable diligence toward filing a patent application); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 1:11-cv-01108-SEB-TAB, 2014 WL 12756372, at *5-7 (S.D. Ind. May 15, 2014) ("Here, Counterclaimants employ information from the privilege log

7

witness on facts that the witness denies upon examination.[21] Indeed, in an antitrust reverse

payment case, *In re Nexium*, two pages of the defendant AstraZeneca's privilege log entries were

admitted into evidence.[22] Factual privilege log entry information also may be presented in an

exhibit.[23]

Privilege logs are also admissible as admissions of a party opponent pursuant to Fed. R.

Evid. 801(2), if "[t]he statement is offered against an opposing party and: (A) was made by the

party in an individual or representative capacity; . . . (C) was made by a person whom the party

authorized to make a statement on the subject; [or] (D) was made by the party's agent or employee

on a matter within the scope of that relationship and while it existed . . . ."[24]

---

in these four paragraphs primarily to support inferences regarding when and to what extent Ihloff knew about HK USA's assignment of its IP rights to HK GmbH . . . . we cannot conclude that inferring knowledge from the bare fact that attorney-client communication took place is *per se* impermissible."); *Avocent Redmond Corp. v. Raritan Americas, Inc.*, 921 F. Supp. 2d 229, 236 (S.D.N.Y. 2013) (disagreeing with the inference that defendant was attempting to derive from privilege log, but acknowledging that the privilege log evidenced communication between noted individuals).

[21] *See, e.g.*, *Huawei Techs. Co. Ltd v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, 2017 WL 7052463, at *1, *3 (E.D. Tex. Sept. 20, 2017) (denying defendant's motion to preclude the plaintiff from contesting facts provided in its privilege log and explaining, "If, for example, T-Mobile would like to establish that on a particular date, a Huawei employee communicated with an attorney about a 'legal assessment' of a patent-in-suit, as the amended privilege log suggests, then the privilege log might be admissible for purposes of impeachment if a witness denied that fact."). *See also Kellogg v. Nike, Inc.*, No. 8:07CV70, 2008 WL 4216130, at *2-3 (D. Neb. Sept. 12, 2008) ("The privilege log may be used for purposes of impeachment.").

[22] Transcript of Trial Proceedings Vol. 2 at 94-96, *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409-WGY (D. Mass. Nov. 4, 2014), ECF No. 1403.

[23] *See Paice LLC v. Hyundai Motor Co.*, No. MJG-12-499, 2015 U.S. Dist. LEXIS 115905, at *10 (D. Md. Sept. 1, 2015) (contents of privilege log admissible in patent infringement suit to show when employees knew about prior art). In this case, the court permitted the extraction of the relevant factual data in the privilege log and the creation of an exhibit reflecting that data, excluding references to the privilege log itself. The court stated:

> What is admissible is the relevant data set forth in the document, not the identity of the document as a privilege log. Plaintiffs may place in evidence an exhibit that . . . shall set forth dates on which Defendant's pertinent employees discussed, or were aware of, specified patents to establish knowledge of the patents in suit. The evidence shall not refer to consultations with attorneys regarding the patents.

*Id.* at *3.

[24] Fed. R. Evid. 801(2).

Indeed, the courts in *Avocent*[25] and *Utica*,[26] two cases relied on by Defendants,[27] confirm the admissibility of privilege logs for the purposes of establishing facts of communications (*Avocent*)[28] and as statements of party opponent pursuant to Fed. R. Evid. 801(2) for relevant, nonspeculative inferences (*Utica*).[29]

In *Avocent*, a bench-trial decision, the court addressed in part the defendant's use of plaintiff's privilege log to support the defendant's claim of inequitable conduct. The court admitted the log descriptions as evidence of when communications occurred, between whom they occurred, and the subject of the communications.[30] Although the court did not find the inference that the defendant believed could be drawn from the descriptions, the court considered the log descriptions and argument in determining that the plaintiff had not misled the PTO.[31]

