# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE LOESTRIN 24 FE ANTITRUST LITIGATION | MDL No. 2472 |
| THIS DOCUMENT RELATES TO: | Master File No. 1:13-md-2472-WES-PAS |
| Third-Party Payor Actions | |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT  (the "Settlement Agreement") is made and entered into on January 30, 2020, by and between Defendants, Allergan, plc; Warner Chilcott Co., LLC f/k/a Warner Chilcott Co., Inc.; Warner Chilcott (US), LLC; Warner Chilcott Sales (US), LLC; Warner Chilcott plc n/k/a Allergan WC Ireland Holdings Ltd.; Warner Chilcott Holdings Co. III, Ltd.; Warner Chilcott Corp.; Warner Chilcott Laboratories Ireland Limited; Warner Chilcott Limited; Watson Laboratories, Inc.; and Watson Pharmaceuticals, Inc. (collectively "Defendants"), and Co-Lead Counsel for the Third-Party Payor Class Plaintiffs acting pursuant to the Court's Order, dated September 17, 2019, on behalf of Plaintiffs City of Providence, A.F.of L. - A.C.G. Building Trades Welfare Plan, Allied Services Division Welfare Fund, Electrical Workers 242 and 294 Health & Welfare Fund, Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund, Laborers International Union of North America, Local 35 Health Care Fund, Painters District Council No. 30 Health & Welfare Fund, Teamsters Local 237 Welfare Benefits Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund, including all affiliates, subsidiaries, and members for the foregoing entities, and on behalf of the certified Class defined in Doc. #1274 (collectively "Plaintiffs" or the "TPP Class").

WHEREAS, the parties acknowledge that the United States District Court for the District of Rhode Island (the "Court") has jurisdiction over the above-captioned action (the "TPP Action"), each of the parties hereto, and all putative members of the TPP Class for all manifestations of this case, including this Settlement;

WHEREAS, Plaintiffs alleged that Defendants violated federal antitrust and numerous state antitrust, unjust enrichment, and consumer protection laws by engaging in a course of conduct to delay and impair generic competition and maintain a monopoly in respect of Loestrin 24 Fe, Minastrin 24 Fe, or Lo Loestrin Fe, including as detailed in the End-Payor Plaintiffs' Second Amended Consolidated Class Action Complaint dated May 9, 2016, [Doc. #165], expert reports, and other papers filed with the Court, and by means of alleged: (i) "*Walker Process*" patent fraud; (ii) "sham" patent litigation and/or "sham" patent enforcement; (iii) "sham" and/or fraudulent listing of patents in the Orange Book; (iv) "reverse payments" made or conspiracies related to patent settlement agreements with generic manufacturers; (v) "product hopping," from one brand drug to another brand drug, such as "hard switches" and/or "soft switches"; and (vi) the manufacture, use, sale, pricing, and/or marketing practices, including false statements and other allegedly illegal tactics to increase market share and/or violate anti-kickback laws, related to the foregoing drugs.

WHEREAS, TPP Plaintiffs and other members of the TPP Class allegedly incurred significant damages as a result;

WHEREAS, Defendants deny each and every one of Plaintiffs' allegations of unlawful conduct, deny that any conduct challenged by Plaintiffs caused any damage whatsoever, and have asserted a number of defenses to Plaintiffs' claims;

2

WHEREAS, Plaintiffs and Defendants agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations alleged by the TPP Class or a waiver of any defenses thereto;

WHEREAS, arm's-length settlement negotiations have taken place between counsel for Plaintiffs and Defendants, including with the assistance of a neutral mediator, and this Settlement Agreement, which embodies all of the terms and conditions of the settlement between Defendants and Plaintiffs, both individually and on behalf of the TPP Class (the "Settlement"), has been reached, subject to the final approval of the Court;

WHEREAS, Plaintiffs' counsel has concluded, after extensive fact and expert discovery, investigation of the facts, preparing this case for trial, and after carefully considering the circumstances of the TPP Action, including the claims asserted, and the possible legal and factual defenses thereto, that it would be in the best interests of the TPP Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a benefit to the TPP Class, and, further, that Plaintiffs' counsel consider the Settlement set forth herein to be fair, reasonable, and adequate compensation, and in the best interests of the TPP Class;

WHEREAS, Defendants have concluded, despite their belief that they are not liable for the claims asserted and that they have good defenses thereto, that it would be in their best interests to enter into this Settlement Agreement to avoid the uncertainties of litigation, and thereby avoid the risks inherent in complex litigation; and

NOW THEREFORE, it is agreed by the undersigned, on behalf of Defendants, Plaintiffs,

3

and the TPP Class, that all claims of Plaintiffs and the TPP Class against Defendants be settled, compromised, and dismissed with prejudice and, except as hereinafter provided, without costs as to Defendants or Plaintiffs, subject to the approval of the Court, on the following terms and conditions:

1.      **Class Definition.**  This settlement is on behalf of the Plaintiffs and the certified class ("TPP Class") defined as follows:

> All Third-Party Payor entities in the United States and its territories that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for Loestrin 24 Fe and/or its AB-rated generic equivalents in any form, and/or Minastrin 24 Fe and/or its AB-rated generic equivalents in any form, for consumption by their members, employees, insureds, participants, or beneficiaries, other than for resale, during the period September 1, 2009 through September 17, 2019. For purposes of the Class definition, entities "purchased" Loestrin 24 Fe, Minastrin 24 Fe, or their generic equivalents if they indirectly purchased, paid and/or reimbursed for some or all of the purchase price.

> Expressly excluded from the TPP Class are the following entities:

> a.  Defendants and their subsidiaries, or affiliates;
>
> b.  All federal or state governmental entities, excluding cities, towns or municipalities with self-funded prescription drug plans;
>
> c.  All entities who purchased Loestrin 24 Fe or its AB-rated generic equivalent, and/or Minastrin 24 Fe or its AB-rated generic equivalent, for purposes of resale or directly from Defendants or their affiliates;
>
> d.  Fully insured health plans (i.e., Plans that purchased insurance from another TPP covering 100% of the Plan's reimbursement obligations to its members); and
>
> e.  Pharmacy Benefit Managers.

2.      **Reasonable Best Efforts to Effectuate This Settlement**.  Counsel for the undersigned agree to recommend approval of this Settlement by the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to secure approval and to carry out the terms of this Settlement.

**3.     Motion for Preliminary Approval.**  Following the execution of this Settlement Agreement by all parties hereto, Plaintiffs shall file with the Court a motion for preliminary approval of the Settlement.  The motion for preliminary approval shall request the entry of a preliminary approval order substantially in the form of Exhibit A hereto (the "Preliminary Approval Order"), including: (i) the preliminary approval of the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the TPP Class; (ii) preliminary approval of the Plan of Allocation of the Settlement Fund; (iii) approval of the notice and proposed notice plan; (iv) a schedule for a hearing by the Court after the notice period has expired to approve the Settlement and to consider Plaintiffs' counsel's applications for attorneys' fees, reimbursement of costs and expenses, and incentive awards as set forth in this Settlement Agreement; (v) a stay of all proceedings in the TPP Action against Defendants until such time as the Court renders a final decision regarding the approval of the Settlement as described below in paragraph 15; and (vi) approval of an escrow agreement regarding the Settlement consideration described below in paragraph 6.  After the Court preliminarily approves the Settlement, Plaintiffs shall, in accordance with the Preliminary Approval Order, provide TPP Class members with notice of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure substantially in the form attached hereto as Exhibit B.  Plaintiffs' counsel will recommend notice to the Class according to the Notice Plan submitted by the Claims and Notice Administrator which shall provide for the best notice practicable, including direct mail to those members of the class who can be reasonably identified.

**4.     Motion for Final Approval and Entry of Final Judgment.** If the Court preliminarily approves the Settlement, Plaintiffs shall submit a motion for final approval of this Settlement by the Court, after appropriate notice to the TPP Class, and shall seek entry of a Final

Order and Judgment substantially in the form attached hereto as Exhibit C, with any additional findings of fact and conclusions of law (the "Final Order and Judgment"):

(a) finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to TPP Plaintiffs and the members of the TPP Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

(b) providing for payment of reasonable attorneys' fees and reimbursement of the costs and expenses from the Settlement Fund (as defined below);

(c) providing for payment solely from the Settlement Fund of incentive awards to the named TPP Plaintiffs in addition to whatever monies they will receive from the Settlement Fund pursuant to a Court-approved Plan of Allocation;

(d) directing that the TPP Action be dismissed with prejudice as to Defendants and, except as provided for herein, without attorney's fees recoverable under 15 U.S.C. §15(a) or similar state statutes or costs;

(e) reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including the provisions of this paragraph, the administration and consummation of this Settlement, the award of attorneys' fees and reimbursement of costs and expenses, and the payment of incentive awards to each of the named TPP Plaintiffs, if allowed by the Court; and

(f) directing that the judgment of dismissal of all TPP Class claims against Defendants shall be final and appealable pursuant to Fed. R. Civ. P. 54(b), there being no just reason for delay.

**5.      Finality of Settlement**.  This Settlement Agreement shall become final upon the occurrence of the following:

(a)      it is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

(b)      entry, as provided for in paragraph 4 herein, is made of the Final Order and Judgment of dismissal with prejudice against the TPP Plaintiffs and the members of the TPP Class; and

(c)      the time for appeal from the Court's approval of this Settlement and entry of the Final Order and Judgment has expired or, if appealed, either such appeal shall have been dismissed prior to resolution by the Court or approval of this Settlement and the Final Order and Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

**6.      Settlement Fund**.   Subject  to  the  terms  and  conditions  of  this  Settlement Agreement and the Escrow Agreement (as defined below), within thirty (30) days after entry by the Court of the Preliminary Approval Order without material change, Defendants shall deposit the Settlement Fund Amount (as defined in this Paragraph) into an escrow account (the "Escrow Account") held and administered by Bank Leumi USA (the "Escrow Agent").  The Settlement Fund Amount shall be $62,500,000.00.  The Settlement Fund Amount deposited by Defendants into the Escrow Account and any accrued interest after deposit shall become part of and shall be referred to as the "Settlement Fund."  In the event that Defendants resolve the claims of any opt-out ("Opt-out TPP") from the TPP Class following execution of this Settlement, Defendants shall contemporaneously with the execution of that settlement agreement place into an interest-bearing

7

account to be established by Plaintiffs' Lead Counsel an amount equal to 10% of the settlement amount (the "Set Aside Fund"). The parties agree that this amount is intended to cover a portion of the Opt-out TPP's share of TPP Class Counsel's attorneys' fees, costs, or expenses. Defendants shall inform Lead Counsel for the TPP Class of the amount of any private offers made to, and accepted by, Opt-out TPP within five (5) days of the acceptance of the offer by the Opt-out TPP. The amount of any such attorneys' fees, costs, and expenses awarded to Class Counsel from the Set Aside Fund shall be determined by the Court. Any Set Aside Funds not awarded to Class Counsel shall be re-deposited into the Settlement Fund.

7.   **No Injunctive Relief**.   This Settlement does not include any provision for injunctive relief, and Plaintiffs waive any such claim as to any of the matters released or discharged in paragraph 12.

