UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE: LOESTRIN 24 FE ANTITRUST LITIGATION, | MDL No. 2472 |
| THIS DOCUMENT RELATES TO: Direct Purchaser Actions | Master File No. 1:13-md-2472-WES-PAS |

**REPORT AND RECOMMENDATION REGARDING DIRECT PURCHASER CLASS MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES AND A SERVICE AWARD**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

The first of the direct purchaser complaints in these now-consolidated class action cases was filed in this Court in May 2013. The cases arise under the antitrust laws and broadly allege that Defendants illegally entered into reverse payment settlements of patent litigation and engaged in other illegal conduct to reduce competition in the market in which a brand name prescription oral contraceptive, Loestrin 24 Fe, was sold. Over vigorous objection, the Court certified the Direct Purchaser Plaintiff ("DPP") Class on July 2, 2019. In re Loestrin 24 Fe Antitrust Litig., MDL No. 13-2472-WES-PAS, 2019 WL 3214257, at *1 (D.R.I. July 2, 2019), appellate review denied, Ahold U.S.A., Inc. v. Warner Chilcott Public Ltd. Co., No. 19-8014 (1st Cir. Jan. 7, 2020). By motion filed on January 22, 2020, as amended on February 24, 2020, the DPP Class asked the Court to approve a proposed settlement ("Settlement") signed by DPP Class representative Ahold USA, Inc. ("Ahold"), that calls, *inter alia*, for a cash payment of $120 million ("Settlement Fund") for the benefit of the DPP Class. ECF Nos. 1394, 1409. By Order entered on March 23, 2020, the Court preliminarily found that this Settlement is "sufficiently fair, reasonable, and adequate, in the best interests of the members of the Direct Purchaser Class, within a range that responsible and highly experienced counsel could accept considering all

relevant risks and factors of litigation, and arrived at by arm's-length negotiations." ECF No. 1426 at 3.  The Court also preliminarily found that:

> [I]t is fair and in the best interest of the Direct Purchaser Class to provide a service award out of the Settlement Fund not to exceed $100,000 for class representative Ahold and allow Co-Lead Counsel to use the Settlement Funds to pay attorneys' fees as well as costs and expenses incurred by counsel in an amount to be determined and approved by the Court in accordance with the schedule for final approval of the Settlement set forth herein.

Id. at 3-4.  The Court scheduled a Fairness Hearing for August 27, 2020, to consider whether the Settlement should be finally approved, whether attorneys' fees, costs, expenses and a service award for Ahold should be paid from the Settlement Fund, and whether final judgment should enter.  Id. at 5-6.

Pursuant to the schedule set by the Court in anticipation of the Fairness Hearing, on April 20, 2020, invoking Fed. R. Civ. P. 23(h), the DPP Class filed an Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award for the Class Representative.  ECF No. 1428.  The motion asks the Court to approve the following payments out of the Settlement Fund:

(1) Reimbursement for costs and expenses of $3,965,558;

(2) Attorneys' fees for DPP counsel ("Counsel") of $38,678,147, which amounts to one-third of the Settlement Fund remaining after the payment of costs and expenses, plus interest on that amount as may accrue prior to distribution; and

(3) A service award for the Class representative Ahold USA, Inc. ("Ahold"), of $100,000.

Id. at 1.  Mindful of my work in scrutinizing the reasonableness of DPP Counsel's time and expenses on behalf of the DPP Class on a quarterly basis since the outset of the litigation pursuant to Case Management Order Number 3 (ECF No. 90) and Case Management Order Number 3 – Supplement (Direct) (ECF No. 104) (collectively, "CMO No. 3"), the Court referred

2

the motion to me pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 23(h).  As mandated by Fed. R. Civ. P. 54(d)(2)(D), such a referral is for a report and recommendation.  R.A. by Martinez v. Dep't of Children, Youth & Families, 18 F. Supp. 2d 157, 159 (D.R.I. 1998) (attorneys' fee motion is a dispositive pretrial motion; magistrate judge decision is reviewed *de novo* by district court); see also Eon Corp. IP Holdings, LLC v. AT&T Mobility, Inc., Civ. No.: 11-1555(FAB/SCC), 2013 WL 12234619, at *1 n.1 (D.P.R. Feb. 25, 2013) ("motions for attorney's fees are to be treated as dispositive motions, and so a magistrate judge must file a report and recommendation").

