UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE: LOESTRIN 24 FE ANTITRUST LITIGATION, | : <br> :    MDL No. 2472 <br> : |
| THIS DOCUMENT RELATES TO: <br> End-Payor Actions | :    Master File No. 1:13-md-2472-WES-PAS <br> : <br> : |

**REPORT AND RECOMMENDATION REGARDING END-PAYOR CLASS MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

The first of the end-payor complaints[1] in these now-consolidated class action cases was filed in the Eastern District of Pennsylvania in April 2013. Some of the cases were filed in this Court and others were transferred to this Court by the Multidistrict Litigation Panel. The end-payor ("EPP") claims arose under both the federal antitrust laws, as well as the antitrust, unfair competition and common laws of various states and other jurisdictions. They broadly allege that Defendants – Warner Chilcott and Lupin[2] – illegally entered into reverse payment settlements of patent litigation and engaged in other illegal conduct to reduce competition in the market in which a brand name prescription oral contraceptive, Loestrin 24 Fe (and related drugs), was sold. As the attorneys ("Counsel") representing the end-payors who paid for the drug, EPP Counsel acted on behalf of a putative class comprised of third-party payors ("TPP")[3] and consumers

---

[1] Also consolidated with the end-payor cases are cases brought by direct purchasers on behalf of a direct purchaser class and by retailers suing for themselves.

[2] "Warner Chilcott" denotes Defendants Warner Chilcott plc n/k/a Allergan WC Ireland Holdings Ltd.; Warner Chilcott Holdings Co. III, Ltd.; Warner Chilcott Corp.; Warner Chilcott Laboratories Ireland Limited; Warner Chilcott Limited; Allergan plc; Warner Chilcott Co., LLC f/k/a Warner Chilcott Co., Inc.; Warner Chilcott (US), LLC; Warner Chilcott Sales (US), LLC.; Watson Laboratories Inc.; and Watson Pharmaceuticals, Inc. "Lupin" refers to Defendants Lupin Limited and Lupin Pharmaceuticals, Inc. ECF No. 1437 ¶ 3 n.3.

[3] The TPPs are health and welfare benefit plans, health and welfare benefit funds, and employee benefit welfare funds. In re Loestrin 24 FE Antitrust Litig., 410 F. Supp. 3d 352, 366 (D.R.I. 2019)

("Consumers") (collectively, the "EPP Class").  In re Loestrin 24 Fe Antitrust Litig., 261 F. Supp. 3d 307, 315 & n.7 (D.R.I. 2017).  Based on Illinois Brick v. Illinois, 431 U.S. 720 (1977), the EPP Class sought only declaratory/injunctive relief and attorneys' fees and costs under the federal antitrust laws; they also sought damages, fees and costs to the extent permitted by applicable state or other pertinent law.  In re Loestrin 24 Antitrust Litig. 261 F. Supp. 3d at 325 & 354; ECF No. 165.

EPP Counsel have now resolved all EPP claims.  First, by a motion filed on July 15, 2019, EPP Counsel asked the Court to approve a proposed settlement with Lupin ("Lupin Settlement") and the entire EPP Class, to be certified for settlement purposes.  ECF Nos. 1122, 1123 at 9-11.  The Lupin Settlement calls, *inter alia*, for a cash payment of $1 million ("Lupin Settlement Fund").  ECF No. 1123 at 7.  This motion asked the Court to delay any determination regarding attorneys' fees, cost and expenses or service awards "until additional settlements have been achieved," with the allocation to be "based directly on the overcharges to each claimant, thus assuring equitable treatment among class members," and to delay notice until after the Court decided the pending motion for class certification.  ECF No. 1123 at 10, 25-26.  The Lupin Settlement was preliminarily approved on October 23, 2019.  ECF No. 1278.

Soon after the Lupin Settlement, the Court decided the hotly contested EPP motion for class certification (ECF No. 528) with the issuance of an Order on September 17, 2019 (ECF No. 1226), as amended by an Order issued on September 26, 2019 (ECF No. 1239).  This Order broke the EPP Class into two subclasses, certifying the TPP Class, which incurred approximately two-thirds of the total EPP alleged damages, but denying certification of the Consumer Class, which incurred the other third.[4]  ECF Nos. 1226, 1239; see also ECF No. 1437 at 17.  On

---

[4] Based on calculation by the EPP damages expert, the Consumer Class's *pro rata* share of damages is 30.03%, while the damages to the TPP Class is 69.97%.  ECF No. 1440 at 2.