In *Utica*, a breach of contract case regarding monies owed under a reinsurance certificate, the defendant sought to use privilege log descriptions as evidence that plaintiff's allocation of settlement payments was "reinsurance blind." The *Utica* court observed that privilege logs *can* be admitted as statements of a party opponent pursuant to Fed. R. Evid. 801(2), provided the party sponsoring use of the log can point to relevant, nonspeculative uses for the log.[32] While the *Utica* court ultimately declined to admit the privilege logs because "Munich has not identified any

---

[25] *Avocent*, 921 F. Supp. 2d at 236.

[26] *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 6:12-cv-00196, 2018 U.S. Dist. LEXIS 106970, at *39-40 (N.D.N.Y. June 27, 2018).

[27] Defs.' MIL No. 5 at 4, 6.

[28] *Avocent*, 921 F. Supp. 2d at 236.

[29] *Utica*, 2018 U.S. Dist. LEXIS 106970, at *38-40.

[30] *Avocent*, 921 F. Supp. 2d at 236. The fact that the court did not permit the plaintiffs to argue that the privilege logs raised an inference that the defendants withheld information from the PTO is not relevant to this case, as Purchasers are not seeking such an inference.

[31] *Id.*

[32] *Utica*, 2018 U.S. Dist. LEXIS 106970, at *39.

relevant, nonspeculative inferences that could be drawn from it," in reaching this conclusion the court emphasized that Utica had represented that it did not intend to affirmatively present testimony that its allocation of settlement payments was reinsurance blind.[33] The court reserved ruling on the sponsoring party's request to use the log as *impeachment* until trial.[34]

Here, Defendants have made no such assurances to this Court that they do not intend to affirmatively defend against Purchasers' claims by presenting testimony and other evidence of their non-involvement in the prosecution and assignment of the '394 patent. Quite the contrary.

In addition, pursuant to the residual hearsay exception in Fed. R. Evid. 807, privilege log entries may be admitted as evidence if: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." Thus, for example, in *Siemens v. Seagate Technology*, the court held that non-party privilege logs were admissible under this exception.[35] The court explained:

> The preparation [of privilege logs] is fairly ministerial with no need for interpretation to ensure accuracy, and either done by or under the supervision of officers of the court. The present record meets the specific requirements of Rule 807: corroboration is a material issue, the logs are more probative than other types of evidence available to show diligence, and the interests of justice will be served. The Court also finds that the logs have circumstantial guarantees of trustworthiness pursuant to Fed. R. Evid. 807 because the preparation was either done by or under

---

[33] *Id.*

[34] *Id.* at *40.

[35] *Siemens*, 2009 WL 8762978, at *8, *20 (C.D. Cal. Apr. 27, 2009) (admitting third party privilege log as evidence under residual hearsay exception because it has "circumstantial guarantees of trustworthiness pursuant to Fed. R. Evid. 807 because the preparation was either done by or under the supervision of officers of the court"). Notably, the *Siemens* Court also rejected a challenge the that admission of a privilege log violated the best evidence rule, and observed that the logs would be admissible under Fed. R. Evid. 1004(2) because "the original cannot be obtained by any available judicial process."

the supervision of officers of the court.[36]

### 2. The Log Entry Descriptions are relevant and factual, and neither prejudicial nor speculative.

Purchasers in this case have moved *in limine* to preclude Defendants from arguing that they were not involved in the development and prosecution of the '394 patent. Although Defendants have asserted a common-interest privilege regarding that patent, among other things, Purchasers do not seek to introduce evidence or argument regarding the content of any of the underlying communications that have been deemed privileged. Purchasers are entitled, however, to demonstrate that there *were* communications between Warner Lambert executives, the inventor, and outside EVMS counsel "regarding patent prosecution."[37]