8.   **Full Satisfaction; Limitation of Interest and Liability**.   Members of the TPP Class shall look solely to the Settlement Fund and the Set Aside Fund for settlement and satisfaction against Defendants of any and all Released Claims as defined in paragraph 12 herein, including any costs, fees, or expenses of their attorneys, experts, advisors, agents, and representatives, including with respect to the negotiation, execution, and performance of their obligations under this Settlement Agreement. In the event that the Settlement becomes final pursuant to paragraph 5 herein, the Settlement Fund and Set Aside Fund will fully satisfy any and all Released Claims as defined in paragraph 12 herein. Except as provided by order of the Court, no member of the TPP Class shall have any interest in the Settlement Fund, the Set Aside Fund, or any portion thereof. Defendants shall have no liability with respect to disbursements from the Settlement Fund or Set Aside Fund pursuant to any Court-approved plan of allocation. It is expressly understood that any settlement agreement entered into between Defendants and Health

8

Care Services Corporation ("HCSC") is not part of this Settlement, and that any payments in any settlement agreement between Defendants and HCSC will not in any way reduce the payments made to the TPP Class or to the TPP Plaintiffs pursuant to this Settlement.

9.   **Reimbursement of Costs and Expenses**.   Plaintiffs and their counsel will be reimbursed and indemnified solely out of the Settlement Fund and Set Aside Fund for all costs, fees, and expenses including, but not limited to, the costs of notice of this Settlement to TPP Class members, administration of the Settlement Fund, escrow administration, and taxes.   Defendants shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, and representatives, or for any costs, fees, or expenses for notice (other than the notice Defendants are required by the Class Action Fairness Act to send to the states' attorneys' general), administration, or other costs of implementing this Settlement, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund and the Set Aside Fund.

10.   **Disbursement of the Settlement Fund**.   If this Settlement Agreement becomes final pursuant to the provisions of paragraph 5 herein, the Settlement Fund shall be distributed to TPP Class members as ordered by the Court.   Prior to the Settlement becoming final pursuant to the provisions of paragraph 5, disbursements for the costs and expenses of the notice to the TPP Class and for administration of the Settlement Fund, up to $1,000,000.00, may be made from the Settlement Fund only upon written notice from Co-Lead Counsel for the TPP Class to the Escrow Agent in the manner provided in the Escrow Agreement, with a copy provided to counsel for Defendants.   Defendants shall have no liability or responsibility with respect to disbursements from or administration of the Settlement Fund.   To the extent that there is any ambiguity or

inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

**11.    Attorneys' Fees and Incentive Awards to the Named Plaintiffs.**  Class counsel intend to seek, solely from the Settlement Fund and Set Aside Fund, attorneys' fees not to exceed 33 1/3 % of the Settlement Fund plus the reimbursement of reasonable costs and expenses incurred in the prosecution of the TPP Class Action against Defendants plus interest thereon, and an incentive award of ten thousand dollars ($10,000.00) for each of the nine (9) named Plaintiffs. Defendants agree not to take any position with respect to the application by Class Counsel for attorneys' fees, reimbursement of expenses and costs, and the incentive awards set forth above. Any attorneys' fees, expenses, costs, and incentive awards approved by the Court shall be payable solely out of the Settlement Fund and the Set Aside Fund and Plaintiffs, members of the TPP Class, and their respective counsel shall not seek payment of any attorneys' fees, expenses, costs, or incentive awards from Defendants in this action, or in any other action related to the Released Claims (as defined in paragraph 12 hereof), from any source other than the Settlement Fund and Set Aside Fund, except as provided for in paragraph 11.  The Released Parties (as defined in paragraph 12 hereof) shall not have any responsibility for, and no liability whatsoever with respect to, any payment or disbursement of attorneys' fees, expenses, costs, or incentive awards, any allocation of attorneys' fees, expenses, costs, or incentive awards among Class Counsel and/or TPP Plaintiffs and/or the TPP Class, or with respect to any allocation of attorneys' fees, expenses, costs, or incentive awards to any other person or entity who may assert any claim thereto.

**12.    Releases.**

(a)    Upon this Settlement Agreement becoming final in accordance with paragraph 5 hereof, TPP Plaintiffs and the TPP Class, except those who have requested

10

exclusion from the Class and such request has been approved by the Court, shall unconditionally, fully and finally release and forever discharge all Defendants, any past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") from any and all manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including costs, expenses, penalties and attorneys' fees, accrued in whole or in part, in law or equity, that TPP Plaintiffs or any member or members of the TPP Class (including any of their past, present, or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such) (the "Releasors"), whether or not they object to the Settlement, ever had, now has, or hereafter can, shall or may have, indirectly, representatively, derivatively or in any other capacity, arising out of or relating in any way to any claim under federal or state laws that was alleged or could have been alleged by TPPs in the TPP Action, prior to the date of this Settlement, including but not limited to:

(1)     The allegations and claims in End-Payor Plaintiffs' Second Amended Consolidated Class Action Complaint dated May 9, 2016 [Doc. #165] or

11

any prior complaints filed by Plaintiffs in the TPP Action, and any expert reports, or other documents filed with the Court;

        (2)     the alleged delay or impairment to the entry of generic Loestrin 24 Fe, Minastrin 24 Fe, or Lo Loestrin Fe;

        (3)     the alleged conduct with respect to the procurement, maintenance, and enforcement of United States Patent Number 5,552,394, including but not limited to claims of *Walker Process* fraud, sham or fraudulent patent listings in the Orange Book, and sham patent litigations;

        (4)     the alleged "reverse payment" or conspiracies related to the patent settlements;

        (5)     the alleged "product hopping," from one brand drug to another brand drug, such as "hard switches" and/or "soft switches"; and

        (6)     the manufacture, sale, pricing, marketing or distribution of Loestrin 24 Fe, Minastrin 24 Fe, or Lo Loestrin Fe, or their generic equivalents except as provided for in paragraph 13 herein (the "Released Claims").

For the avoidance of doubt, this Release does not include any claims that could have been brought on behalf of consumer plaintiffs.  Releasors hereby covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.

        (b)     In addition, TPP Plaintiffs on behalf of themselves and all other Releasors, hereby expressly waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights and benefits conferred on them by §1542 of the California Civil Code, which reads:

12

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. TPP Plaintiffs and members of the TPP Class may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph, but each TPP Plaintiff and member of the TPP Class hereby expressly waives and fully, finally and forever settles, releases, and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each TPP Plaintiff and member of the TPP Class also hereby expressly waives and fully, finally and forever settles, releases, and discharges any and all claims it may have against any Released Party under § 17200, *et seq*., of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

(c)     Upon this Settlement Agreement becoming final in accordance with paragraph 5 hereof, all Defendants shall unconditionally, fully and finally release and forever discharge all members of the TPP Class and their counsel, any past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory   boards, insurers, general or limited partners,

13

employees, agents, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "TPP Released Parties") from any and all manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including costs, expenses, penalties and attorneys' fees, accrued in whole or in part, in law or equity, that Defendants or any (including any of their past, present, or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such) (the "Defendant Releasors"), whether or not they, ever had, now has, or hereafter can, shall or may have, indirectly, representatively, derivatively or in any other capacity, arising out of or relating in any way to any claim under federal or state laws that was alleged or could have been alleged in the TPP Action, prior to the date of this Settlement.

13.    **Reservation of Claims**.  This settlement is not intended to and does not release claims under Article 2 of the Uniform Commercial Code (pertaining to Sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury, or other claims unrelated to the allegations in the TPP Class Action.

14.    **Exclusions.**  In the event that the opt-outs from the TPP Class exceed a certain percentage of the Settling Defendants' relevant sales (in dollars) to the TPP Class during the Class Period, then the Settling Defendants shall have the unilateral right in their sole discretion, within ten (10) business days after the Court's decision to withdraw from and terminate the Agreement.

The relevant percentage thresholds referenced herein shall be set forth in a separate Supplemental Agreement to file filed under seal and reviewed in camera.  Within ten (10) business days after the end of the period to object to the proposed settlement, Co-Lead Counsel for Plaintiffs will cause copies of all objections to be provided to counsel for Defendants.

15.     **Stay of Proceedings**. Pending Court approval of the Settlement embodied in this Settlement Agreement, the parties agree to stay any and all proceedings against Defendants in the TPP Class Action other than those incident to the settlement process, and agree to extensions of time with respect to any court filings necessary to effectuate such stays.

16.     **Effect of Disapproval**.  If the Court declines to finally approve this Settlement, or if the Court does not enter the Final Order and Judgment in substantially the form provided for in paragraph 5, or if the Court enters the Final Order and Judgment and appellate review is sought, and on such review, the Final Order and Judgment is set aside or is affirmed with material modification, then this Settlement Agreement and the Settlement, with the exception of the parties' obligations under paragraph 10 herein which shall remain in full force and effect, shall be terminated upon the election of any of the Defendants or Co-Lead Counsel for Plaintiffs (Marvin A. Miller, Steve D. Shadowen, Sharon K. Robertson, and Michael Buchman) by providing written notice to the parties designated to receive such notice hereunder in accordance with paragraph 23 hereof and the Escrow Agent within ten (10) business days following the occurrence of any such event. An Order by the Court awarding attorneys' fees, costs, expenses, and/or incentive awards from the Settlement Fund (and Adjustment Fund) or the Set Aside Fund in any amount lower than requested by Plaintiffs' counsel pursuant to this Settlement Agreement (including paragraph 11) shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or the Final Order and Judgment and shall not give rise to any right of termination.  A modification

15

or reversal on appeal of any amount of Plaintiffs' counsel's fees, costs, and expenses awarded by the Court from the Settlement Fund and Adjustment Fund, or the amount of incentive awards from the Settlement Fund to Plaintiffs in the Class Action, shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or the Final Order and Judgment and shall not give rise to any right of termination.

17. **Termination**. In the event that the Settlement is terminated pursuant to paragraph 14 or paragraph 16 hereof, then (a) this Settlement Agreement, shall be of no force or effect, (b) any amount of the Settlement Fund attributable to this Settlement, including any and all interest earned thereon, but less the costs expended for notice of the Settlement, settlement administration, escrow administration, and taxes paid on the Settlement Fund shall be paid to Defendants, as soon as practicable after the Escrow Agent receives notice of termination as provided for in paragraph 16 hereof, and (c) any release pursuant to paragraph 12 above shall be of no force or effect.

18. **Preservation of Rights**. The parties hereto agree that this Settlement Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it shall be without prejudice to the rights of any party; shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Defendants, or of the truth of any of the claims or allegations contained in the complaint or any other pleading or document; and evidence thereof shall not be discoverable, admissible, or otherwise used directly or indirectly, in any way (except in accordance with the terms of this Settlement); and that the provisions of this Settlement Agreement can be used by the parties to enforce the provisions of the Settlement Agreement), whether in the TPP Class Action or in any other action or proceeding. The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.

Upon the Settlement becoming final, nothing in this paragraph shall prevent Defendants from asserting any release or using this Settlement Agreement to offset any liability to any other parties.

**19.**      **Resumption of Litigation**.  The parties agree, subject to approval of the Court, that in the event that the Settlement Agreement is not approved by the Court or the Settlement does not become final pursuant to paragraph 5 and Defendants do not perform under paragraph 6 herein, litigation of the TPP Class Action against Defendants will resume in a reasonable manner to be approved by the Court upon joint application by the parties hereto.

**20.**      **Confidentiality**.  The terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, except that the Court and any other parties may be informed of the fact of settlement.  However, this provision does not apply to statements made in judicial filings necessary to obtain preliminary Court approval of the Settlement, and Defendants shall be entitled to make such disclosures of the Settlement Agreement as they, in their sole discretion, determine are appropriate under the law.