For the reasons that follow, I recommend that the motion be granted and that, to the extent that the proposed DPP Settlement is otherwise approved, the Court should also approve the requested payments from the Settlement Fund.

**I.     BACKGROUND**

    A.     Summary of Litigation by DPP Class

With no definitive guidance from the Supreme Court regarding the viability of an antitrust claim based on the anticompetitive effects of a reverse payment settlement of patent litigation involving a branded pharmaceutical, and no government investigation to make the path straight, in March 2012, DPP Counsel began their pre-suit investigation of what became the DPP actions.  In May 2013, the first class complaint was filed in this District.  Kohn Decl. ¶ 6.[1]  Soon after, on June 17, 2013, the Supreme Court decided Fed. Trade Comm'n v. Actavis, Inc., 570 U.S. 136 (2013), which holds that a patent settlement agreement providing for a reverse payment that is large and unjustified is not immunized from antitrust attack; however, Actavis "le[ft] to the lower courts the structuring of present rule-of-reason antitrust litigation."  570 U.S. at 160.

---

[1] The Declaration of Co-Lead Counsel for the DPP Class, Peter R. Kohn, may be found at ECF No. 1430.  ("Kohn Decl.").

3

In October 2013, the Judicial Panel on Multidistrict Litigation transferred cases filed elsewhere to this Court. In re: Loestrin 24 Fe Antitrust Litig., 978 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013). In December 2013, the DPP Consolidated Amended Complaint ("CAC") was filed. Kohn Decl. ¶ 7.

Defendants responded to the DPP CAC (and other complaints) with a motion to dismiss that was one of the first such challenges post-Actavis. The Court granted the motion, though in so doing, it noted that "[i]t was a close call, involving a challenging interpretation of a very recent and confusing Supreme Court case." In re Loestrin 24 Fe Antitrust Litig., 45 F. Supp. 3d 180, 194 (D.R.I. 2014). Following intensive appellate litigation, the First Circuit vacated; its decision is a seminal interpretation of Actavis. In re Loestrin 24 Fe Antitrust Litig., 814 F.3d 538 (1st Cir. 2016). After remand and a second DPP CAC (ECF No. 164), Defendants' renewed motion to dismiss was denied in a lengthy decision that issued on August 8, 2017. In re Loestrin 24 Fe Antitrust Litig., 261 F. Supp. 3d 307 (D.R.I. 2017). This time the Court upheld all of the DPP Class claims. See id.

While the second motion to dismiss was still pending, DPP Counsel (together with counsel in the other cases) finally began discovery in earnest. An enormous undertaking, discovery for the DPP Class claims required a substantial investment of time and sophisticated expertise in managing Electronically Stored Information, strategically pursuing motions to compel, procuring critical expert opinions and taking and defending depositions. The discovery flowed both ways. Over vigorous objection, the Court ruled that Plaintiffs, including the DPP Class representative, Ahold, had to search for and produce documents related to oral contraceptives to allow Defendants to explore the potential existence of robust price competition.

In re Loestrin 24 Fe Antitrust Litig., Master File No. 1:13-md-2472-S-PAS, 2017 WL 1491911, at *2-3, 7 (D.R.I. Mar. 15, 2017).

In July 2018, DPP Counsel moved for class certification (ECF No. 513); this critical motion was granted on July 2, 2019.  In re Loestrin 24 Fe Antitrust Litig., 2019 WL 3214257, at *1.  On January 7, 2020, the First Circuit denied review of the District Court's certification of the DPP Class.  Ahold U.S.A., Inc., No. 19-8014.  Meanwhile, during 2018 and 2019, the DPP Class successfully resisted Defendants' motions for summary judgment.  Ultimately, on December 17, 2019, the DPP Class prevailed when the Court denied Defendants' motion for summary judgment on market power and Defendants' motion for summary judgment on all claims.  In re Loestrin 24 Fe Antitrust Litig., 433 F. Supp. 3d 274 (D.R.I. 2019).  During the same period, the parties also litigated many Daubert motions; these ended with none of the DPP's experts significantly precluded from testifying at trial.  With trial approaching in early 2020, DPP Counsel filed and defended motions in limine and engaged in trial preparation and jury selection.