October 17, 2020, the Court issued a lengthy opinion explaining the class certification decision and dismissing some, but not all, of the EPP state law claims. In re Loestrin 24 FE Antitrust Litig., 410 F. Supp. 3d 352, 407 (D.R.I. 2019). A significant reason for the denial of certification of the Consumer Class was the First Circuit's intervening decision in In re Asacol Antitrust Litig., 907 F.3d 42 (1st Cir. 2018), which had issued less than three months after the EPP Counsel moved for certification. As the Court held,

> Asacol makes plain in this Circuit what may have been unclear before: in order to prevail on its motion for class certification, the class action plaintiff must provide a plan to identify and remove any uninjured entities and/or persons from the class in a manner that is both administratively feasible and protective of the defendant's Seventh Amendment and due process rights.

In re Loestrin 24 FE Antitrust Litig., 410 F. Supp. 3d at 367. Based on Asacol, the Court found that "this task proves impossible with respect to any class containing individual consumers." Id. Defendants took an interlocutory appeal from this decision pursuant to Fed. R. Civ. P. 23(f). The First Circuit denied review. City of Providence v. Warner Chilcott Holdings., III, Ltd., No. 19-8026 (1st Cir. Dec. 3, 2019).

With Consumer Class certification denied, all individual claims for relief brought by the remaining two Consumer plaintiffs against Warner Chilcott were resolved when each of them accepted Warner Chilcott's offer of judgment on December 30, 2019. ECF No. 1389. The accepted offer covered 100% of their individual alleged damages and included all "costs and attorneys' fees incurred to date attributable" to their individual claims. Id. at 4, 7.

What remained ended with a second class-wide settlement concluded on the very brink of trial. By motion filed on February 6, 2020, as amended on March 6, 2020, the certified TPP Class only asked the Court to approve a proposed settlement with Warner Chilcott ("Warner

3

Chilcott Settlement"),[5] that calls, *inter alia*, for a cash payment of $62.5 million ("Warner Chilcott Settlement Fund") for the benefit of the TPP Class. ECF Nos. 1397, 1398, 1420, 1421. By Order entered on March 23, 2020, the Court preliminarily found that the Warner Chilcott Settlement was "arrived at by arm's-length negotiations by highly experienced counsel after years of litigation, falls within the range of possibly approvable settlements, and is hereby preliminarily approved, subject to further consideration at the Fairness Hearing." ECF No. 1427 at 3. The Court also approved the content and method of serving the notices to be sent to all EPP Class members (both TPP and Consumers).[6] ECF No. 1427 at 3-4; Text Order of March 23, 2020. The Court scheduled a Fairness Hearing for August 27, 2020, to consider whether the Settlements should be finally approved and whether attorneys' fees, as well as whether costs, expenses and service awards for the TPP and Consumer Class representatives should be paid from the Funds. Id. at 4-6.

On June 8, 2020, in anticipation of the Fairness Hearing, based on Fed. R. Civ. P. 23(h), EPP Class Counsel filed a Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Award to the Class Representatives. ECF No. 1437. The motion asks the Court to approve the following payments out of the two Settlement Funds:

---

[5] The Warner Chilcott Settlement is clear that it does not address potential consumer claims. ECF No. 1424-1 at 52 ("For the avoidance of doubt, the release does not release claims on behalf of consumers.").

[6] The Court-approved notice advising of both Settlements was sent to all EPP Class members. ECF No. 1424-1. With respect to the Lupin Settlement, the Consumer Class (certified for purposes only of the Lupin Settlement) was advised by the notice that the Lupin Settlement Fund is to be allocated 30.03% to the Consumer Class and 69.97% to the TPP Class, but that payment of costs and expenses (including the cost of the notice) and service awards will likely leave insufficient funds for distribution to the Consumer Class. Id. at 40. The publication of the notice to the Consumer Class began on March 28, 2020; the bar deadline for objections to the Lupin Settlement for both the TPP Class and the Consumer Class was June 22, 2020. ECF No. 1440 at 2. No objections or opt-out requests were received. Id.

4

>   (1) Reimbursement from both Settlement Funds of $3,743,996.58 for costs and expenses, together with up to $250,000 for settlement distribution expenses for a total of up to $3,993,996.58;[7]
>
>   (2) Attorneys' fees for EPP Counsel of $20,833,333.33, to be paid only from the Warner Chilcott Settlement Fund (for the benefit only of the TPP Class), which amounts to one-third of that Fund; and
>
>   (3) Service awards for the Class representatives totaling $100,000, paid from both Settlement Funds, allocated $10,000 to each of the nine TPP Class representatives (paid from the Warner Chilcott Settlement Fund) and $5,000 to each of the two Consumer Class representatives (paid from the Lupin Settlement Fund).[8]

ECF No. 1437 at 7-8, 34-35.