The log entries set forth the facts – not inferences, not speculation – establishing a timeline of communications between Warner-Lambert high-level executives and the '394 patent inventor and outside counsel for EVMS. Accordingly, the privilege log descriptions are relevant for the purpose of showing when and among whom the communications took place, as well as the subject matter of those communications as articulated in the descriptions. Purchasers have made no request to go behind the entries to question the content of the purported privileged communications, and do not now seek to have the Court instruct the jury about an adverse inference relating to the Log Entry Descriptions.[38]

---

[36] *Id.*

[37] Defendants' request that this Court preclude "the *fact* . . . of attorney advice concerning the '394 patent or patent litigations" (emphasis added) simply does not comport with the governing law and cannot be granted. Defs.' MIL No. 5 at 9, ¶ 1(b) (emphasis added). Purchasers will not belabor this point further in its brief. *See supra*, legal standards discussion in section A1 at 7.

[38] Of course, it is possible that Defendants may open a door at trial that would waive privilege or otherwise require Purchasers to otherwise challenge an assertion of privilege. In *In re Nexium*, for example, the court determined that a witness for the defendants waived privilege by making statements during his direct examination that entitled Purchasers to obtain previously withheld documents and an opportunity to re-examine the witness. No. 12-md-2409-WGY (D. Mass. 2014).

Because Purchasers do not seek to have the Court instruct the jury that Purchasers are entitled to an adverse inference based on the assertion of attorney-client privilege, *Knorr-Bremse*[39] does not bar the introduction of the facts in the privilege log descriptions. Simply put, Purchasers seek only to use facts about the communications that are set forth in the log descriptions.

Defendants also omit key facts which render inapposite two additional cases on which they rely to suggest that privilege logs are not admissible. In *Old Republic*,[40] plaintiff's privilege log contained an "erroneous" entry, corrected by plaintiff's former counsel. Defendants planned to introduce the log with the error as evidence of the fact set forth in the error and to put on evidence that the fact was not incorrect. The District Court for the Northern District of Illinois held that "the parties will be held to proving their cases based on the actual evidence, not on misstatements made and corrected by their lawyers."[41] In so ruling, the court addressed the confusion that would result from a privilege log containing a mistake in determining, on that fact-specific basis, that "any probative value is substantially outweighed by the probability of jury confusion . . . ."[42] *Old Republic* has subsequently been distinguished, on these grounds, by two other courts.[43]

Defendants also inaccurately characterize *Citizens Union*,[44] on which they rely to suggest that privilege logs and their entries are inadmissible.[45] *Citizens* does not so state. The relevant issue before the court in *Citizens* was whether *documents* listed in privilege logs should be produced in discovery, *not* whether the privilege logs should be admitted into evidence. *Citizens* involved a

---

[39] *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).

[40] *Old Republic Ins. Co., v. Ness*, No. 03-C-5238, 2006 U.S. Dist. LEXIS 100992, at *35-36 (N.D. Ill. Dec. 21, 2006) (emphasis added).

[41] *Id.* at *36.

[42] *Id.*

[43] *See Heckler & Koch, Inc.*, 2014 WL 12756372, at *6; *Siemens*, 2009 WL 8762978, at *7.

[44] *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 147 (S.D.N.Y. 2017).

[45] Defs.' MIL No. 5 at 5.

12

lawsuit against the State of New York regarding donor disclosure laws. Within the court's inquiry of whether logged *documents* should be produced, the court considered whether the documents were relevant to the plaintiffs' case. Because none of the entries reflected that the governor was a party to any logged communications, the court held the *documents* would require impermissible speculation that the governor had personally reviewed the legislation in question because "there is no way for Plaintiffs to ascertain whether the Governor considered, or was even was aware of, the factual material reflected in any particular document listed on the Privilege Log."[46] Purchasers, here, are not seeking to reach the content of any documents reflected in the Log Entry Descriptions and, unquestionably, the Log Entry Descriptions demonstrate on their face evidence, not supposition, from which a jury could find, as a fact, that high-level Warner Lambert executives were parties to communications with the '394 patent inventor and outside EVMS counsel.