**21.**      **Binding Effect**.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the parties hereto, the Released Parties, the Releasors, and the successors and assigns of each of them.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by the TPP Plaintiffs and their counsel shall be binding upon all members of the TPP Class and the Releasors and their respective successors and assigns.

**22.**      **Names of Parties**.  The undersigned counsel for TPP Plaintiffs warrant that all of their named TPP clients in the TPP Class Action are parties to this Settlement Agreement even if one or more of them is mistakenly identified in this Settlement Agreement by an incorrect name.

**23.**      **Notice**.  Any and all notices, requests, consents, directives, or communications by any party intended for any other party shall be in writing and shall, unless expressly provided

17

otherwise herein, be given personally, or by express courier, or by electronic transmission (such as e-mail) followed by postage prepaid mail, to the following persons, and shall be addressed as follows:

*To Plaintiffs and the TPP Class*:

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
mmiller@millerlawllc.com

Michael M. Buchman
Motley Rice LLC
777 Third Avenue, 21st Floor
New York, NY 10016
(212) 577-0040
mbuchman@motleyrice.com

Steve D. Shadowen
Hilliard & Shadowen LLP
1135 W. 6th Street, Suite 125
Austin, TX 78703
(717) 903-1177
steve@hilliardshadowenlaw.com

Sharon K. Robertson
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY  10005
(212) 838-7797
srobertson@cohenmilstein.com

*To Defendants*:

Peter J. Carney
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
(202) 626-3600
pcarney@whitecase.com

Jack E. Pace III
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8520
jpace@whitecase.com

Any of the parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be delivered, by giving the other parties prior written notice of the changed address, in the manner hereinabove provided, ten (10) calendar days before the change is effective.

   **24.    Integrated Agreement**. This Settlement Agreement (including the exhibits hereto) contains an entire, complete, and integrated statement of each and every term and provision agreed to, by and among the parties.  This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto.

25.    **Headings**.  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

26.    **No Party is the Drafter**.  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

27.    **Choice of Law**.  All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law without regard to its choice of law or conflict of laws principles.

28.    **Consent to Jurisdiction**.  Defendants and each member of the TPP Class who did not timely and properly seek exclusion from the TPP Class which has been approved by the Court hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for District of Rhode Island for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement.  Nothing in this paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

29.    **No Admission of Liability**.  Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Defendants including, without limitation, that Defendants have engaged in any conduct or practices that violates any antitrust, consumer protection, or unjust

19

enrichment statute or any other law.  This Settlement Agreement shall not be admissible for any purpose except in an action to enforce its terms or as otherwise provided in paragraphs 3-4 hereof.

30.     **Execution in Counterparts.**  This Settlement Agreement may be executed in counterparts.  Signatures transmitted by facsimile or other electronic means shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of January 30, 2020.

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400
mmiller@millerlawllc.com

Michael M. Buchman
Motley Rice LLC
777 Third Avenue, 27th Floor
New York, NY 10017
(212) 577-0040
mbuchman@motleyrice.com

Steve D. Shadowen
Hilliard & Shadowen LLP
1135 W. 6th Street, Suite 125
Austin, TX 78703
(717) 903-1177
steve@hilliardshadowenlaw.com

Sharon Robertson
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
srobertson@cohenmilstein.com

*Co-Lead Counsel for the TPP Class*

Peter J. Carney
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
(202) 626-3600
pcarney@whitecase.com

Jack E. Pace III
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8520
jpace@whitecase.com

*Counsel for Defendants*

20

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| IN RE: LOESTRIN 24 FE ANTITRUST LITIGATION | **MDL No. 2472** |
| **THIS DOCUMENT RELATES TO:** All End-Payor Actions | **Master File No. 1:13-md-2472-S-PAS** |

**[PROPOSED] ORDER GRANTING INDIRECT PURCHASER CLASS PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS, AND SCHEDULE FOR A FAIRNESS HEARING**

Upon review and consideration of Third-Party Payor Indirect Purchaser Class Plaintiffs' Unopposed Motion for Certification of a Settlement Class, Appointment of Class Counsel, Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class, Proposed Schedule for a Fairness Hearing, and exhibits thereto, and any hearing thereon, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that said motion is GRANTED as follows:

**Jurisdiction**

1.      This Order hereby incorporates by reference the definitions in the Settlement Agreement among Defendants, Plaintiffs, and the Indirect Purchaser Class, and all capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.      This Court has jurisdiction over each of the named Plaintiffs, City of Providence, A.F.of L. - A.C.G. Building Trades Welfare Plan, Allied Services Division

Welfare Fund, Electrical Workers 242 and 294 Health & Welfare Fund, Fraternal Order of

Police, Fort Lauderdale Lodge 31, Insurance Trust Fund, Laborers International Union of

North America, Local 35 Health Care Fund, Painters District Council No. 30 Health &

Welfare Fund, Teamsters Local 237 Welfare Benefits Fund, United Food and Commercial

Workers Local 1776 & Participating Employers Health and Welfare Fund ("TPP

Plaintiffs", "named Plaintiffs," or "Plaintiffs") and Allergan, plc; Warner Chilcott Co.,

LLC f/k/a Warner Chilcott Co., Inc.; Warner Chilcott (US), LLC; Warner Chilcott Sales

(US), LLC; Warner Chilcott plc n/k/a Allergan WC Ireland Holdings Ltd.; Warner Chilcott

Holdings Co. III, Ltd.; Warner Chilcott Corp.; Warner Chilcott Laboratories Ireland

Limited; Warner Chilcott Limited; Watson Laboratories, Inc.; and Watson

Pharmaceuticals, Inc. (collectively "Defendants")

## Certification of the Proposed Class

The Court makes the following determinations as required by Federal Rule of Civil

Procedure 23 solely in connection with the proposed settlement:

1.      Pursuant to Rule 23(c)(1)(B), the Class, which shall hereinafter be

denominated "the Class," is defined as follows:

> All Third-Party Payor entities in the United States and its territories
> that indirectly purchased, paid and/or provided reimbursement for
> some or all of the purchase price for Loestrin 24 Fe and/or its AB-
> rated generic equivalents in any form, and/or Minastrin 24 Fe and/or
> its AB-rated generic equivalents in any form, for consumption by
> their members, employees, insureds, participants, or beneficiaries,
> other than for resale, during the period September 1, 2009 through
> September 17, 2019.  For purposes of the Class definition, entities
> "purchased" Loestrin 24 Fe, Minastrin 24 Fe, or their generic
> equivalents if they indirectly purchased, paid and/or reimbursed for
> some or all of the purchase price.
>
> Expressly excluded from the TPP Class are the following entities:
>
> a. Defendants and their subsidiaries, or affiliates;
> b. All federal or state governmental entities, excluding cities, towns
> or municipalities with self-funded prescription drug plans;
> c. All entities who purchased Loestrin 24 Fe or its AB-rated generic

equivalent, and/or Minastrin 24 Fe or its AB-rated generic
equivalent, for purposes of resale or directly from Defendants or
their affiliates;

d. Fully insured health plans (i.e., Plans that purchased insurance
from another TPP covering 100% of the Plan's reimbursement
obligations to its members); and

e. Pharmacy Benefit Managers.

2.      Pursuant to Rule 23(a)(1), the Court determines that the Class is so numerous and geographically dispersed that joinder of all members is impracticable. The Class has (at least) 42,000 members geographically dispersed throughout the United States, which is sufficient to satisfy the impracticality of joinder requirement of Rule 23(a)(l).

3.      Pursuant to Rule 23(c)(l)(B), the Court determines that the following issues relating to claims and/or defenses (expressed in summary fashion below) present common, class-wide questions:

(a)      Whether the conduct challenged by the Class as anticompetitive in the End-
Payor Plaintiffs' Second Amended Consolidated Class Action Complaint
dated May 9, 2016, (the "Complaint") (Doc. No. 165) constituted a
conspiracy to monopolize or monopolization in violation of Section 2 of the
Sherman Act, 15 U.S.C. § 2, and several states' antitrust, consumer
protection, and unjust enrichments laws;

(b)      Whether the conduct challenged by the Class as anticompetitive in the
Complaint constituted a conspiracy in restraint of trade and violated Section
1 of the Sherman Act, 15 U.S.C. § 1, and several states' antitrust, consumer
protection, and unjust enrichments laws;

(c)      Whether the challenged conduct substantially affected interstate commerce
and caused antitrust injury-in-fact to the Class, in the nature of overcharges;
and

(d)      The amount of overcharge damages, if any, owed to the Class in the

aggregate under the foregoing laws.

4.      The Court determines that the foregoing class-wide issues relating to claims and/or defenses are questions of law or fact common to the Class that satisfy Rule 23(a)(2).

5.      The Named Plaintiffs are hereby appointed as representatives of the Class, for the following reasons:

(a)      The Named Plaintiffs allege, on behalf of the Class, the same manner of injury from the same course of conduct that they complain of themselves, and assert on their own behalf the same legal theory that they assert for the Class. The Court therefore determines that the Named Plaintiffs' claims are typical of the claims of the proposed Class within the meaning of Rule 23(a)(3); and

(b)      Pursuant to Rule 23(a)(4), the Court determines that the Named Plaintiffs have and will continue to fairly and adequately protect the interests of the Class. The Named Plaintiffs' interests do not conflict with the interests of absent members of the Class. All of the members of the Class share a common interest in proving Defendants' alleged anticompetitive conduct, and all Class members share a common interest in recovering the overcharge damages sought in the Complaint. Moreover, the Class is made up of business entities and individual consumers (consumers are members of only the Lupin Settlement Class), and any consumer member of the Lupin Settlement Class that wishes to opt out will be given an opportunity to do so. The members of the TPP Class who did not request exclusion from the TPP Class pursuant to the earlier notice and by which their election to opt out expired December 2, 2018, shall not be given a further opportunity to request exclusion.  Furthermore, the Named Plaintiffs and their Counsel are

well qualified to represent the Class in this case, given their experience in

prior cases, and the vigor with which they have prosecuted this action.

6.      Pursuant to Rule 23(b)(3), the Court determines that, in connection with and

solely for purposes of settlement, common questions of law and fact predominate over

questions affecting only individual members. In light of the class-wide claims, issues, and

defenses set forth above, the issues in this action that are subject to generalized proof, and

thus applicable to the Class as a whole, predominate over those issues that are subject only

to individualized proof.

7.      Also pursuant to Rule 23(b)(3), the Court determines that, in connection

with and solely for purposes of settlement, a class action is superior to other available

methods for the fair and efficient adjudication of this action. The Court believes it is

desirable, for purposes of judicial and litigation efficiency, to concentrate the claims of the

Class in a single action. The Court also believes that there are few manageability problems

presented by a case such as this, particularly in light of the Settlement preliminarily

approved in this Order.

8.      Pursuant to Fed. R. Civ. P. 23(c)(l)(B) and 23(g), the Court having

considered the factors provided in Rule 23(g)(1)(A), the Court appoints Lead Counsel,

Liaison Counsel and an Executive Committee ("Class Counsel") for the Indirect Purchaser

Class, consistent with the Court's Order dated June 16, 2014 (Doc. No. 85), and the duties

and responsibilities described in that Order.