Days before the trial was scheduled to commence, the Settlement was reached; the agreement memorializing the Settlement was signed on January 14, 2020.  ECF No. 1396-1.  Throughout the eight years that DPP Counsel performed this work, which has now yielded a substantial recovery for the DPP Class, they were paid nothing.  Kohn Decl. ¶ 98.  They assumed representation of the DPP Class on a purely contingent basis, advanced all expenses on behalf of the DPP class and have borne all of the risks arising from this litigation.  Id.

    B.    Ongoing Monitoring of Lodestar and Litigation Expenses

At the outset of the matter, on February 28, 2014, the Court established a mandatory procedure for ongoing monitoring of lodestar fees and expenses for the common benefit of the

DPP Class and assigned to me the task of implementing the procedure.[2]  CMO No. 3. Paragraphs 11 and 12 of CMO No. 3 made DPP Counsel subject to guidelines for what might be included in the common benefit lodestar and expenses and specified that DPP Counsel would be "eligible to receive common benefit attorneys' fees and cost reimbursement" only for fees and expenses submitted timely to me on a quarterly basis.  Id. at ¶ 11.  CMO No. 3 required DPP Counsel to make quarterly confidential *ex parte* submissions in specified formats prepared by an independent certified public accountant reflecting all time and expenses invested on behalf of the DPP Class during the preceding quarter.  Id.  The required formats were designed to allow the Court quickly and efficiently to ascertain what was done during the quarter, by whom and at what rate, what expenses were paid and why, as well as to monitor compliance with the guidelines.  Upon receipt of the quarterly submissions, the Court scrutinized the entries and conducted confidential *ex parte* conferences with a DPP Counsel representative and the assigned accountant to comment on anything that appeared to be unreasonable or not for the benefit of the DPP Class.  Based on these comments, the DPP lodestar was adjusted on a rolling basis to delete such matters and DPP Counsel adjusted their management of the common benefit work to limit the growing lodestar calibrated to what I found that the Court was likely to deem reasonable.

Over the years since 2014, as the judicial officer assigned to perform this task, I scrutinized the lodestar fees and expenses submitted pursuant to this procedure and conferred with DPP Counsel regarding any entries that seemed unreasonable or not for the common benefit of the DPP Class.  Based on my discharge of this assignment, I find that the lodestar fees and expenses presented in the motion align sufficiently with those presented for the quarterly review, were incurred for the common benefit of the DPP Class and are within a reasonable range.

---

[2] Counsel representing the End Payor Class were separately subject to the same requirements.

  C. <u>Opinion of Class Action Expert</u>

  To support the motion, DPP Counsel included a comprehensive and helpful declaration from Professor Brian T. Fitzpatrick of Vanderbilt University, whose teaching and research has focused on class action litigation.  ECF No. 1431.  Professor Fitzpatrick included data from his own and other studies on class action fee awards.  Focusing on direct-purchaser pharmaceutical antitrust cases across the country, his data establishes that a fee award of roughly one-third of the settlement fund is both the mean and median of awards made in the cases included in the study, while outside of the direct-purchase pharmaceutical antitrust context, he found that two-thirds of awards are between 25% and 35%, with a mean of 25.4% and a median of 25%.  Fitzpatrick Decl. ¶¶ 17-18.  Class settlements in this Circuit are similar in that the most common award is between 30% and 35%, with the mean 27% and the median 25%.  <u>Id.</u> at ¶ 19.  Professor Fitzpatrick noted that some courts have awarded a lower percentage when (as here) the settlement fund exceeds $100 million, a so called "megafund case," <u>In re Neurontin Mktg. & Sales Practices Litig.</u>, 58 F. Supp. 3d 167, 170 (D. Mass. 2014), but opined that such an approach undermines public policy considerations and directed the Court to cases holding that such an approach creates a perverse incentive.  Fitzpatrick Decl. ¶¶ 20-22; <u>see also</u> <u>Allapattah Servs. Inc. v. Exxon Corp.</u>, 454 F. Supp. 2d 1185, 1213 (S.D. Fla. 2006).  Looking at what the market might yield, the Fitzpatrick Declaration avers that the Class representative's fee agreement for this case, entered before the case became a class action, was for 33.33% inclusive of expenses and that such a percentage is typical of the actual fee agreements Professor Fitzgerald has reviewed in other pharmaceutical/antitrust class action cases.  Fitzpatrick Decl. ¶¶ 39-40.