Mindful of my work in scrutinizing the reasonableness of EPP Counsel's time and expenses on behalf of the EPP Class on a quarterly basis since the outset of the litigation pursuant to Case Management Order Number 2 (ECF No. 85) and Case Management Order Number 2 – Supplement (EPP) (ECF No. 103) (collectively, "CMO No. 2"), the Court referred the motion to me pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 23(h). As mandated by Fed. R. Civ. P. 54(d)(2)(D), such a referral is for a report and recommendation. R.A. by Martinez v. Dep't of Children, Youth & Families, 18 F. Supp. 2d 157, 159 (D.R.I. 1998) (attorneys' fee motion is a dispositive pretrial motion; magistrate judge decision is reviewed *de*

---

[7] Regarding the plan for the allocation of costs and expenses between the Funds, EPP Counsel advised the Court as follows:

> To allocate expenses to the Lupin Settlement, we determined the litigation expenses incurred at the time the Lupin Settlement was achieved – that amount being $2,345,018. Applying 30.03% – the consumers' *pro rata* share of damages as determined by our damages expert – the litigation expenses allocable to consumers is approximately $704,209. Since a robust publication notice program was necessary to reach the consumer portion of the Lupin Settlement Class, a significant portion of the $354,000 notice cost is directly attributable to consumers. Therefore, the entire $1,000,000 Lupin Settlement Fund, for efficiency, should pour over into the Warner Chilcott Settlement Fund and be utilized to pay incentive awards and reimburse expenses.

ECF No. 1440 at 2 (footnote omitted).

[8] To reduce the cost of Fund administration, the plan calls for the Lupin Settlement Fund to pour over into the Warner Chilcott Settlement Fund for a unitary administration as described *supra*, Note 7.

*novo* by district court); see Eon Corp. IP Holdings, LLC v. AT&T Mobility, Inc., Civ. No.: 11-1555(FAB/SCC), 2013 WL 12234619, at *1 n.1 (D.P.R. Feb. 25, 2013) ("motion for attorney's fees are to be treated as dispositive motions, and so a magistrate judge must file a report and recommendation").

For the reasons that follow, I recommend that the motion be granted and that, to the extent that the proposed EPP Settlements are otherwise approved, the Court should also approve the requested payments from the designated Settlement Funds.

## I.   BACKGROUND

### A.   Summary of Litigation by EPP Class

With no definitive guidance from the Supreme Court regarding the viability of an antitrust claim based on the anticompetitive effects of a reverse payment settlement of patent litigation involving a branded pharmaceutical, and no government investigation to make the path straight, following extensive investigation, EPP Counsel filed their first case in April 2013. EPP Counsel Decl. ¶¶ 7-8.[9]  Soon after, on June 17, 2013, the Supreme Court decided Fed. Trade Comm'n v. Actavis, Inc., 570 U.S. 136 (2013), which holds that a patent settlement agreement providing for a reverse payment that is large and unjustified is not immunized from antitrust attack; however, Actavis "le[ft] to the lower courts the structuring of present rule-of-reason antitrust litigation." 570 U.S. at 160. In October 2013, the Judicial Panel on Multidistrict Litigation transferred cases filed elsewhere to this Court. In re: Loestrin 24 Fe Antitrust Litig., 978 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013). In December 2013, the EPP Consolidated Class Action Complaint ("CCAC") was filed. ECF No. 40.

---

[9] The Joint Declaration of Co-Lead Counsel for the EPP Class, Steve D. Shadowen, Sharon K Robertson, Michael M. Buchman, and Marvin A. Miller, may be found at ECF No. 1437-1 ("EPP Counsel Decl.").

Defendants responded to the EPP CCAC (and other complaints) with a motion to dismiss that was one of the first such challenges post-Actavis.  The Court granted the motion, dismissing the EPP's federal claims and staying their state law claims; in so doing, it noted that "[i]t was a close call, involving a challenging interpretation of a very recent and confusing Supreme Court case."  In re Loestrin 24 Fe Antitrust Litig., 45 F. Supp. 3d 180, 194 (D.R.I. 2014).  Following intensive appellate litigation, the First Circuit vacated; its decision is a seminal interpretation of Actavis.  In re Loestrin 24 Fe Antitrust Litig., 814 F.3d 538 (1st Cir. 2016).  After remand and a second EPP CCAC (ECF No. 165), Defendants' renewed motion to dismiss was denied in a lengthy decision that issued on August 8, 2017.  In re Loestrin 24 Fe Antitrust Litig., 261 F. Supp. 3d 307.  This time the Court upheld the EPP Class's claims, including their novel product hop theory, albeit without prejudice to a renewed motion to dismiss some of the state law theories at the class certification phase of the case.  Id. at 314, 332-61.