Other cases that Defendants cite for the proposition that privilege logs are inadmissible are likewise distinguishable because the sole basis for the courts' preclusion in those cases rested on a party's intent to enable the jury to draw an adverse inference,[47] and/or the courts' acknowledgement of the unremarkable proposition that under certain factual circumstances an adverse inference may not be drawn solely based on the assertion of privilege.[48] Again, Purchasers seek no such inference.

---

[46] *Citizens Union*, 269 F. Supp. at 147.

[47] *See Beraha*, 1994 U.S. Dist. LEXIS 12523, at *8-9 (showing that when "the only purpose for which [plaintiff] seeks to admit evidence of the fact that these communications occurred is to enable the jury to draw an adverse inference therefrom. . . . the mere fact that these privileged conversations occurred is substantially outweighed by its potentially unfair prejudicial effect").

[48] *See Galderma Labs. v. Paddock Labs.*, No. 4:09-CV-002-Y, 2011 U.S. Dist. LEXIS 32196, at *13 (N.D. Tex. Mar. 28, 2011) (showing that a mere sentence confirms that the court will not make an adverse inference based on an assertion of attorney-client privilege, but provides no context regarding how the defendant attempted to use a privilege log); *Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-CV-158, 2008 U.S. Dist. LEXIS 111828, at *9-10 (E.D. Tex. Apr. 25, 2008) (the decision provides no context and meager analysis, simply reiterating that a court cannot draw an adverse inference from the invocation of attorney-client privilege).

Case 1:13-md-02472-WES-PAS Document 1308-17 <font color=purple>(Applicable Party short>
Case 1:13-md-02472-WES-PAS Document 1337 Filed 11/30/19 Page 19 of 28 PageID #: 210885
Filed 11/12/19 Page 19 of 28 PageID #: 209592

To the contrary, Purchasers' use of the Log Entry Descriptions is for a relevant and non-prejudicial purpose. As explained above, these privilege log entries are evidence from which a jury may reasonably and appropriately (1) find, as a fact, that Warner Chilcott executives Boissonneault, Bruno, and Reichel communicated with EVMS about procuring patent protection, and (2) find, as a fact, that Reichel communicated with the patent attorneys immediately before one fraudulent misrepresentation was made. Those facts, in combination with other facts that the jury may find based on other evidence (*e.g.*, letters produced in discovery, deposition testimony, emails about the human study and Orange Book listing shortly before Warner Chilcott sued against Watson), may permit a jury to reasonably infer that one or more Warner Chilcott executives knew about the alleged fraud. This of course depends on record evidence adduced at trial. Purchasers' use is nonspeculative: despite elsewhere making conclusory statements that Warner Chilcott executives were not involved in the patent prosecution, it does not appear to be disputed by any of the parties that Warner Chilcott executives in fact communicated with the patent inventor, Hodgen, and counsel, Attorney Meilman, during the patent prosecution.[49]

The Log Entry Descriptions also are not unfairly prejudicial. They are factual statements undisputed and adopted by Defendants in this case and in the underlying litigation. Counsel for Warner Chilcott personally re-reviewed the universe of documents that lead to the production of the privilege log in the Watson litigation and chose to adopt the descriptions of the subject matter of the communications in this case. There is no risk of confusion to the jury and Defendants have demonstrated none.

---

[49] For the same reasons, Defendants' reliance on *Wilson v. AM Gen. Corp.*, No. 3:95-CV-125RM, 1996 U.S. Dist. LEXIS 16831, at *39-41 (N.D. Ind. Sept. 16, 1996) is misplaced. In *Wilson*, the court held that inferences from privilege log that a document was not produced "on the basis of attorney-client privilege somehow would show [an overall scheme] . . . ." amounted to "rank speculation." Plaintiffs have not requested such an inference from the factual descriptions in the log entries at issue.