## **Preliminary Approval of the Proposed Settlement**

9.      A court may approve a class action settlement if it is "fair, adequate, and

reasonable, and not a product of collusion." In evaluating a proposed settlement for

preliminary approval, however, the Court is required to determine only whether "it is the

product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

not improperly grant preferential treatment to class representative or segments of the class

and falls within the reasonable range of approval." A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)). The proposed settlement satisfies this standard.

10.     The Court finds that the proposed settlement, which includes a cash payment of $62,500,000 by Defendants into an escrow account for the benefit of the Class (the "Settlement Fund") in exchange for, *inter alia*, dismissal of the litigation between Third-Party Payor Indirect Purchaser Class Plaintiffs and Defendants, including the dismissal of all claims with prejudice and the release of certain claims filed or that could have been filed against Defendants by Third-Party Payor Indirect Purchaser Class Plaintiffs and the Class, as set forth in the Settlement Agreement, was arrived at by arm's-length negotiations by highly experienced counsel after years of litigation, falls within the range of possibly approvable settlements, and is hereby preliminarily approved, subject to further consideration at the Fairness Hearing provided for below.

## Approval of the Plan of Notice to the Class

11.     The proposed form of Notice to members of the Class of the pendency of this Class Action and the proposed Settlement thereof (annexed as Exhibit B to the Settlement Agreement) satisfy the requirements of Rule 23(e) and due process, are otherwise fair and reasonable, and therefore are approved. Class Counsel shall cause the Notice substantially in the form attached to the Settlement Agreement to be disseminated by _____, 2020, *via* first-class mail to those members of the Class who can reasonably and economically be identified, by publication, and email as set forth in the Notice Plan.

12.     Members of the Class may request exclusion from the Class or object to the Settlement no later than _____, 2020 (65 days after this order). Class Counsel or their

designee shall monitor and record any and all opt-out requests that are received.

13.      Pursuant to the Class Action Fairness Act of 2005 ("CAFA") Defendants shall serve notices as required under CAFA within 10 days from the date Plaintiffs file the Settlement Documents with the Court. Defendants shall contemporaneously provide Class Counsel with copies of any such notices.

14.      The Court appoints A.B. Data, Ltd. to serve as claims administrator and to assist Class Counsel in disseminating the Notice. All expenses incurred by the claims administrator must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund.

15.      The Court appoints Bank Leumi USA to serve as Escrow Agent pursuant to the terms of the Escrow Agreement for the purpose of administering the escrow account holding the Settlement Fund. Except as the parties have agreed in the Escrow Agreement, all expenses incurred by the Escrow Agent must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund.

## **Final Fairness Hearing**

16.      A hearing on final approval (the "Fairness Hearing") shall be held before this Court at __.m. on _____,  2020, at the United States District Court for the District of Rhode Island, _____, Providence, Rhode Island. At the Fairness Hearing, the Court will consider, inter alia: (a) the fairness, reasonableness and adequacy of the Settlement and whether the Settlement should be finally approved; (b) whether the Court should approve the proposed plan of distribution of the Settlement Fund among Class members; (c) whether the Court should approve awards of attorneys' fees and reimbursement of expenses to Class Counsel; (d) whether incentive awards should be awarded to the Named Plaintiffs; and (e) whether entry of a Final Order and Judgment terminating the litigation between Indirect Purchaser Class Plaintiffs and Defendants should be entered. The Fairness

Hearing may be rescheduled or continued; in this event, the Court will furnish all counsel with appropriate notice. Class Counsel shall be responsible for communicating any such notice promptly to the Class by posting a conspicuous notice on the following website of the Claims Administrator: In re Loestrin24 Fe AntitrustLitigation.com

17.     Class members who wish to: (a) object with respect to the proposed Settlement; and/or (b) wish to appear in person at the Fairness Hearing, must first send an Objection and, if intending to appear, a Notice of Intention to Appear, along with a Summary Statement outlining the position(s) to be asserted and the grounds therefore together with copies of any supporting papers or briefs, via first class mail, postage prepaid, to the Clerk of the United States District Court for the District of Providence, Rhode Island, with copies to the following counsel:

*On Behalf of Indirect Purchaser Class*

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Tel: (312) 332-3400
mmiller@millerlawllc.com

Steven Shadowen
Hilliard & Shadowen LLP
2407 S Congress Avenue, Ste E 122
Austin, TX 78704
Tel: (855) 344-3928
steve@hilliardshadowenlaw.com

*On behalf of Defendants*:

Peter J. Carney
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Tel: 202-626-3600
pcarney@whitecase.com

To be valid, any such Objection and/or Notice of Intention to Appear and Summary

statement must be postmarked no later than _____, 2020. Except as herein provided, no person or entity shall be entitled to contest the terms of the proposed Settlement. All persons and entities who fail to file an Objection and/or Notice of Intention to Appear as well as a Summary Statement as provided above shall be deemed to have waived any such objections by appeal, collateral attack or otherwise and will not be heard at the Fairness Hearing.

18.     All briefs and materials in support of the final approval of the settlement and the entry of Final Order and Judgment proposed by the parties to the Settlement Agreement shall be filed with the Court by _____, 2020.

19.     All briefs and materials in support of the application for an award of attorneys' fees and reimbursement of expenses, and incentive awards for the Named Plaintiffs, shall be filed with the Court by _____, 2020.

20.     All proceedings in the action between the Indirect Purchaser Class Plaintiffs and Defendants are hereby stayed until such time as the Court renders a final decision regarding the approval of the Settlement and, if the Court approves the Settlement, enters Final Order and Judgment and dismisses such actions with prejudice.

21.     Neither this Order, nor the Settlement Agreement, nor any other Settlement related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Defendants as to the validity of any claim that has been or could have been asserted by Indirect Purchaser Class Plaintiffs against Defendants or as to any liability by Defendants as to any matter set forth in this Order, or as to whether any class, in this case or others, may be certified for purposes of litigation and trial.

So ordered.

Dated at Providence, Rhode Island, this __th day of _____ 2020.

                                         _____
                                         Hon. William Smith
                                         United States District Judge

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

**NOTICE OF CLASS ACTION AND OF PROPOSED END-PAYOR SETTLEMENTS**

**If you purchased Loestrin 24 Fe, Minastrin 24 Fe or their generic versions,
the settlement of a class action lawsuit may affect your rights.**

*This Notice is being provided by Order of the U.S. District Court.
It is not a solicitation from a lawyer. You are not being sued.*

A lawsuit is pending in the United States District Court for the District of Rhode Island ("the Court") against the following Defendants: Warner Chilcott (US), LLC, Warner Chilcott Sales (US), LLC, Warner Chilcott Company, LLC, f/k/a Warner Chilcott Co., Inc., Warner Chilcott plc n/k/a Allergan WC Ireland Holdings Ltd., Warner Chilcott Holdings Co. III, Ltd., Warner Chilcott Corp., Warner Chilcott Laboratories Ireland Limited, and Warner Chilcott Limited (together, "Warner Chilcott"); Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. (together, "Watson") (both Warner Chilcott and Watson collectively as the "Warner Chilcott Defendants"); and Lupin Ltd. and Lupin Pharmaceuticals, Inc. (together, "Lupin").

Plaintiffs City of Providence, A.F.of L. - A.C.G. Building Trades Welfare Plan, Allied Services Division Welfare Fund, Electrical Workers 242 and 294 Health & Welfare Fund, Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund, Laborers International Union of North America, Local 35 Health Care Fund, Painters District Council No. 30 Health & Welfare Fund, Teamsters Local 237 Welfare Benefits Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund, including all affiliates, subsidiaries, and members ("End-Payor Plaintiffs" or "Plaintiffs") filed this lawsuit on behalf of themselves and a proposed class (defined below), claiming that the Warner Chilcott Defendants and Lupin (collectively "Defendants") harmed competition and violated federal and/or state antitrust, consumer protection, and unjust enrichment laws in the United States and its territories.  End-Payor Plaintiffs allege that Defendants unlawfully delayed the availability of allegedly less-expensive generic versions of Loestrin 24 Fe and Minastrin 24 Fe and that Defendants' conduct caused certain consumers and third-party payors (discussed below) to pay too much for Loestrin 24 Fe, Minastrin 24 Fe, and their generic equivalents in these states and territories.  Defendants deny any wrongdoing.

Settlements have been reached with the Defendants to dismiss all claims against Defendants with prejudice.

This Notice (the "Settlement Notice") provides notice of the proposed settlements with the Defendants on behalf of the members of the Proposed Lupin Settlement Class (defined below) and Proposed Warner Chilcott Settlement Class (defined below). If you are a member of the Proposed Settlement Classes, you may object to the settlements.

Generally, for the Lupin Settlement you are included in the Class if you purchased, paid and/or provided reimbursement for some or all of the purchase price of Loestrin 24 FE, Minastrin 24 FE and/or their generic equivalents, other than for resale in the United States and its territories, from September 1, 2009 through and until May 2, 2019. Certain third-party payors are also members of the Lupin Settlement Class. The Warner Chilcott Settlement includes only Third-Party Payors, and you are generally included in that class if you purchased, paid, and/or provided reimbursement for some or all of the purchase price for Loestrin 24 Fe, Minastrin 24 Fe and/or generic versions of these drugs, for consumption by your members, employees, insureds, participants, or beneficiaries, other than for resale, in the United States and its territories, from September 1, 2009 to September 17, 2019.  Additional information on who is included can be found in Questions __ and __ of this Notice.

*This lawsuit does not claim that Loestrin 24 Fe or Minastrin 24 Fe are unsafe or ineffective.*

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS | |
|---|---|
| **EXCLUDE YOURSELF FROM THE LUPIN SETTLEMENT CLASS** | This option allows you, if you are a consumer, to exclude yourself from the Lupin Settlement Class and instead file a lawsuit against Lupin that asserts claims related to the allegations or claims in this case. The exclusion deadline for the Lupin Settlement Class is _____. |
| **OBJECT TO THE SETTLEMENTS** | Do not exclude yourself.  Write to the Court and explain what you do not like about the Settlements. The objection deadline is _____. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlements. Your notice of intention to appear at the Final Approval Hearing must be postmarked no later than _____. |
| **DO NOTHING** | Give up rights to be part of any other lawsuit that asserts claims related to the allegations or claims against the Lupin or Warner Chilcott Defendants in this case. |