  Guided by this background, Professor Fitzpatrick opined that the percentage method is the preferred approach to use in calculating the DPP Counsel's fee award.  <u>Id.</u> ¶ 13.  To assess

7

the reasonableness of the one-third percentage proposed by DPP Counsel, he examined the DPP fee request from the perspective of the "holistic" approach endorsed by Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000), and Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000) ("Gunter/Goldberg"), and from the perspective of the "mimic-the-market" approach endorsed by In re Synthroid Marketing Litigation, 264 F.3d 712, 719 (7th Cir. 2001). Id. ¶¶ 15-34, 35-44. Both frameworks led him to the same conclusion: "no matter which approach is taken here, in my opinion the fee request would be reasonable." Fitzpatrick Decl. ¶ 14.

## II.  STANDARD OF REVIEW

In a certified class action, the Court may award reasonable attorneys' fees and costs as authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). As applicable here, § 15 of Title 15 of the United States Code provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may recover treble damages and the "cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a); see In re Namenda Direct Purchaser Antitrust Litig., No. 15 Civ. 7488 (CM), 2020 WL 3170586, at *2 (S.D.N.Y. June 15, 2020) (class counsel in pharmaceutical direct purchaser antitrust class action entitled to "reasonable" attorney's fee, which means "moderate" and "as much as is appropriate" or "fair"). When an antitrust class case is intensely litigated but then settled by the creation of a fund that confers a substantial benefit on the class, the Court's role is not just to examine the overall fairness of the settlement, but also to scrutinize the proposal for attorneys' fees, costs and expenses to ensure that it conforms to what is reasonable. See generally In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d at 170 ("Under the 'common fund doctrine,' attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a

8

reasonable attorney's fee from the fund as a whole.'") (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

In recent cases in this Circuit, the more commonly used approach to determining what is a reasonable fee is the percentage-of-fund method.  E.g., In re Solodyn Antitrust Litig., Civil Action No. 1:14-md-2503 (DJC), 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (reasonable to award attorneys' fees totaling one-third of settlement fund); In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d at 173 ("28% of the settlement fund . . . is within the applicable range of reasonable percentage fund awards").  While the First Circuit has not mandated use of the percentage-of-fund method, it has held that the approach "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace."  In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 308 (1st Cir. 1995).  This Court has relied on the percentage-of-fund method as appropriate, as long as the resulting fee is reasonable.  Trombley v. Bank of Am. Corp., Civil No. 08-cv-456-JD, 2013 WL 5153503, at *8-9 (D.R.I. Sept. 12, 2013).  Using the percentage-of-fund approach for this case is consistent with the opinion of Professor Fitzpatrick that the percentage method is preferred.

For guidance in establishing the reasonableness of a percentage-based fee award, courts in this Circuit have looked to the factors set forth in Gunter/Goldberger.  See, e.g., In re Solodyn Antitrust Litig., 2018 WL 7075881, at *2; In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d at 170; In re Lupron Mktg. & Sales Practices Litig., No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005).  The typical considerations include:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time

>devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

Id. The mimic-the-market approach has also been deployed, for example in a case from the District of New Hampshire, but staffed by judicial officers of this Court sitting by designation. In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. 30, 41 (D.N.H. 2006) (market-based award derived from fee awards in other class actions and class action cases in which "courts have set the fee at the beginning of the case by a competitive process").