While the second motion to dismiss was still pending, EPP Counsel (together with counsel in the other cases) finally began discovery in earnest.  An enormous undertaking, discovery for the EPP Class claims required a substantial investment of time and sophisticated expertise in managing Electronically Stored Information, strategically pursuing motions to compel, procuring critical expert opinions and taking and defending depositions.  The discovery flowed both ways.  Over vigorous objection, the Court ruled that Plaintiffs, including the EPP Class representatives, had to search for and produce documents related to oral contraceptives to allow Defendants to explore the potential existence of robust price competition.  In re Loestrin 24 Fe Antitrust Litig., Master File No. 1:13-md-2472-S-PAS, 2017 WL 1491911, at *2-3, 7 (D.R.I. Mar. 15, 2017).

In July 2018, EPP Counsel moved for class certification.  ECF No. 528.  After lengthy and intense litigation, particularly in light of Asacol, the Court certified the TPP Class, denied certification of the Consumer Class and dismissed some, but not all, of the EPP state law claims.  In re Loestrin 24 FE Antitrust Litig., 410 F. Supp. 3d at 407.  Defendants continued the fight to avoid TPP Class certification to the First Circuit, seeking review pursuant to Fed. R. Civ. P. 23(f); the appeal was not denied until December 2019.  City of Providence v. Warner Chilcott Holdings., Pub. Ltd. Co., No. 19-8026 (1st Cir. Dec. 3, 2019).

Meanwhile, during 2018 and 2019, the EPP Class successfully resisted Defendants' motions for summary judgment.  Ultimately, on December 17, 2019, the EPP Class prevailed when the Court denied Defendants' motion for summary judgment on market power and Defendants' motion for summary judgment on all claims.  In re Loestrin 24 Fe Antitrust Litig., 433 F. Supp. 3d 274 (D.R.I. 2019).  During the same period, the parties also litigated many Daubert motions; these ended with none of the EPP's experts significantly precluded from testifying at trial.  With trial approaching in early 2020, EPP Counsel filed and defended motions in limine and engaged in trial preparation and jury selection; by the final lap, EPP Counsel faced and were prepared for the prospect of a solo trial against Warner Chilcott, as other plaintiffs advised the Court of settlements.  See generally EPP Counsel Decl. ¶¶ 91-96.  One month before trial, on December 30, 2019, the individual claims of the two consumer plaintiffs against Warner Chilcott were resolved by the acceptance of the offer of judgment.  ECF No. 1389.  On the final day before the trial was to begin, the Warner Chilcott Settlement with the TPP Class was reached; the agreement memorializing the Settlement was signed on January 30, 2020.  EPP Counsel Decl. ¶ 99.

Throughout the almost seven years that EPP Counsel performed this work, which has now yielded a substantial recovery for the TPP Class, they were paid nothing. EPP Counsel Decl. ¶ 105. They assumed the representation of the EPP Class on a purely contingent basis, advanced all expenses on behalf of the EPP class and have borne all of the significant risks arising from this litigation. Id.

      B.      <u>Ongoing Monitoring of Lodestar and Litigation Expenses</u>

At the outset of the matter, on February 28, 2014, the Court established a mandatory procedure for ongoing monitoring of lodestar fees and expenses for the common benefit of the EPP Class and assigned to me the task of implementing the procedure.[10] CMO No. 2. Paragraphs 12 and 13 of CMO No. 2 made EPP Counsel subject to guidelines for what might be included in the common benefit lodestar and expenses and specified that EPP Counsel would be "eligible to receive common benefit attorneys' fees and cost reimbursement" only for fees and expenses submitted timely to me on a quarterly basis. Id. at ¶¶ 12, 13. CMO No. 2 required EPP Counsel to make quarterly confidential *ex parte* submissions in specified formats prepared by an independent certified public accountant reflecting all time and expenses invested on behalf of the EPP Class during the preceding quarter. Id. at ¶ 12. The required formats were designed to allow the Court quickly and efficiently to ascertain what was done during the quarter, by whom and at what rate, what expenses were paid and why, as well as to monitor compliance with the guidelines. Upon receipt of the quarterly submissions, the Court scrutinized the entries and conducted confidential *ex parte* conferences with EPP Counsel representatives and the assigned accountant to comment on anything that appeared to be unreasonable or not for the benefit of the EPP Class. Based on these comments, the EPP lodestar was adjusted on a rolling basis to delete

---

[10] Counsel representing the Direct Purchaser Class were separately subject to the analogous requirements.