14

Simply put, Purchasers should not be precluded from establishing any one of the proper bases at trial to present the EVMS log entries, or other evidence of Warner Chilcott's involvement in the prosecution or assignment of the '394 patent.

### 3. The non-privileged Underlying Patent Litigation Documents are relevant and factual, and neither prejudicial nor speculative.

Similarly, Purchasers do not seek to have the Court instruct the jury that it may draw an adverse inference from any briefing or documents related to the motion to disqualify Kenyon & Kenyon in the Watson patent litigation, nor from the opinion that was at the heart of that dispute.

However, Purchasers may rely on certain relevant evidence, including admissions made by Warner Chilcott and Watson in that dispute about whether an opinion regarding the '394 patent was sought from and given by Kenyon. Purchasers may use factual statements made by Defendants (or their counsel) during that dispute to provide evidence of the investigation or due diligence undertaken by Warner Chilcott when it acquired the '394 patent. Doing so does not introduce confusion, rely on rank speculation, nor attempt to seek an inference based on an assertion of privilege.[50]

*McKesson*,[51] relied on by Defendants,[52] is inapplicable. The issue in *McKesson* was narrow. The district court granted the defendant's motion *in limine* to preclude the plaintiff from eliciting the fact that the defendant *had* obtained an opinion from a lawyer regarding the potential

---

[50] The issues presented by this motion may be best addressed by the Court deferring its ruling until trial when it can assess the foundation Purchasers establish. *See, e.g.*, *Eaton v. Hancock City*, No. 1:08-CV-00370-JAW, 2011 WL 2491370, at *2 (D. Me. June 22, 2011) (deferring a decision on plaintiff's motion to prohibit defendants from attempting to establish that the plaintiff was excessively drunk and strong in a wrongful arrest lawsuit because the court "cannot at this stage know what the evidence will be and therefore defers ruling on this issue"); *Goldenson v. Steffens*, No. 2:10-CV-00440-JAW, 2014 WL 3345048, at *4 (D. Me. July 8, 2014) (observing that "[i]t is difficult to appreciate the context of [the contested exhibits], so the Court will rely on counsel to press the admissibility issue, if necessary, during trial").

[51] *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006).

[52] Defs.' MIL No. 5 at 8.

infringement and choose to invoke the attorney-client privilege to avoid disclosing that opinion. The district court reasoned that, if the jury knew that the defendant had elicited this opinion, but refused to waive the privilege, "[i]t is inescapable that the jury would likely conclude [the defendant] received an unfavorable opinion, otherwise [the defendant] would reveal it." [53] *Broyles*,[54] also relied upon by Defendants,[55] is likewise inapposite. In that case, the party seeking to use evidence intended, and so stated, to introduce the invocation of privilege over counsel's opinion.[56]

Purchasers do not seek to elicit the invocation of a privilege nor request that the Court instruct the jury about an adverse inference based upon the existence of a specific communication or purport to suggest that the communication would be detrimental to Defendants' defense. Purchasers seek to present at trial only probative, relevant, factual information in the Underlying Patent Litigation Documents, and do not intend to use the documents to "imply that Warner Chilcott would only have moved to disqualify Kenyon or been concerned with the conflict of interest because it was concerned about the negative information Kenyon provided or knew."[57] There is no law, and Defendants point to none, which prohibits use of relevant factual information contained in the Underlying Patent Litigation Documents. Accordingly, Purchasers' use of the Underlying Patent Litigation Documents does not warrant preclusion.

---

[53] *McKesson*, 434 F. Supp. 2d at 812.

[54] *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854-JJB-CBW, 2016 U.S. Dist. LEXIS 122625, at *10 (M.D. La. Sept. 8, 2016) (prohibiting plaintiffs "from asking any question of the [defendants'] witnesses where it would be reasonable to conclude that the question would elicit an invocation of the attorney client privilege").