**THESE RIGHTS AND OPTIONS AND THE DEADLINES TO EXERCISE THEM ARE EXPLAINED IN THIS NOTICE.**

### TABLE OF CONTENTS

BASIC INFORMATION ABOUT THE LAWSUIT AND SETTLEMENTS ........................................................3
   1.  Why did I get this Notice? ...............................................................................................................3
   2.  What is the lawsuit about? ...............................................................................................................3
   3.  What is the current status of the lawsuit? ........................................................................................3
   4.  What do the Settlements provide? ....................................................................................................4
   5.  What are members of the Classes giving up in exchange for the Settlements?................................4
DETERMINING IF YOU ARE A MEMBER OF THE CLASSES ..............................................................6
   6.  How do I know if I am a member of the Classes? ............................................................................6
YOUR OPTIONS AS A MEMBER OF THE CLASSES .............................................................................7
   7.  How much money can I get? .............................................................................................................7
   8.  What do I need to do to get a payment? ...........................................................................................7
   9.  What are my other options as a member of the one or both of the Settlement Classes? ..................7
   10. What does it mean to object?............................................................................................................7
   11. How do I object to the proposed Settlements?.................................................................................7
EXCLUDING YOURSELF FROM THE SETTLEMENTS .......................................................................8
   12. What does it mean to request to be excluded from the Settlement Classes?..................................8
   13. How do I get out of the Settlements? (Excluding a consumer) ......................................................8
   14. How do Third-Party Payors get out of the case? (Excluding a Third-Party Payor) .....................8
   15. What is the legal significance of excluding myself? ......................................................................8
   16. If I don't exclude myself, can I sue later?.......................................................................................9
   17. What's the difference between objecting and excluding myself from the Settlements? ..............9
IF YOU DO NOTHING ...............................................................................................................................9
   18. What happens if I do nothing at all? ...............................................................................................9
THE LAWYERS REPRESENTING YOU ..................................................................................................9
   19. As a member of the Class or Classes, do I have a lawyer representing my interests in this Class Action
       and the Settlements? ........................................................................................................................9
   20. How will the lawyers be compensated? Will the named Plaintiffs receive an incentive award?...............9
   21. Should I get my own lawyer? .........................................................................................................10
THE COURT'S FINAL APPROVAL HEARING........................................................................................10
   22. When and where will the Court determine whether to approve the Settlements?.......................10
   23. Do I have to attend the Final Approval Hearing? ........................................................................10

24. May I speak at the Final Approval Hearing?.............................................................................10

GETTING MORE INFORMATION...................................................................................................10

25. Where do I get more information?.............................................................................................10

## BASIC INFORMATION ABOUT THE LAWSUIT AND SETTLEMENTS

1.   **Why did I get this Notice?**

You received this Notice because you requested it or records indicate that you may be a member of the Lupin Settlement Class or the Warner Chilcott Settlement Class. Settlements have been reached with the Defendants. All Defendants deny any wrongdoing. You are not being sued. This Notice describes the lawsuit, the settlement of this case, and the rights and options you have now.

2.   **What is the lawsuit about?**

The lawsuit is about the price of Loestrin 24 Fe and Minastrin 24 Fe and whether the manufacturers of these drugs, Warner Chilcott, Watson, and Lupin, impaired or delayed the availability of allegedly less-expensive generic versions.  End-Payor Plaintiffs (those who brought the suit) allege that Warner Chilcott obtained an illegal monopoly on Loestrin 24 Fe through a patent procured by fraud on the U.S. Patent and Trademark Office and then wrongfully listed the fraudulent patent in the FDA's "Orange Book." End-Payor Plaintiffs allege that, after generic manufacturers Watson, Lupin, and other potential generic competitors notified Warner Chilcott that they planned to launch generic versions of Loestrin 24 Fe, Warner Chilcott sued them asserting the invalid, improperly obtained, and unenforceable patent. End-Payor Plaintiffs allege that Warner Chilcott later settled the baseless patent infringement lawsuit by entering into illegal reverse payment agreements with Watson and Lupin whereby Warner Chilcott paid Watson and Lupin to delay the launch of its generic Loestrin 24 Fe product for more than four years. End-Payor Plaintiffs allege that, just prior to the launch of generic Loestrin 24 Fe, Warner Chilcott implemented an illegal "product hop" by withdrawing Loestrin 24 Fe from the United States market and launching in its place Minastrin 24 Fe, a chewable version of Loestrin 24 Fe that Plaintiffs allege was otherwise indistinguishable and offered no additional benefit over Loestrin 24 Fe.

End-Payor Plaintiffs claim that class members were injured as a result of the challenged conduct by paying more for Loestrin 24 Fe, Minastrin 24 Fe, and their generic equivalents. A redacted public copy of End-Payor Plaintiffs' Second Amended Consolidated Class Action Complaint, dated May 9, 2016 (ECF No. 165), is available for download at www.InReLoestrin24FeAntitrustLitigation.com.

Defendants deny all these allegations, including that End-Payor Plaintiffs or class members are entitled to damages or other relief. Defendants respond that the patent protecting Loestrin 24 Fe was valid and enforceable and that Warner Chilcott's litigation against companies infringing the patent was reasonable and necessary to protect Warner Chilcott's legitimate intellectual property. Defendants also respond that their settlement of the patent infringement litigation was reasonable, led to earlier availability of generic versions of Loestrin 24 Fe than would have been available without the settlement, and included business deals that introduced new competition in women's health, among other benefits. Defendants also respond that the transition from Loestrin 24 Fe to Minastrin 24 Fe introduced a new competitive option for patients and their physicians, as well as other benefits, and did not have the effect of delaying or impairing any generic competition. Finally, Defendants respond that no patients or pharmaceutical purchasers paid higher prices or suffered any harm as a result of Defendants' alleged conduct. No court or other authority has found that the Lupin and Warner Chilcott Defendants engaged in any wrongdoing.

3.   **What is the current status of the lawsuit?**

End-Payor Plaintiffs have agreed to a Settlement with the Lupin and Warner Chilcott Defendants. The lawsuit is currently pending in the United States District Court for the District of Rhode Island before United States District Judge William E. Smith.  The case name is *In re Loestrin 24 Fe Antitrust Litigation*, MDL No. 2472 (D.R.I.), and the civil action number is 1:13-md-02472-WES-PAS.  The Court has set a Final Fairness Hearing for the proposed Settlements on [⎽⎽⎽⎽⎽⎽⎽].

4.     **What do the Settlements provide?**

To settle this lawsuit as it pertains to the Lupin Defendants, they agreed: (a) that they are willing to provide certain evidentiary certifications that the End-Payor Plaintiffs could use during the *Loestrin* case involving the overall End-Payor Class and the then non-settling Warner Chilcott Defendants; and (b) to deposit a total amount of $1,000,000 into a Settlement Fund.

To settle this lawsuit as it pertains to the Warner Chilcott Defendants, they agreed to deposit a total amount of $62,500,000 into a Settlement Fund.

If the Settlements are approved by the Court and become final, Plaintiffs' Class Counsel will seek approval from the Court to obtain from the Settlement Funds, after allocation of the gross settlement amount (plus interest thereon) to the Lupin Settlement Class and the TPP Class: (i) reimbursement of reasonable costs, fees and expenses incurred by Counsel in connection with the Settlements and the litigation, including payment of the cost of notice of this Settlement to the Class, administration of the Settlement Fund, administration and taxes; (ii) attorneys' fees (no attorneys' fees are requested in connection with the Lupin settlement); and (iii) payment for service awards to the class representatives in recognition of their efforts to date on behalf of the Settlement Classes.

Any remainder in the Settlement Funds, after the payment of the above expenses, shall be distributed to the Lupin and Warner Chilcott Settlement Classes in a manner approved by the Court. The Settling Defendants have agreed to these settlement amounts as a compromise of disputed claims and in order to avoid the risks and costs of further litigation, and expressly deny that they did anything wrong or that they are liable to the Plaintiffs or the Lupin Settlement Class and Warner Chilcott Settlement Class.

5.     **What are members of the Classes giving up in exchange for the Settlements?**

In exchange for the Settlement, members of the Classes will agree to a "Release of Claims" against the Settling Defendants as follows:

(a) If and when the Settlement with the Settling Defendants becomes final (the "Effective Date"), Plaintiffs and all members of the respective Settlement Classes (on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, as well as their past and present general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives), except those who have requested exclusion from the Class and such request has been approved by the Court, shall unconditionally, fully and finally release and forever discharge the Defendants, any past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") from the End-Payor Class Action, including from any and all manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, fixed or contingent, including costs, expenses, penalties and attorneys' fees, accrued in whole or in part, in law or equity, that Plaintiffs or any member or members of the respective Settlement Classes (including any of their past, present, or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such) (the "Releasors"), whether or not they object to the Settlement Agreement, ever had, now has, or hereafter can, shall or may have, indirectly, representatively, derivatively or in any other capacity, arising out of or relating in any way to any claim under federal or state laws that was alleged or could have been alleged in the End-Payor Class Action, prior to the date of these Settlements, including but not limited to:

(i)     The allegations and claims in End-Payor Plaintiffs' Second Amended Consolidated Class Action Complaint dated May 9, 2016 [Doc. #165] or any prior complaints filed by End-Payor Plaintiffs, and any expert reports or other documents filed with the Court;

(ii)     the alleged delay or impairment to the entry of generic Loestrin 24 Fe Minastrin 24 Feor Lo Loestrin Fe;

(iii)    the alleged conduct with respect to the procurement, maintenance, and enforcement of United States Patent Number 5,552,394, including but not limited to claims of *Walker Process* fraud, sham or fraudulent patent listings in the Orange Book, and sham patent litigations;

(iv)    the alleged "reverse payment" or conspiracies related to the patent settlements;

(v)    the alleged "product hopping," from one brand drug to another brand drug, such as "hard switches" and/or "soft switches"; and

(vi)    the manufacture, sale, pricing, marketing or distribution of Loestrin 24 Fe, Minastrin 24 Fe or their generic equivalents, including allegedly making false statements or engaging in fraudulent marketing conduct, illegal tactics to increase market share and/or violating anti-kickback laws, except as provided for in paragraph 17 of the Settlement Agreement (the "Released Claims").

Releasors covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims. For the avoidance of doubt, the release applies, without limitation, to any conduct relating to the procurement, maintenance or enforcement of United States Patent 5,552,394, including any commencement, maintenance, defense or other participation in litigation concerning any such patent, as well as any "product hopping," that was alleged in, could be fairly characterized as being alleged in, is related to an allegation made in, or could have been alleged in the End-Payor Class Action. For the avoidance of doubt, the Warner Chilcott Settlement Class does not include a release of claims with respect to consumers.

(b) In addition, Plaintiffs on behalf of themselves and all other Releasors, expressly waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights, and benefits conferred by §1542 of the California Civil Code, which reads:

Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Plaintiffs and members of the respective Settlement Classes may hereafter discover facts other than or different from those which s/he or it knows or believes to be true with respect to the claims which are the subject matter of the Release, but each Plaintiff and member of the respective Settlement Classes expressly waives and fully, finally and forever settles, releases and discharges, upon the Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Plaintiff and member of the respective Settlement Classes also expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against any Released Party under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

(c) Reservation of Claims. The Settling Parties intend by the Settlement Agreement to release only the Settling Defendants and the Released Parties with respect to the Released Claims. The Settling Parties specifically do not intend this Settlement Agreement, or any part hereof or any other aspect of the proposed Settlement Agreement, to compromise or otherwise affect in any way any rights the Releasing Parties have or may have against any other person, firm, association, or corporation whatsoever. The release set forth in the Settlement Agreement is not intended to and shall not release any claims other than the Released Claims.

(d) The Settlement Agreement is not intended to and does not release claims under Article 2 of the Uniform Commercial Code (pertaining to Sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury, or other claims unrelated to the allegations in the End-Payor Class Action.

The Settlement Agreements, available at www.InReLoestrin24FeAntitrustLitigation.com, fully describe the Lupin and Warner Chilcott Settlements and the Released Claims. If you have any questions, you can talk with the lawyers listed in Question 19 for free, or you can, of course, talk with your own lawyer if you have questions about what this means.

**DETERMINING IF YOU ARE A MEMBER OF THE CLASSES**

6.  **How do I know if I am a member of the Classes?**

You are generally a member of the Lupin Settlement Class if, during the period from September 1, 2009 through May 2, 2019 (the "Class Period"):

- As a Consumer, you purchased or paid for some or all of the purchase price for Loestrin 24 Fe, Minastrin 24 Fe and/or generic versions of these drugs, for consumption by yourself or your family, other than for resale, in the United States and its territories, including Puerto Rico.