Courts often consider the lodestar in examining the reasonableness of a fee request. While exclusive reliance on daily time records to calculate the lodestar and a multiplier is outmoded and rarely used, the lodestar continues to be examined by courts as a "cross-check" on the reasonableness of a fee calculated, for example, by using a percentage-of-settlement method. In re Solodyn Antitrust Litig., 2018 WL 7075881, at *2 (where "lodestar cross-check suggests that the request for attorneys' fees is reasonable," attorneys' fees awarded totaling one-third of Settlement Fund); David F. Herr, Annotated Manual for Complex Litigation § 14.122 (4th ed. May 2020 Update) ("The lodestar is . . . useful as a cross-check on the percentage method"). The usefulness of the lodestar cross-check may be undermined when the court cannot ascertain the reasonableness of the lodestar. In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d at 171-73 (court reduces percentage-based award and considers lodestar but because of lack of detailed information regarding hours worked, hourly rates charged, or expenses charged, impossible to perform a proper lodestar cross-check). In this case, however, because of the Court's imposition of the quarterly reporting requirements in CMO No. 3, the reliability of the lodestar is not a problem.

The lodestar cross-check is important for courts dealing with a settlement fund that exceeds $100 million. In such "megafund" cases, courts are cautious about simply approving an

award of a percentage (such as the typical one-third) if such a percentage yields a fee that is more than double the lodestar.  See e.g., Namenda Direct Purchaser Antitrust Litig., 2020 WL 3170586, at *6 (where requested percentage-based fee yields award to attorney that is 4.5 times lodestar, court rejects request as not fair and reasonable); In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d at 172 (fee award in mega-case of one-third of fund is too high where lodestar cross-check establishes that multiplier on lodestar is 3.97 and lodestar itself seems overstated).  However, when the fee is less than double the lodestar, even in a megafund settlement, a one-third-of-fund fee may be endorsed as reasonable.  In re Lidoderm Antitrust Litig., No. 14-MD-02521-WHO, 2018 WL 4620695, at *1, 3 (N.D. Cal. Sept. 20, 2018) (megafund settlement fee that was 1.37 times larger than lodestar found reasonable).

### III.   PROPOSED FINDINGS AND RECOMMENDATIONS

#### A.   Fee Award

Viewed from the perspective of the motion referred to me,[3] I find that the work of DPP Counsel resulted in a significant Settlement Fund that confers a substantial benefit on the forty-seven members of the DPP Class.  In re Loestrin 24 Fe Antitrust Litig., 2019 WL 3214257, at *10 ("forty-seven members are properly included in this class").  As calculated by Professor Fitzpatrick, the Settlement Fund amounts to between 19% and 83% of single damages alleged by the DPP Class.  Fitzpatrick Decl. ¶ 27.  I further find that DPP Counsel have demonstrated that they are skillful and well-experienced and that they have effectively and efficiently prosecuted this complex and protracted litigation to the benefit of the DPP Class.  This work arced over almost seven years in this Court, ongoing for close to eight years, with DPP Counsel achieving ultimate and hard-fought success in establishing the legal viability of the DPP Class claims, in

---

[3] My findings are not intended to usurp the Court's assessment of the overall Settlement at the Fairness Hearing.

11

one of the first cases following Actavis, and in continuing the fight to the brink of trial, including full-blown trial preparation. Based on my personal observation of the work of DPP Counsel, this is not a case where fees should be reduced because counsel asserted arguments that amounted to a waste of time and resources. See In re Namenda Direct Purchaser Antitrust Litig., 2020 WL 3170586, at *3-4. To the contrary, I find that, over the years since the work began, DPP Counsel undertook numerous and significant risks, performed excellent work on behalf of the DPP Class with no guarantee that they would be compensated and reasonably expended millions of dollars in out-of-pocket expenses with no guarantee of reimbursement. These conclusions are not rebutted by objections to the requested fees; to the contrary, no objections were received.