9

such matters and EPP Counsel calibrated their management of the common benefit work so as to limit the growing lodestar to what I suggested the Court would likely deem reasonable.

Over the years since 2014, as the judicial officer assigned to perform this task, I scrutinized the lodestar fees and expenses submitted quarterly pursuant to this procedure and conferred with EPP Counsel regarding any entries that seemed unreasonable or not for the common benefit of the EPP Class. Based on my discharge of this assignment, I find that the lodestar fees and expenses presented in the motion align sufficiently with those presented for the quarterly review, were incurred for the common benefit of the EPP Class and are within a reasonable range. In addition, based on my discharge of this assignment, I further find that a *de minimis* amount of the EPP lodestar time may reasonably be allocable to the exclusive benefit of the Consumer Class, but that, generally, the work redounded to the benefit of the entire EPP Class. Therefore, I find that it is reasonable to treat the final lodestar in its entirety as reasonably reflecting the work that culminated in the Warner Chilcott Settlement, even though that Settlement benefits only the TPP Class.

      C.      Opinion of Class Action Expert

To support the motion, EPP Counsel included a comprehensive and helpful declaration from Professor Charles Silver of the University of Texas, whose teaching and research has focused on fee awards in class litigation. ECF No. 1437-13 at ¶¶ 5-6 ("Silver Decl."). In his Declaration, Professor Silver sets out his view that common fund fee awards should be based on what are the rates prevailing in the private market for legal services; he marshals extensive material from decided cases to support his conclusion that a one-third percentage of the settlement fund is squarely within the range found in market-driven fee arrangements. Id. at ¶¶ 16, 33-53. His Declaration includes Table 1, which lists end-payor generic suppression class

actions from 2005 to 2020; this tabulation establishes that one-third percentage of the fund is overwhelmingly the most common fee award.  Id. at ¶ 56.  The Silver Declaration also summarizes the experience of the "outstanding law firms" who led the effort to generate the Warner Chilcott Settlement Fund.  Id. ¶¶ 28-31.  Guided by this background, Professor Silver opined that "Class Counsel's request for a fee award equal to 33 1/3 percent of the gross recovery is reasonable and should be approved."  Id. at ¶ 87.

## II.     STANDARD OF REVIEW

In a certified class action, the Court may award reasonable attorneys' fees and costs as authorized by law or the parties' agreement.  Fed. R. Civ. P. 23(h).  As applicable here, § 15 of Title 15 of the United States Code provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may recover treble damages and the "cost of suit, including a reasonable attorney's fee."  15 U.S.C. § 15(a); see In re Namenda Direct Purchaser Antitrust Litig., No. 15 Civ. 7488 (CM), 2020 WL 3170586, at *2 (S.D.N.Y. June 15, 2020) (class counsel in pharmaceutical direct purchaser antitrust class action entitled to "reasonable" attorney's fee, which means "moderate" and "as much as is appropriate" or "fair").  When an antitrust class case is intensely litigated but then settled by the creation of a fund that confers a substantial benefit on the class, the Court's role is not just to examine the overall fairness of the settlement, but also to scrutinize the proposal for attorneys' fees, costs and expenses to ensure that it conforms to what is reasonable.  See generally In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d 167, 170 (D. Mass. 2014) ("Under the 'common fund doctrine,' attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'") (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).

In recent cases in this Circuit, the more commonly used approach to determining what is a reasonable fee is the percentage-of-fund method.  E.g., In re Solodyn Antitrust Litig., Civil Action No. 1:14-md-2503 (DJC), 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (reasonable to award attorneys' fees totaling one-third of settlement fund); In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d at 173 ("28% of the settlement fund . . . is within the applicable range of reasonable percentage fund awards"); see Vista Healthplan, Inc. v. Cephalon, Inc., C.A. No. 2:06-cv-1833, 2020 WL 1922902, at *26 (E.D. Pa. April 21, 2020) ("percentage-of-recovery method is generally favored in common fund cases, [including on behalf of an end-payer class] because it allows courts to award fees from the fund in a [manner] that rewards counsel for success and penalizes it for its failure") (internal quotation marks omitted).  While the First Circuit has not mandated use of the percentage-of-fund method, it has held that the approach "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace."  In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 308 (1st Cir. 1995).  This Court has relied on the percentage-of-fund method as appropriate, as long as the resulting fee is reasonable.  Trombley v. Bank of Am. Corp., Civil No. 08-cv-456-JD, 2013 WL 5153503, at *8-9 (D.R.I. Sept. 12, 2013).