[55] Defs.' MIL No. 5 at 8.

[56] *Id.*

[57] *See* Defs.' MIL No. 5 at 8.

### 4. Defendants' cited cases do not establish that Purchasers' use of the Log Entry Descriptions and Underlying Patent Litigation Documents is tantamount to seeking an adverse inference.

First, Defendants' motion conflates, on the one hand, factual evidence and permissible fact finding which may lead to some inferences in favor of a plaintiff with, on the other, adverse inferences. A jury is tasked with finding facts, drawing inferences from those facts, and rendering a verdict. A plaintiff is tasked with presenting evidence that will aid the jury in doing so. Defendants appear to take the position, however, that Purchasers should be prevented from introducing evidence from which, when taken in combination with other evidence, the jury may draw a reasonable inference in Purchasers' favor by arguing that this is an improper. Defendants seem to label this an "adverse inference." In making this argument Defendants distort the meaning of "adverse inference" and the manner in which courts must address the admission of evidence. Thus, at the threshold, Defendants fail to establish a basis for the preclusion sought here because the factual evidence is admissible for the reasons set forth above (and the foundation which Purchasers will establish at trial) and all inferences from those facts are left to the factfinder – the jury.

Defendants also rely upon inapposite cases to argue that Purchasers' use of facts set forth in the Log Entry Descriptions and Underlying Patent Litigation Documents is somehow the equivalent of thwarting the assertion of privilege and seeking an adverse inference.[58] In nearly all of the cases on which Defendants rely for this incorrect assertion of law, a party affirmatively asked the court to draw an adverse inference. For example, *Tudor*[59] involved a bankruptcy, not patent or antitrust litigation. After a witness had invoked privilege during his trial testimony before

---

[58] *Id.* at 2.

[59] *In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 120 (4th Cir. 1994).

17

the trier of fact, a party affirmatively asked the court for a negative inference that fraud occurred from the invocation of privilege.

Nearly all of Defendants' cited cases for this strained argument also involve a defensive assertion of privilege, and the opposing party seeks to draw that assertion from a witness or otherwise call attention to the assertion of privilege.[60] While *Tudor* and *Astra Pharm*[61] both state that a negative inference should not be drawn from the "*proper*" invocation of the attorney-client privilege,[62] none of the cases cited by Defendants permits the sword-shield gamesmanship used by Defendants in this case to assert a privilege *and* affirmatively put at issue the subject of the privileged information.[63]

Here, Purchasers do not intend to establish that Defendants violated antitrust laws by relying on Defendants' selective assertions of privilege. Purchasers are not asking for an inference that Defendants withheld information from the PTO. Instead, Purchasers intend to offer evidence that Warner Lambert executives were involved in communications with the patent inventor and EVMS outside counsel at the time of the '394 patent prosecution and assignment, not by way of any adverse inference based on Defendants' willingness or refusal to answer questions, but by the *factual* descriptions in the Log Entry Descriptions which Warner Chilcott has affirmatively embraced in this case (and embraced in the underlying patent case).

---

[60] *See, e.g., THK Am., Inc. v. NSK, Ltd.*, 917 F. Supp. 563, 568 (N.D. Ill. 1996) (court did not permit plaintiff to ask the jury to draw an adverse inference from defendants' assertion of the attorney-client privilege).

[61] *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, No. CA-79-1445, 1983 WL 51933, at *4 (D. Mass. Mar. 24, 1983).

[62] *See In re Tudor*, 20 F.3d at 120; *Astra Pharm.*, 1983 WL 51933, at *4.

[63] Other cases cited by Defendants are from other jurisdictions, stand for unremarkable propositions, are inapposite, or include all of these frailties. *See United States v. One Tract of Real Prop. Together With All Bldgs., Improvements, Appurtenances and Fixtures*, 95 F.3d 422, 428-29 (6th Cir. 1996) (Sixth Circuit relies on *Wigmore on Evidence* to address protection of work product, which is not at issue here); *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 479 n.25 (3d Cir. 2005) (Third Circuit stating a four-line footnote that the assertion of privilege over the trademark search cannot be used to infer bad faith).