- As a Third-Party Payor, you purchased, paid and/or provided reimbursement for some or all of the purchase price for Loestrin 24 Fe, Minastrin 24 Fe and/or generics versions of these drugs, for consumption by your members, employees, insureds, participants, or beneficiaries, other than for resale, in the United States and its territories, including Puerto Rico.

The following persons or entities are excluded from the Lupin Settlement Class: (a) Defendants and their officers, directors, management, employees, subsidiaries, or affiliates; (b) All federal or state governmental entities, excluding cities, towns, or municipalities with self-funded prescription drug plans; (c) All persons or entities who purchased Loestrin 24 Fe or its AB-rated generic equivalent, and/or Minastrin 24 Fe or its AB-rated generic equivalent, for purposes of resale or directly from the Defendants or their affiliates; (d) Fully insured health plans (i.e., plans that purchased insurance from another third-party payor covering 100% of the Plan's reimbursement obligations to its members); (e) Any "flat co-pay consumers" whose purchases were paid in part by a third-party payor and whose co-payment was the same regardless of the retail purchase price; (f) Any "brand loyalist" consumers or third-party payors who purchased Loestrin 24 Fe and who did not purchase any AB-rated generic equivalent after such generics became available; and (g) The judges in this case and any members of their immediate families.

You are generally a member of the Warner Chilcott Settlement Class if, during the period from September 1, 2009 through September 17, 2019 (the "TPP Class Period"):

- As a Third-Party Payor, you purchased, paid and/or provided reimbursement for some or all of the purchase price for Loestrin 24 Fe, Minastrin 24 Fe and/or generics versions of these drugs, for consumption by your members, employees, insureds, participants, or beneficiaries, other than for resale, in the United States and its territories, including Puerto Rico.

The following persons or entities are excluded from the TPP Class: a. Defendants and their subsidiaries, or affiliates; b. All federal or state governmental entities, excluding cities, towns or municipalities with self-funded prescription drug plans; c. All entities who purchased Loestrin 24 Fe or its AB-rated generic equivalent, and/or Minastrin 24 Fe or its AB-rated generic equivalent, for purposes of resale or directly from Defendants or their affiliates; d. Fully insured health plans (i.e., Plans that purchased insurance from another TPP covering 100% of the Plan's reimbursement obligations to its members); and e. Pharmacy Benefit Managers.

Third-Party Payors include all health insurance companies, third-party administrators, health maintenance organizations, health and welfare plans that make payments from their own funds, and other health benefit providers and entities with self-funded plans that contract with a health insurer or administrator to administer their prescription drug benefits. Third-Party Payors include such private entities that may provide prescription drug benefits for current or former public employees and/or public benefits programs, but only to the extent that such a private entity purchased Loestrin 24 Fe, Minastrin 24 Fe, or their generic equivalents for consumption by its members, employees, insureds, participants, or beneficiaries.

Additional information about the Class, including the Court's orders approving the Class periods and definitions, are available on the case website at www.InReLoestrin24FeAntitrustLitigation.com.

## YOUR OPTIONS AS A MEMBER OF THE CLASSES

7.  **How much money can I get?**

Only Third-Party Payors can file claims in these Settlements. The Warner Chilcott Settlement Class does <u>not</u> include consumers. 30.03% of the $1 million dollar Lupin Settlement, which includes Consumer Class Members, will be allocated to Consumer Class Members. Due to the costs, fees and expenses incurred by Counsel in connection with the Lupin Settlement and the litigation, including payment of the cost of notice of the Settlement to the Class, there likely will not be sufficient funds to facilitate a claims process and distribution to Consumer Class Members. If there are any residual Funds, they will be dispersed to a charity approved by the Court.

At this time, it is unknown how much each Third-Party Payor Class Member ("TPP Class Member") that submits a valid claim will receive. Payments will be based on a number of factors, including the number of valid claims filed by all TPP Class Members and the dollar value of each TPP Class Member's purchase(s) in proportion to the total claims filed. No matter how many claims are filed, no money will be returned to the Settling Defendants once the Court finally approves the Settlements. In order to receive a payment, you will need to file a valid claim form before the claims period ends.

8.  **What do I need to do to get a payment?**

To be eligible to receive a payment if the Court approves the Settlements, you must complete and submit a valid Claim Form. Claim Forms should be mailed to the address below and must be received by _____, 2020. You can get a Claim Form at www.InReLoestrin24FeAntitrustLitigation.com or by calling 1-877-324-0380 or writing to the address below and requesting a Claim Form.

<em>In re Loestrin 24 Fe Antitrust Litigation</em><br>c/o A.B. Data, Ltd.<br>P.O. Box 173085<br>Milwaukee, WI 53217

You may also submit a completed Claim Form online at www.InReLoestrin24FeAntitrustLitigation.com. If you submit a Claim Form online, you must do it by _____, 2020.

9.  **What are my other options as a member of the one or both of the Settlement Classes?**

Your other options depend on which Settlement Class you are a member of and whether you are a Consumer or Third-Party Payor. You can choose to do nothing, or you may exclude yourself only if you are a consumer member of the Lupin Settlement Class, or object to the Settlements. Additional information is provided below.

10. **What does it mean to object?**

Objecting is telling the Court that you don't like something about the proposed Settlements. You can give reasons why you think the Court should not approve one or both of them. The Court will consider your views before making a decision.

11. **How do I object to the proposed Settlements?**

To object, you must prepare and sign a written objection that includes: (i) the case name and number ("*In re Loestrin 24 Fe Antitrust Litigation*, MDL No. 2472"); (ii) your full name, current address, and telephone number; (iii) a written statement of your objections and the specific reasons for each; (iv) any supporting papers, evidence, or documents; (v) a statement of whether you intend to appear and present your objections at the Fairness Hearing (*see* Question 22); and (vi) your signature. You must file your objection with the Court no later than [_____], and mail copies to Class Counsel and Defense Counsel postmarked by [_____].

Consumers can object to or request to be excluded from the Lupin Settlement. Third-Party Payors can object to one or both of the Settlements but if you did not seek exclusion earlier, Third-Party Payors cannot request to be excluded now.

| CLASS COUNSEL | DEFENSE COUNSEL FOR THE LUPIN DEFENDANTS | DEFENSE COUNSEL FOR THE WARNER CHILCOTT DEFENDANTS |
|---|---|---|
| Michael M. Buchman<br>MOTLEY RICE LLC<br>777 Third Avenue<br>27th Floor<br>New York, NY 10017 | Leiv Blad Jr.<br>LOWENSTEIN SANDLER LLP<br>2200 Pennsylvania Ave. NW<br>Washington, DC 20037 | Peter J. Carney<br>White & Case LLP<br>701 Thirteenth Street, NW<br>Washington, DC 20005 |
| COURT | | |
| U.S. District Court<br>District of Rhode Island<br>One Exchange Terrace<br>Federal Building and Courthouse<br>Providence, RI 02903 | | |

## EXCLUDING YOURSELF FROM THE SETTLEMENTS

**12.   What does it mean to request to be excluded from the Settlement Classes?**

If you are a consumer and do not want to be part of the Lupin Settlement and you want to keep your right to sue the Lupin and/or Warner Chilcott Defendants relating to the allegations in *In re Loestrin 24 Fe Antitrust Litigation* concerning the alleged delay or impairment in the entry of generic Loestrin 24 Fe and Minastrin 24 Fe, then you must take steps to remove yourself from the Lupin Settlement Class. This is called excluding yourself, or "opting out" of the Settlement Class. If you exclude yourself, you will not receive any payment or anything else from the Settlement from which you exclude yourself.

Consumers may request exclusion from the Lupin Settlement. Consumers are <u>not</u> included in the Warner Chilcott Settlement.

Third-Party Payors were previously provided notice and can no longer request exclusion from the Settlement Classes.

**13.   How do I get out of the Settlements? (Excluding a consumer)**

If you are a consumer, to exclude yourself from the Lupin Settlement, you must send a letter by mail saying that you wish to be excluded from the Settlement Class for the Settlement Agreement with the Lupin Defendants in *In re Loestrin 24 Fe Antitrust Litigation*, MDL No. 2472. Be sure to include your name, address, telephone number, and signature, and to specify that you want to exclude yourself from the Lupin Settlement Class. You cannot exclude yourself on the telephone or by email. You must mail your request for exclusion, postmarked no later than [＿＿＿＿＿＿], to:

*In re Loestrin 24 Fe Antitrust Litigation*
EXCLUSIONS
P.O. Box 173001
Milwaukee, WI 53217

**14.   How do Third-Party Payors get out of the case? (Excluding a Third-Party Payor)**

Third-Party Payors were previously provided notice and can no longer request exclusion from the Settlement Classes.

**15.   What is the legal significance of excluding myself?**

If you exclude yourself, you will not be legally bound by the Lupin Settlement with the Lupin Settlement Class from which you exclude yourself. You may be able to sue the Lupin and Warner Chilcott Defendants in the future.

16. **If I don't exclude myself, can I sue later?**

No. Unless you exclude yourself following the instructions above, you give up the right to sue the Lupin Defendants for the claims that the Settlement with them resolve. You must exclude yourself from the Lupin Settlement Class to be able to bring your own, separate lawsuit(s) against the Lupin or Warner Chilcott Defendants. Remember, the exclusion deadline is [_____.]

17. **What's the difference between objecting and excluding myself from the Settlements?**

Objecting is telling the Court that you do not like something about the Settlements. You can object only if you stay in the Settlement Class. In contrast, excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself from the Settlement Class, you have no basis to object to the Settlement from which you exclude yourself because the action no longer affects you with regard to the Settlement Class from which you exclude yourself.

## IF YOU DO NOTHING

18. **What happens if I do nothing at all?**

If you do nothing, and the Court approves the Settlements, you will be bound by its terms. Unless you exclude yourself, you will not be able to file a lawsuit or be part of any other lawsuit asserting claims against the Lupin or Warner Chilcott Defendants concerning or relating to the claims and factual allegations that were or could have been raised in this action. The complete Settlement Agreements are available at www.InReLoestrin24FeAntitrustLitigation.com and more specifically describes the released claims at pages 11-14 of the Lupin Settlement Agreement and pages 10 - 13 of the Warner Chilcott Settlement Agreement.

## THE LAWYERS REPRESENTING YOU

19. **As a member of the Class or Classes, do I have a lawyer representing my interests in this Class Action and the Settlements?**

Yes. The Court has appointed lawyers to represent you and other Class Members. These lawyers are called Class Counsel. You will not be charged individually for these lawyers. They will ask the Court to approve an award for expenses in connection with the Loestrin Antitrust Litigation. The following lawyers represent the Classes:

| COUNSEL FOR THE CLASSES | |
|---|---|
| Michael M. Buchman<br>**MOTLEY RICE LLC**<br>777 Third Avenue, 27th Floor<br>New York, NY 10017<br>212-577-0040 | Steve Shadowen<br>**HILLIARD & SHADOWEN LLP**<br>2407 S. Congress Ave., Ste. E 122<br>Austin, TX 78704<br>855-344-3298 |
| Marvin A. Miller<br>**MILLER LAW LLC**<br>115 South LaSalle Street, Suite 2910<br>Chicago, IL 60603<br>(312) 332-3400 | Sharon K. Robertson<br>**COHEN MILSTEIN SELLERS & TOLL PLLC**<br>88 Pine Street, 14th Floor<br>New York, NY 10005<br>(212) 838-7797 |

20. **How will the lawyers be compensated? Will the named Plaintiffs receive an incentive award?**

Class Counsel are not seeking attorneys' fees in connection with the Lupin Settlement. Class Counsel will seek up to one-third of the Warner Chilcott Settlement. Class Counsel may ask for service awards for the class representatives of up to $10,000 each from the Settlement Fund for their efforts to date on behalf of the TPP Class and $5,000 for each Consumer class representative in the Lupin Settlement Class.