Based on the foregoing, I find the percentage method of calculating the fee award should be the primary guide for the Court in considering what to approve as payment for DPP Counsel. In reliance on Professor Fitzpatrick's data regarding other class fee awards, the "holistic" factors listed in Gunter/Goldberger and the mimic-the-market approach used in Cabletron, I find that one-third of the DPP Settlement Fund, less costs and expenses, is fair, reasonable and appropriate compensation for the work done by DPP Counsel to create the Fund. See Mazola v. May Dep't Stores Co., No. 97CV10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999). ("in this circuit, percentage fee awards range from 20% to 35% of the fund"). If adopted by the Court, this finding yields a fee award of $38,678,147. Further, I find that the lodestar cross-check is a useful tool in this case and that it confirms the reasonableness of this fee award. That is, the requested fee is 1.31% of the DPP lodestar, whose reasonableness was subject to the Court's ongoing quarterly scrutiny of DPP Counsel's daily time entries since 2014. ECF No. 1429 at 38. Mindful of the lead role played by DPP Counsel in many of the issues litigated before this Court, the extent of risk they accepted at the outset of the matter, the length of time

the case has been pending and the many successes achieved by DPP Counsel for the benefit of the DPP Class, including the ultimate success in procuring the Settlement, despite the size of the Fund (in excess of $100 million), I find that a multiplier of 1.31% in the circumstances presented is eminently reasonable. In re Lidoderm Antitrust Litig., 2018 WL 4620695, at *1, 3.

    B.    Costs and Expenses

The requested total of $3,965,558 in costs and expenses synchs with the rolling costs and expenses that I reviewed quarterly in connection with CMO No. 3, now enhanced to cover final costs, including an estimate of the costs of administering the Settlement. Seeing no irregularities, I recommend that they be approved for reimbursement from the Settlement Fund.

    C.    Ahold Service Award

To encourage entities and individuals to agree to serve as the named class representative in a complex class action, in light of the concomitant responsibilities, including, but not limited to, exposure to potentially substantial expenses in responding to discovery, monitoring the litigation and participating at trial, courts may grant a service award. In re Solodyn Antitrust Litig., 2018 WL 7075881, at *2 (because "a named plaintiff is an essential ingredient of any class action, a service award can be appropriate to encourage or induce" participation in the lawsuit). For the DPP Class, Ahold ably served as class representative, alone after Rochester Drug Cooperative, Inc., dropped out of the case in September 2018. ECF No. 559. Ahold's service was protracted (because of the length of time this matter has been pending) and included time and expenses in responding to discovery and in monitoring the litigation on behalf of the DPP Class, ultimately leading to a successful resolution. While the service award requested is on the high side for what has been awarded in other cases,[4] I find that the uncertainty and delay

---

[4] It must be observed that, while a service award of $100,000 is higher than many of the service awards approved for a single class representative, because Ahold was the only DPP Class representative, the total service award in this

13

caused by the need to interpret <u>Actavis</u>, coupled with Ahold being required to proceed alone after the withdrawal of the other DPP Class representative, justify the amount sought. Therefore, I recommend that the Court approve payment to Ahold from the Settlement Fund of a service award of $100,000.

## IV.   CONCLUSION

Based on the foregoing, I recommend that the Court grant the DPP Class's Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award for the Class Representative (ECF No. 1428) and approve the following payments out of the Settlement Fund:

(1)   Reimbursement for costs and expenses of $3,965,558;

(2)   Attorneys' fees for DPP Counsel of $38,678,147, which amounts to one-third of the Settlement Fund remaining after the payment of costs and expenses, plus interest on that amount as may accrue prior to distribution; and

(3)   A service award for the Class representative Ahold USA, Inc., of $100,000.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

---

case is actually the same or lower than other cases. E.g., <u>In re Namenda Direct Purchaser Antitrust Litig.</u>, 2020 WL 3170586, at *2 (incentive award of $75,000 to each class representative, for a total of $150,000, is reasonable); <u>In re Solodyn Antitrust Litig.</u>, 2018 WL 7075881, at *2 (service awards of $90,000 each for two class representatives, yielding total of $180,000, to be paid from settlement fund); <u>In re Neurontin Mktg. & Sales Practices Litig.</u>, 58 F. Supp. 3d at 173 (each of four class representatives paid $25,000, for a total of $100,000).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 17, 2020