For guidance in establishing the reasonableness of a percentage-based fee award, courts in this Circuit have looked to the factors set forth in Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000), and Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000) ("Gunter/Goldberg").  See, e.g., In re Solodyn Antitrust Litig., 2018 WL 7075881, at *2; In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d at 170; In re Lupron Mktg.

12

& Sales Practices Litig., No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005).  The typical considerations include:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

Id.; see also Vista Healthplan, 2020 WL 1922902, at *26-27 (to examine reasonableness of end-payor percentage-based fee award, Gunter requires a court to consider the size of fund, whether there are substantial objections, skill and efficiency of attorneys, complexity and duration of litigation, the risks undertaken by attorneys and awards in similar cases).  The mimic-the-market approach has also been deployed, for example in a case from the District of New Hampshire, but staffed by judicial officers of this Court sitting by designation.  In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. 30, 41 (D.N.H. 2006) (market-based award derived from fee awards in other class actions and class action cases in which "courts have set the fee at the beginning of the case by a competitive process").  Use of the market-based approach is consistent with the opinion of Professor Silver that the market method is preferred, resulting in his endorsement of a fee based on a one-third percentage-of-fund.  Based on his research, Professor Silver opined that "the market rate for contingent fee lawyers ranges from 25 percent to 40 percent of clients' recoveries."  Silver Decl. ¶ 42.

Courts also consider the lodestar in examining the reasonableness of a percentage-based fee request.  Vista Healthplan, 2020 WL 1922902, at *27 (it is "sensible" for district courts to "cross-check" the percentage fee award for end-payor counsel against the "lodestar" method).  While exclusive reliance on daily time records to calculate the lodestar and a multiplier is outmoded and rarely used, the lodestar continues to be examined as a "cross-check" on the

13

reasonableness of a fee calculated by using a percentage-of-settlement method. In re Solodyn Antitrust Litig., 2018 WL 7075881, at *2 (where "lodestar cross-check suggests that the request for attorneys' fees is reasonable," attorneys' fees awarded totaling one-third of Settlement Fund); In re Remeron End-Payor Antitrust Litig., No. CIV. 02-2007 FSH, 2005 WL 2230314, at *31 (D.N.J. Sept. 13, 2005) (for end payor fee award based on percentage of fund, "lodestar cross-check is not a Gunter factor but is a "suggested practice.") (internal quotation marks omitted); David F. Herr, Annotated Manual for Complex Litigation § 14.122 (4th ed. May 2020 Update) ("The lodestar is . . . useful as a cross-check on the percentage method"). The usefulness of the lodestar cross-check may be undermined when the court cannot ascertain the reasonableness of the lodestar. In re Neurontin Mktg. & Sales Practices Litig., 58 F. Supp. 3d at 171-73 (court reduces percentage-based award and considers lodestar but because of lack of detailed information regarding hours worked, hourly rates charged, or expenses charged, impossible to perform a proper lodestar cross-check). In this case, however, because of the Court's imposition of the quarterly reporting requirements in CMO No. 2, the reliability of the lodestar is not a problem.

## III. PROPOSED FINDINGS AND RECOMMENDATIONS

### A. Fee Award

Viewed from the perspective of the motion referred to me,[11] I find that the work of EPP Counsel resulted in the Warner Chilcott Settlement Fund, which confers a very substantial benefit on potentially 40,000 members of the TPP Class. ECF No. 1427 at 3. While not directly pertinent, I also find that EPP Counsel litigated persistently, aggressively and with great skill on behalf of the Consumer Class but achieved only limited success (the Lupin Settlement), based on

---

[11] My findings are not intended to usurp the Court's assessment of the overall Lupin and Warner Chilcott Settlements at the Fairness Hearing.

14

which they are requesting no fees.  I further find that EPP Counsel have demonstrated that they are skillful and well-experienced and that they have effectively and efficiently prosecuted this complex and protracted litigation to the benefit of the EPP Class.  Their work arced over almost seven years in this Court, ongoing for a total of close to eight years, with EPP Counsel achieving ultimate and hard-fought success in establishing the legal viability of the EPP Class claims in one of the first cases following <u>Actavis</u>, in overcoming the challenge of <u>Asacol</u> in achieving certification of the TPP Class, and in continuing the fight to the brink of trial, including full-blown trial preparation for a solo trial while other Plaintiffs settled.  Based on my personal observation of the work of EPP Counsel, this is not a case where fees should be reduced because counsel asserted arguments that amounted to a waste of time and resources.  <u>In re Namenda Direct Purchaser Antitrust Litig.</u>, 2020 WL 3170586, at *3-4.  To the contrary, I find that, over the years since the work began, EPP Counsel undertook numerous and significant risks, performed excellent work on behalf of the EPP Class with no guarantee that they would be compensated and reasonably expended millions of dollars in out-of-pocket expenses with no guarantee of reimbursement.  These conclusions are not rebutted by objections to the requested fees; to the contrary, no objections to this motion were received.