The jury should be provided with the *factual statements* in the Log Entry Descriptions that (1) Warner Chilcott does not deny are truthful, factual statements, and (2) Warner Chilcott intends to contradict by affirmatively arguing to the jury that its executives were not involved in the prosecution or assignment of the '394 patent. Because Purchasers do not seek an inference of fraud on the PTO based on an assertion of privilege, there is no prejudice, much less unfair prejudice that outweighs the probative facts asserted in the description.

**B.    Defendants' draconian and ill-defined request for a sweeping prohibition on invoking a privilege objection at trial is implausible, overbroad, and premature.**

Defendants' request that the Court order Purchasers to avoid any questions that may "logically" invoke an assertion of privilege is akin to asking Purchasers to read Defendants' and their witnesses' minds and discern when they may, and when they may not, choose to exercise the privilege. Defendants' erratic and selective privilege assertions in this case do not permit Purchasers to divine all examination questions which *might* invoke a privilege objection from a witness. Given Defendants' inconsistent privilege assertions, it *may* become necessary to, for example, test the boundaries of Defendants' privilege assertions in cross examination if a witness has testified broadly about his "good faith" in a direct examination.  Thus, this sweeping request is overly broad and premature. It makes eminent sense that the Court and the parties entertain privilege issues, to the extent required, in context as the trial commences and proceeds.[64]

Purchasers further note that the cases cited by Defendants do not support a blanket prohibition of seeking a negative inference from assertion of privilege. Defendants claim that *Tallo*,[65] a case concerning a criminal defendant's assertion of privilege, set an unqualified bar

---

[64] *See* n.49 *supra*.

[65] *Tallo v. United States*, 344 F.2d 467 (1st Cir. 1965).

against the evocation of privilege in the presence of a jury. In *Labbe v. Berman*,[66] however, the First Circuit expressly disavowed *Tallo*'s supposed bar: "While federal courts in cases decided when an accused had a privilege to preclude his spouse from testifying have stated that an opportunity should be afforded for the spousal privilege to be claimed in the absence of a jury . . . we do not see that this procedure is constitutionally mandated."[67]

*Cephalon*,[68] an Eastern District of Pennsylvania trial decision, is not controlling nor relevant to Purchasers' intended use of the evidence here. First, the court noted that the defendants had stated they did not intend to introduce statements and make arguments to the jury that implied consultation with counsel and "good faith" reliance on said legal advice. The court concluded that unless or until that happened, it would not issue a specific waiver ruling.[69] In that context, the court held that plaintiffs could not draw attention to the defendants' invocation of privilege or the work-product doctrine, nor ask a question that would likely result in an invocation of the privilege.[70] In contrast, here, Purchasers do not intend to elicit an invocation of privilege, much less request to draw attention to an invocation of privilege with the evidence and examinations presented at trial.

## IV. CONCLUSION

For the foregoing reasons, as well as those articulated in Purchasers' MIL, ECF No. 1288-2, Purchasers respectfully request that the Court deny Defendants' Motion *in Limine* No. 5.

Dated: November 12, 2019                    Respectfully submitted,

*/s/ Thomas M. Sobol*                       */s/ Sharon K. Robertson*
Thomas M. Sobol (R.I. Bar No. 5005)         Sharon K. Robertson
Kristen A. Johnson (*pro hac vice*)         Donna M. Evans

---

[66] 621 F.2d 26, 28 (1st Cir. 1980).

[67] *Id.*

[68] *King Drug Co. of Florence v. Cephalon, Inc.*, No. 2:06-cv-1797, 2016 U.S. Dist. LEXIS 7477, at *28 (E.D. Pa. Jan. 22, 2016).