21. **Should I get my own lawyer?**

You do not need to hire your own lawyer, but if you hire a lawyer to speak for you or appear in Court, your lawyer must file a Notice of Appearance. If you hire your own lawyer, you will have to pay for that lawyer on your own.

## THE COURT'S FINAL APPROVAL HEARING

22. **When and where will the Court determine whether to approve the Settlements?**

The Final Approval Hearing will be on [DAY, MONTH XX, 2017] at __:_00 _.m. before Judge William E. Smith, at Federal Building and Courthouse, One Exchange Terrace, Providence, RI 02903. At this Hearing, the Court will consider whether the proposed Settlements and all of their terms are fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who have asked for permission to speak at the Hearing (*See* Question 24). At or after the Hearing, the Court will decide whether to finally approve the proposed Settlements. There may be appeals after that. We do not know how long these decisions will take.

23. **Do I have to attend the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you file your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but that is not required.

24. **May I speak at the Final Approval Hearing?**

Yes. You may ask the Court to speak at the Final Approval Hearing. To do so, you must include a Notice of Intent to Appear at the Fairness Hearing with your objection (see Question 11). You must provide copies of any documents you intend to rely upon, including the names and addresses of any witnesses who will appear at the Fairness Hearing, and the name of any counsel representing you as an objector. Ultimately, the Court will decide who will be allowed to speak at the Fairness Hearing.

## GETTING MORE INFORMATION

25. **Where do I get more information?**

This Notice contains a summary of relevant court papers. Complete copies of public pleadings, Court rulings, and other filings are available for review and copying at the Clerk's office. The address is U.S. District Court for the District of Rhode Island, Federal Building and Courthouse, One Exchange Terrace, Providence, RI 02903. Judge William E. Smith of the United States District Court for the District of Rhode Island is overseeing the Class Action. You can also review relevant Settlement Agreements, Plan of Allocation, Claim Forms, Decisions and Orders online at www.InReLoestrin24FeAntitrustLitigation.com. Additional information about the Class Action and proposed Settlements is available on the case website at www.InReLoestrin24FeAntitrustLitigation.com, or you can call the Settlement Administrator toll-free at 1-877-324-0380. *Please do not contact the Court or Judge Smith.*

**For more information, call the Settlement Administrator at 1-877-324-0380, or go to www.InReLoestrin24FeAntitrustLitigation.com.**

DATED: MONTH XX, 2020                            BY ORDER OF THE UNITED STATES DISTRICT COURT
                                                            DISTRICT OF RHODE ISLAND

# SHORT FORM NOTICE

# If You Purchased Loestrin 24 FE, Minastrin 24 FE and/or Their Generic Equivalents

## A Partial Settlement of a Class Action Lawsuit May Affect Your Rights

Settlements have been reached in a class action lawsuit involving the oral contraceptives Loestrin 24 FE and Minastrin 24 FE (the "Settlement"). The lawsuit claims that Allergan, plc, Warner Chilcott (US), LLC, Warner Chilcott Sales (US), LLC, Warner Chilcott Company, LLC, Warner Chilcott plc, and Warner Chilcott Limited (the "Warner Chilcott Defendants"; Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc; (the "Warner Chilcott Defendants") and Lupin Ltd. and Lupin Pharmaceuticals, Inc. (the "Lupin Defendants")(collectively "Defendants") harmed competition and violated state antitrust, consumer protection and unjust enrichment laws in the United States and its territories by unlawfully delaying the availability of less-expensive generic versions of Loestrin 24 Fe and Minastrin 24 Fe. The Defendants deny this. No one is claiming that Loestrin 24 FE or Minastrin 24 FE are unsafe or ineffective.

## WHAT DOES THE SETTLEMENT PROVIDE?

To settle the lawsuit, the Lupin Defendants agreed: (i) to deposit $1,000,000 into a Settlement Fund; and (ii) that they are willing to cooperate with End-Payor Plaintiffs during the Loestrin case involving the overall End-Payor Class (the "Class") and the non-settling Defendants. The Warner Chilcott Defendants agreed to deposit $62.5 million into a Settlement Fund to settle all claims in the lawsuit.

If the Settlements are approved by the Court and become final, Plaintiffs' Counsel may seek approval from the Court to obtain from the Settlement Funds: (i) reimbursement of reasonable costs, fees and expenses incurred by Counsel in connection with the litigation, plus interest thereon, including payment of the cost of notice of the Settlements to the Class, administration of the Settlement Funds, escrow administration and taxes; (ii) attorneys' fees; and (iii) payment for service awards to the class representatives in recognition of their efforts to date on behalf of the Settlement Classes. Any remainder in the Settlement Funds, after the payment of the above expenses, shall be distributed to the End-Payor Class pursuant to the Plan of Allocation approved by the Court. The Settlement Agreements, available at the website www.InReLoestrin24FeAntitrustLitigation.com, contain more details. The Settlements involves only the Lupin Defendants and Warner Chilcott Defendants. The case will continue against the Watson Defendants.

## WHO IS INCLUDED IN THE CLASS?

Generally, you are included in the Class if you purchased, paid and/or provided reimbursement for some or all of the purchase price of Loestrin 24 FE, Minastrin 24 FE and/or their generic equivalents, other than for resale in the United States and its territories, from September 1, 2009 through May 2, 2019. Certain third-party payors are also members of the Class. The settlement with the Warner Chilcott Defendants only includes third-party payors.

You are **NOT** a member of the Class if: (ii) you are one of the Defendants or their officers, directors, management, employees, subsidiaries, or affiliates; (ii) a federal or state governmental entity, excluding cities, towns or municipalities with self-funded prescription drug plans; (iii) purchased Loestrin 24 Fe or its AB-rated generic equivalent, and/or Minastrin 24 Fe or its AB-rated generic equivalent, for purposes of resale or directly from Defendants or their affiliates; (iv) a fully insured health plan (i.e., Plans that purchased insurance from another third-party payor covering 100% of the Plan's reimbursement obligations to its members); (v) a "flat co-pay" consumer whose purchases were paid in part by a third-party payor and whose co-payment was the same regardless of the retail purchase price; (vi) a "brand loyalist" consumer or third-party payor who purchased Loestrin 24 Fe and who did not purchase any AB-rated generic equivalent after such generics became available; or a judge in this case or a member of his or her immediate family.; and/or (vii) you previously excluded yourself from the overall End-Payor Class.

## HOW DO I GET A PAYMENT?

If the Settlements are approved, 30.03% of the Lupin Settlement Fund will be allocated to Consumer Class members. Consumers are not part of the Warner Chilcott Settlement Class.  After payment of the costs associated with the litigation and providing notice to the Class there will not be enough remaining to have a claims process and provide payments to Consumer Class members.  Third-Party Payors must submit a Claim Form by _____2020, to be eligible for

a payment from the Lupin and Warner Chilcott Settlement Funds.  The Claim Form, and instructions on how to submit it, are available at www. InReLoestrin24FeAntitrustLitigation.com, or by calling **1-877-324-0380.**

### YOUR RIGHTS AND OPTIONS

If you are a Consumer Class member, you have the right to exclude yourself (to opt out) from the proposed Lupin Settlement Class no later than _____. Third-Party Payors were previously provided notice and no longer have the opportunity to request exclusion.  You may also comment on or object to the proposed Settlements. To do so, you must act by _____. Details on how to request exclusion, comment, or object are at www. InReLoestrin24FeAntitrustLitigation.com.

The Court will hold a hearing at 00:00 a.m./p.m. on _____, to consider whether the Settlements and all of their terms are fair, reasonable, and adequate.

### FOR MORE INFORMATION AND A CLAIM FORM

**Visit www.InReLoestrin24FeAntitrustLitigation.com        Call 1-877-324-0380**

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| **IN RE: LOESTRIN 24 FE ANTITRUST LITIGATION** | **MDL No. 2472** |
| **THIS DOCUMENT RELATES TO:** **All End-Payor Actions** | **Master File No. 1:13-md-2472-S-PAS** |

**[PROPOSED] ORDER GRANTING FINAL JUDGMENT AND ORDER OF DISMISSAL OF ALL INDIRECT-PURCHASER CLASS CLAIMS WITH PREJUDICE AS TO ALL DEFENDANTS AND APPROVING INDIRECT PURCHASER CLASS SETTLEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement between Allergan, plc; Warner Chilcott Co., LLC f/k/a Warner Chilcott Co., Inc.; Warner Chilcott (US), LLC; Warner Chilcott Sales (US), LLC; Warner Chilcott plc n/k/a Allergan WC Ireland Holdings Ltd.; Warner Chilcott Holdings Co. III, Ltd.; Warner Chilcott Corp.; Warner Chilcott Laboratories Ireland Limited; Warner Chilcott Limited; Watson Laboratories, Inc.; and Watson Pharmaceuticals, Inc. (collectively "Defendants") and Third-Party Payors Class Plaintiffs' Lead Counsel acting pursuant to the Court's Order, dated November 8, 2013 (Doc. No. 10), on behalf of Plaintiffs City of Providence, A.F.of L. - A.C.G. Building Trades Welfare Plan, Allied Services Division Welfare Fund, Electrical Workers 242 and 294 Health & Welfare Fund, Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund, Laborers International Union of North America, Local 35 Health Care Fund, Painters District Council No. 30 Health & Welfare Fund, Teamsters Local 237 Welfare Benefits Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund ("TPP Plaintiffs") and on behalf of the certified Class ("TPP Class") defined in Doc. #1274 (the "TPP Action").

It is hereby ORDERED, ADJUDGED AND DECREED as follows:

1

1.     This Final Judgment and Order of Dismissal hereby incorporates by reference the definitions in the Settlement Agreement among Defendants, Plaintiffs, and the TPP Class, and all capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.     On October 17, 2019 (Doc. 1274) and September 27, 2019 (Doc. 1245), this Court certified a class for the following Class ("TPP Class"):

> All Third-Party Payor entities in the United States and its territories that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for Loestrin 24 Fe and/or its AB-rated generic equivalents in any form, and/or Minastrin 24 Fe and/or its AB-rated generic equivalents in any form, for consumption by their members, employees, insureds, participants, or beneficiaries, other than for resale, during the period September 1, 2009 through September 17, 2019.  For purposes of the Class definition, entities "purchased" Loestrin 24 Fe, Minastrin 24 Fe, or their generic equivalents if they indirectly purchased, paid and/or reimbursed for some or all of the purchase price.
>
> Expressly excluded from the TPP Class are the following entities:
>
> a. Defendants and their subsidiaries, or affiliates;
> b. All federal or state governmental entities, excluding cities, towns or municipalities with self-funded prescription drug plans;
> c. All entities who purchased Loestrin 24 Fe or its AB-rated generic equivalent, and/or Minastrin 24 Fe or its AB-rated generic equivalent, for purposes of resale or directly from Defendants or their affiliates;
> d. Fully insured health plans (i.e., Plans that purchased insurance from another TPP covering 100% of the Plan's reimbursement obligations to its members); and
> e. Pharmacy Benefit Managers.