   The evolving case law surveyed above, together with the compilations of approved fee awards as summarized by Professor Silver, leads me to recommend that the Court should rely on the percentage-of-fund method of calculating the fee award as the primary guide for considering what to approve as payment for EPP Counsel.  <u>In re Remeron End-Payor Antitrust Litig.</u>, 2005 WL 2230314, at *26 ("This Court first finds that the percentage of fund method is the proper method for compensating" end-payor counsel in common fund case).  Further, in reliance on Professor Silver's data regarding other class fee awards, particularly in end-payor class cases, the

15

"holistic" factors listed in Gunter/Goldberger and the mimic-the-market approach used in Cabletron, I find that one-third of the EPP Settlement Fund is fair, reasonable and appropriate compensation for the work done by EPP Counsel to create the Warner Chilcott Settlement Fund for the benefit of the TPP Class. Vista Healthplan, 2020 WL 1922902, at *28 ("requested fees in this case represent 33 1/3 % of the total recovery, which is well within the range of reasonable fees"); In re Lidoderm Antitrust Litig., 2018 WL 4620695, at *1-2 (one-third of the settlement reasonable compensation for class counsel, who obtained significant benefit for end-payor class); In re Relafen Antitrust Litig., 231 F.R.D. 52, 81-82 (D. Mass. 2005) (one-third of settlement fund is reasonable fee for success with end-payor claims); see also Mazola v. May Dep't Stores Co., No. 97CV10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("in this circuit, percentage fee awards range from 20% to 35% of the fund"). If adopted by the Court, this finding yields an attorneys' fee of $20,833,333.33 to be paid solely from the Warner Chilcott Settlement Fund.

  Further, I find that the lodestar cross-check is a useful tool in this case and find that it confirms the reasonableness of this fee award. That is, the requested fee is roughly equal to the EPP lodestar (1.05%) based on historic rates and is slightly less than the lodestar (.96%) if it is recalculated with current billing rates to account for the passage of time. ECF No. 1437 at 39-40 & n. 125. I further find that reference to the entirety of this lodestar (without trying to untangle work done solely for the benefit of the Consumer Class) is reasonable: first, because the lodestar is consistent with the rolling amount whose reasonableness was subjected to the Court's ongoing quarterly scrutiny of EPP Counsel's daily time entries since 2014; and, second, because the quarterly scrutiny establishes that the work was overwhelmingly done for the benefit of the overall EPP Class to advance their claims and is not susceptible of a tidy carve-out of tasks

performed solely for the benefit of the Consumer Class. Mindful of the role played by EPP counsel and the extent of the risk they accepted at the outset of the matter, the length of time the case has been pending and the many successes achieved by EPP Counsel for the benefit of the EPP Class, including their ultimate success in procuring the Warner Chilcott Settlement for the TPP Class, I find that attorneys' fees that roughly cover the entire lodestar are eminently reasonable. Vista Healthplan, 2020 WL 1922902, at *32 ("Class Counsel is requesting less than their total lodestar[]" fee award which is within the accepted range).

B.     Costs and Expenses

The requested total of up to $3,993,996.58 in costs and expenses synchs with the rolling costs and expenses that I reviewed quarterly in connection with CMO No. 2, now enhanced to cover final costs, including an estimate of the costs of administering the Settlement. Seeing no irregularities, I recommend that they be approved for reimbursement from the two Settlement Funds, allocated as described *supra*, Note 7.

C.     Service Awards

The nine TPP Class representatives[12] and the two Consumer Class representatives[13] spent a significant amount of their own time and expense litigating these cases for the benefit of the absent members of the TPP Class and the Consumer Settlement Class; as established by a multitude of courts, their efforts should not go unrecognized. In re Remeron End-Payor Antitrust Litig., 2005 WL 2230314, at *32-33 (appropriate for court to approve service award to end payor

---

[12] These are: A.F. of L – A.G.C. Building Trades Welfare Plan; Allied Services Division Welfare Fund; City of Providence, Rhode Island; Electrical Workers 242 and 294 Health & Welfare Fund; Fraternal Order of Police; Fort Lauderdale Lodge 31, Insurance Trust Fund; Laborers International Union of North America; Local 35 Health Care Fund; Painters District Council No. 30 Health & Welfare Fund; Teamsters Local 237 Welfare Benefits Fund; and United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund. See generally ECF No. 1226.