[69] *Id.*

[70] *Id.*

HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com

Joseph H. Meltzer (*pro hac vice*)
Terence S. Ziegler (*pro hac vice*)
KESSLER TOPAZ MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
tziegler@ktmc.com

David F. Sorensen (*pro hac vice*)
Ellen T. Noteware (*pro hac vice*)
BERGER MONTAGUE, P.C.
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
dsorensen@bm.net
enoteware@bm.net

Daniel J. Walker (*pro hac vice*)
BERGER MONTAGUE, P.C.
2001 Pennsylvania Ave, NW, Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
dwalker@bm.net

Peter R. Kohn (*pro hac vice*)
Neill W. Clark (*pro hac vice*)
FARUQI & FARUQI LLP
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
pkohn@faruqilaw.com
nclark@faruqilaw.com

COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
srobertson@cohenmilstein.com
devans@cohenmilstein.com

Robert A. Braun
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, Suite 500
Washington, DC 20002
Tel: (212) 408-4600
rbraun@cohenmilstein.com

Steve D. Shadowen
Matthew C. Weiner
HILLIARD & SHADOWEN LLP
1135 W. 6th Street, Suite 125
Austin, TX 78703
Tel: (855) 344-3298
steve@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com

Marvin A. Miller
Lori Fanning
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
mmiller@millerlawllc.com
lfanning@millerlawllc.com

Michael M. Buchman
Michelle Clerkin
MOTLEY RICE LLC
777 Third Avenue, 27th Floor
New York, NY 10017
Tel: (212) 577-0050
Fax: (212) 577-0054
mbuchman@motleyrice.com
mclerkin@motleyrice.com

*Co-Lead Counsel for the End-Payor Class*

*Co-Lead Counsel for the Direct Purchaser
Class Plaintiffs*

/s/ Barry L. Refsin
Barry L. Refsin
HANGLEY ARONCHICK SEGAL PUDLIN &
SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 568-6200
brefsin@hangley.com

Monica L. Kiley
Eric L. Bloom
HANGLEY ARONCHICK SEGAL PUDLIN &
SCHILLER
2805 Old Post Road, Suite 100
Harrisburg, PA 17110
Telephone: (717) 364-1030

*Counsel for Plaintiffs CVS Pharmacy,
Inc., Rite Aid Corporation, and Rite Aid
Hdqtrs. Corp.*

Matthew T. Oliverio
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
mto@om-rilaw.com

*Counsel for Plaintiffs Walgreen Co., The
Kroger Co., Safeway Inc., HEB Grocery
Company L.P., Albertson's LLC, CVS
Pharmacy, Inc., Rite Aid Corporation, and
Rite Aid Hdqtrs. Corp.*

Robert J. McConnell
MOTLEY RICE LLC
321 South Main Street, Second Floor
Providence, R.I. 02903
Tel: (401) 457-7700
bmcconnell@motleyrice.com

*Liaison Counsel for the End-Payor Class*

/s/ Scott E. Perwin
Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER, P.A.
1441 Brickell Ave, Suite 1100
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
sperwin@knpa.com
lravkind@knpa.com
aneill@knpa.com

Paul J. Skiermont
SKIERMONT DERBY LLP
2200 Ross Avenue, Suite 4800W
Dallas, TX 75201
Telephone: (214) 978-6600
pskiermont@skiermontderby.com

*Counsel for Plaintiffs Walgreen Co., The Kroger
Co., Safeway Inc., HEB Grocery Company L.P.,
and Albertson's LLC*

**CERTIFICATE OF SERVICE**

I, Sharon K. Robertson, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's CM/ECF system.  Those attorneys who are registered CM/ECF users may access these filings, and notice of these filings will be sent to those parties by operation of the CM/ECF system.

Dated: November 12, 2019                                    /s/ Sharon K. Robertson_____
                                                             Sharon K. Robertson