3.     The named Class Plaintiffs for the foregoing class (the "Class Representatives") include: Plaintiffs City of Providence, A.F.of L. - A.C.G. Building Trades Welfare Plan, Allied Services Division Welfare Fund, Electrical Workers 242 and 294 Health & Welfare Fund, Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund, Laborers International Union of North America, Local 35 Health Care Fund, Painters District Council No. 30 Health & Welfare Fund, Teamsters Local 237 Welfare Benefits Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund.  The Court has found that Lead Counsel, Liaison Counsel and the other Plaintiffs' Counsel of record have fairly and adequately represented the interests of the TPP Class and satisfied the requirements of Fed. R. Civ. P. 23(g).

2

4.      The Court has jurisdiction over these actions, each of the parties, and all members of the TPP Class for all manifestations of this case, including the Settlement Agreement.

5.      The earlier notice disseminated to the certified Class, constituted the best notice practicable under the circumstances, including their right to participate in the recoveries of the settlement now before the Court for final approval (see paragraph 9 of the earlier notice approved by this Court). In making this determination, the Court finds that the Notice earlier provided for individual notice to all members of the TPP Class who were identified through reasonable efforts. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice provided TPP Class members due and adequate notice of the Settlement, the Settlement Agreement, these proceedings, and the rights of Class members to object to the Settlement.

6.      Due and adequate notice of the proceedings having been given to the TPP Class and a full opportunity having been offered to the TPP Class to participate in the _____, 2020 Fairness Hearing, it is hereby determined that all TPP Indirect Purchaser Class members are bound by this Order and Final Judgment.

7.      The Settlement of this TPP Action was not the product of collusion between the TPP Class and Defendants or their respective counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between TPP Class Counsel and counsel for Defendants, with the assistance of a mediator.

8.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement, and finds that the Settlement is, in all respects, fair, reasonable and adequate to TPP Class members. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

9.      The Court hereby approves the Plan of Allocation of the Settlement Fund as proposed by Class Counsel (the "Plan of Allocation"), which was summarized in the Notice of Proposed Settlement and is attached to TPP Class Plaintiffs' Motion for Final Approval of

Settlement, and directs A.B. Data, Ltd., the firm retained by TPP Class Counsel as the Claims

Administrator, to distribute the net Settlement Fund as provided in the Plan of Allocation.

10.     All claims against all Defendants in *In re Loestrin 24 Fe Antitrust Litigation*, Master

File No. 1:13-md-2472-WES-PAS (D.R.I.) (the "TPP Action"), including by those members of the

TPP Class who have not timely excluded themselves from the TPP Class, are hereby dismissed

with prejudice, and without costs.

11.     Upon the Settlement Agreement becoming final in accordance with paragraph 5 of

the Settlement Agreement, Plaintiffs and the TPP Class unconditionally, fully and finally release

and forever discharge Defendants, any past, present and future parents, subsidiaries, divisions,

affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards,

insurers, general or limited partners, employees, agents, trustees, associates, attorneys and any of

their legal representatives, or any other representatives thereof (and the predecessors, heirs,

executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties")

from any and all manner of claims, rights, debts, obligations, demands, actions, suits, causes of

action, damages whenever incurred, liabilities of any nature whatsoever, known or unknown,

suspected or unsuspected, fixed or contingent, including costs, expenses, penalties and attorneys'

fees, accrued in whole or in part, in law or equity, that Plaintiffs or any member or members of the

TPP Class (including any of their past, present, or future officers, directors, insurers, general or

limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives,

trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators,

predecessors, successors and assigns, acting in their capacity as such) (the "Releasors"), whether

or not they object to the Settlement, ever had, now has, or hereafter can, shall or may have,

indirectly, representatively, derivatively or in any other capacity, arising out of or relating in any

way to any claim under federal or state law that was alleged or could have been alleged in the TPP

Indirect Purchaser Class Action, prior to the date of the Settlement, including but not limited to:

4

     a.   The allegations and claims in End-Payor Plaintiffs' Second Amended Consolidated Class Action Complaint dated May 9, 2016 [Doc. #165] or any prior complaints filed by Plaintiffs in the TPP Action;

     b.   the alleged delayed or impairment to the entry of generic Loestrin 24 Fe or Minastrin 24;

     c.   the alleged conduct with respect to the procurement, maintenance and enforcement of United States Patent Number 5,552,394, including but not limited to claims of *Walker Process* fraud, sham or fraudulent patent listings in the Orange Book, sham patent litigations, and "reverse payment" patent settlements;

     d.   the alleged "product hopping," from one brand drug to another brand drug, such as "hard switches" and/or "soft switches"; and

     e.   the manufacture, sale, pricing, marketing or distribution of Loestrin 24 Fe or Minastrin 24, or their generic equivalents except as provided for in  the Settlement Agreement.

Releasors shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.  For the avoidance of doubt, the release does not release claims on behalf of consumers.

     12.    In addition, Plaintiffs on behalf of themselves and all other Releasors waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights and benefits conferred by §1542 of the California Civil Code, which reads:

> Section 1542. <u>General Release; extent.</u> A general release does not extend  to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Plaintiffs and members of the TPP Class may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of paragraph 12 of the Settlement Agreement, but each Plaintiff and member of the TPP Class hereby expressly waives and fully, finally and forever settles, releases and discharges, upon the Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of

Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Plaintiff and member of the TPP Class also expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against any Released Party under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

13.     Other than the releases set forth in paragraphs 11 and 12 of this Order and the underlying Settlement Agreement, this Order shall not release claims between Plaintiffs, members of the TPP Class, and the Released Parties unrelated to the allegations in *In re Loestrin 24 Fe Antitrust Litigation.*, Master File No. 1:13-md-2472-WES-PAS (D. R.I.), including claims under Article 2 of the Uniform Commercial Code (pertaining to Sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury, or other claims unrelated to the allegations in *In re Loestrin 24 Fe Antitrust Litigation*, Master File No. 1:13-md-2472-WES-PAS (D.R.I.).

14.     Class Counsel for the TPP Class have moved for an award of attorneys' fees, reimbursement of expenses and incentive awards for the class representatives.  Class Counsel request an award of attorneys' fees of 33 1/3% of the Settlement (including the interest accrued thereon), reimbursement of the reasonable costs and expenses incurred in the prosecution of this action in the amount of $_____, and incentive awards totaling $90,000 collectively for the 9 named plaintiffs, and such motion has been on the docket and otherwise publicly available since_, 2020.

15.     Upon consideration of Class Counsel's petition for fees, costs and expenses, Class Counsel are hereby awarded attorneys' fees totaling (representing 33 1/3% of the Settlement Fund) and costs and expenses totaling_____, together with a proportionate share of the interest thereon from the date the funds are deposited in the Settlement Escrow Account until payment of such attorneys' fees, costs and expenses, at the rate earned by the Settlement Fund, to be paid solely

from the Settlement Fund and Set Aside Fund and only if and after the Settlement becomes final in accordance with paragraph __ of the Settlement Agreement.  Upon consideration of Class counsel's petition for incentive payments for TPP Plaintiffs , each of 9 are hereby awarded $10,000.00, to be paid solely from the Settlement Fund and only if and after the Settlement becomes final in accordance with paragraph 9 of the Settlement Agreement.  Miller Law LLC, Hilliard & Shadowen, Motley Rice, and Cohen Milstein Sellers &Toll PLLC shall allocate and distribute such attorneys' fees, costs and expenses among the various Plaintiffs' Counsel which have participated in this litigation.  Miller Law LLC, Hilliard & Shadowen LLP, Motley Rice LLC, and Cohen Milstein Sellers &Toll PLLC shall allocate and distribute such incentive awards among the various TPP Plaintiffs which have participated in this litigation. The Released Parties (as defined in paragraph 11 of the Settlement Agreement) shall have no responsibility for, and no liability whatsoever with respect to, any payment or disbursement of attorneys' fees, expenses, costs or incentive awards among Class Counsel and/or Class Representatives, nor with respect to any allocation of attorneys' fees, expenses, costs or incentive awards to any other person or entity who may assert any claim thereto.  The attorneys' fees, costs and expenses, and incentive awards authorized and approved by this Final Order and Judgment shall be paid to Miller Law LLC, Hilliard & Shadowen LLC, Motley Rice LLP and Cohen Milstein Sellers &Toll PLLC within five (5) business days after the Settlement becomes final pursuant to paragraph 5 of the Settlement Agreement or as soon thereafter as is practical and in accordance with the terms of the Settlement Agreement and the Escrow Agreement. The attorneys' fees, costs and expenses, and incentive award authorized and approved by this Final Order and Judgment shall constitute full and final satisfaction of any and all claims that Plaintiffs and any TPP Class member, and their respective counsel, may have or assert for reimbursement of fees, costs, and expenses, and incentive awards, and Plaintiffs and members of the TPP Class, and their respective counsel, shall not seek or demand payment of any fees and/or costs and/or expenses and/or incentive awards from Defendants other than the Settlement Fund.

16.     The Court further orders that in the event that Defendants settle any claims with

7

those persons or entities which or who have elected to opt out of the Settlement Class, Defendants

shall, in accordance with Paragraph 6 of the Settlement Agreement, withhold 10% of the amount

of such settlement and deposit the amount into an escrow account which shall be paid to Class

Counsel pursuant to further order of Court.

17.     The Court retains exclusive jurisdiction over the Settlement and the Settlement

Agreement as described therein, including the administration and consummation of the Settlement,

and over this Final Order and Judgment.

18.     Final approval of the Settlement Agreement is granted pursuant to Federal Civil Rule

23(e).

19.     The persons and entities identified in Exhibits A have timely and validly requested

exclusion from the specified TPP Class and therefore are excluded from the TPP Class and not

bound by this Order, and may not make any claim or receive any benefit from the relevant

settlement, whether monetary or otherwise.  These excluded persons and entities may not pursue

any Released Claims on behalf of those who are bound by this Order.  Each TPP Class member who

has not requested to be excluded from the TPP Class for a specified settlement, and is not listed in

Exhibit A, is bound by this Order, and will remain forever bound.

20.  The Court finds that this Final Order and Judgment adjudicates all of the claims, rights

and liabilities of the parties to the Settlement Agreement (including the members of the Indirect

Purchaser Class), and is final and shall be immediately appealable.  Neither this Order nor the

Settlement Agreement nor any other Settlement-related document shall constitute any evidence or

admission by Defendants or any other Released Party on liability, any merits issue, or any class

certification issue (including but not limited to whether a class can be certified for purposes of

litigation or trial) in this or any other matter or proceeding, nor shall either the Settlement

Agreement, this Order, or any other Settlement-related document be offered in evidence or used for

any other purpose in this or any other matter or proceeding except as may be necessary to

consummate or enforce the Settlement Agreement, the terms of this Order, or if offered by any

released Party in responding to any action purporting to assert Released Claims.

21. Pursuant to Federal Civil Rule 54(b), this Court directs entry of final judgment of dismissal with prejudice as to the Released Parties, as set forth in its separate docket entries this same day.

**So Ordered**.

Dated at Providence, Rhode Island this __ day of February, 2020.

_____

Hon. William E. Smith
United States District Judge

9