[13] They are: Denise Loy and Mary Alexander. See generally ECF No. 1389.

class representatives). This settled practice encourages entities and individuals to agree to serve as the named class representative in a complex class action, including to be exposed to potentially substantial expenses in responding to discovery, monitoring the litigation and participating at trial. Courts typically find that a service award for the end-payor representatives is appropriate to encourage such participation; such awards are typically larger for third-party payors and somewhat smaller for consumers. See generally Vista Healthplan, 2020 WL 1922902, at *33-34; In re Lidoderm Antitrust Litig., 2018 WL 4620695, at *4; In re Solodyn Antitrust Litig., 2018 WL 7075881, at *2; In re Remeron End-Payor Antitrust Litig., 2005 WL 2230314, at *33.

Based on the foregoing, I conclude that service awards should be approved for the EPP Class representatives. I further find that the requested service awards in the aggregate and individually are consistent with or lower than what has been awarded in other cases.[14] Therefore, I recommend that the Court approve payments of $10,000 each to the nine TPP Class representatives from the Warner Chilcott Settlement Fund and payments of $5,000 each to the two Consumer Class representatives from the Lupin Settlement Fund, for a total of $100,000 in service awards.

D.      Duty of the Court to Examine Adequacy of Representation

In these cases, EPP Counsel faced the challenge of differing outcomes for the TPP Class and the Consumer Class in that the TPP Class was certified by the Court and will participate in both Settlement Funds, while the Consumer Class was denied certification by the Court and only

---

[14] Vista Healthplan, 2020 WL 1922902, at *33-34 (approving incentive awards totaling $165,000, comprising $15,000 for one consumer and $50,000 each for three TPP class representatives); In re Lidoderm Antitrust Litig., 2018 WL 4620695, at *4 (approving service awards of $10,000 for each of nine end-payor class representatives); In re Remeron End-Payor Antitrust Litig., 2005 WL 2230314, at *33 (end payor incentive awards totaling $75,000, comprising $5,000 each for three consumer representatives and $30,000 for each of two TPPs).

Lupin (not Warner Chilcott) agreed to settle with it.  To the limited extent that it is pertinent to the motion referred to me by the District Court, I have considered whether the allocation of attorneys' fees, costs and expenses and service awards among the Settlement Funds suggests an issue as to the adequacy of the class representatives based on the conflict of interest that may arise when unitary Counsel represents two differently situated classes.  See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 827 F.3d 223, 234 (2d Cir. 2016) ("when the potential for gigantic fees is within counsel's grasp for representation of one group of plaintiffs, but only if counsel resolves another group of plaintiffs' claims, a court cannot assume class counsel adequately represented the latter group's interests") (internal quotation marks omitted).  Based on my review of the motion and my conference with the parties on July 13, 2020, I see nothing in these settlements raising any such concerns.  See Vista Healthplan, 2020 WL 1922902, at *10 (the court "harbor[s] no doubts" that "there is no real probability of a conflict of interest among Class Members").  EPP Counsel are requesting no fees from the Lupin Settlement Fund; their compensation is coming exclusively from the Warner Chilcott Settlement Fund created for the benefit of the certified TPP Class.  Further, EPP Counsel litigated doggedly in the wake of Asacol on behalf of both the TPP Class and the Consumer Class.  At bottom, notice was given to the TTP Class members and the Consumer Class members that accurately advised them of what happened, including that the Consumer Class members will not receive any distribution.  ECF No. 1424-1 at 40; ECF No. 1440 at 2.  To the extent that dissatisfied consumers or members of the TPP Class believed that there was any taint of conflict or unfairness, they were free to assert their objections to EPP Counsel's motion for approval of payment of attorneys' fees, costs and expenses and service awards.  As of this writing, no objections have been received.

**IV.    CONCLUSION**

Based on the foregoing, I recommend that the Court grant the EPP Classes' Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Award to the Class Representatives (ECF No. 1437) and approve the following payments out of the respective Settlement Fund:

(1)   Reimbursement from both Settlement Funds of $3,743,996.58 for costs and expenses, together with up to $250,000 for settlement distribution expenses for a total of up to $3,993,996.58;

(2)   Attorneys' fees for EPP Counsel of $20,833,333.33, to be paid from the Warner Chilcott Settlement Fund; and

(3)   Service awards for the Class representatives totaling $100,000, paid from both Settlement Funds, allocated $10,000 to each of the nine TPP Class representatives (paid from the Warner Chilcott Settlement Fund) and $5,000 to each of the two Consumer Class representatives (paid from the Lupin Settlement Fund).

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 17, 2020